UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA DONAHUE, Individually, and in her Capacity as Administratrix of the Estate of MICHAEL J. DONAHUE, MICHAEL T. DONAHUE, SHAWN DONAHUE, and THOMAS DONAHUE,  Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, JOHN J. CONNOLLY, JR., JOHN M. MORRIS, LAWRENCE SARHATT, ROBERT FITZPATRICK, and UNITED STATES OF AMERICA,  Defendants. | CASE NO.: 01-CV-10433-~~RGS~~ RCL |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

This Complaint arises out of the murder of Michael J. Donahue, which occurred

on May 11, 1982. The plaintiffs are the wife and children of Mr. Donahue, and Mr.

Donahue's estate. It is alleged that the named defendants, former supervisors and agents

of the Boston Field Office of the Federal Bureau of Investigation ("FBI-Boston"), along

with the Federal Bureau of Investigation ("FBI") caused Mr. Donahue's murder, which

was physically committed by James J. Bulger.

By this action, the plaintiffs seek redress for the defendants' unlawful and

inappropriate actions which resulted in Michael J. Donahue's murder, including, *inter*

*alia*, violations of the plaintiffs' Constitutional rights under <u>Bivens v. Six Unknown</u>

<u>Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), violations of the federal

Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C., § 1961 et seq.

("RICO"), conspiracy violations, and violations of state law.  As predicate acts of RICO,

the plaintiffs detail twenty-six (26) distinct racketeering acts committed by the

defendants, among which the plaintiffs charge that Connolly and Morris are indictable

under Massachusetts Law for the murder of Michael J. Donahue, pursuant to G.L. c. 265

§ 1 and G.L. c. 274 § 2 as accessories before the fact of Mr. Donahue's murder, and are

additionally indictable as accessories after the fact of Mr. Donahue's murder, pursuant to

G. L. c. 274, § 4.

Furthermore, soon after the filing of the Original Complaint in this matter,

plaintiffs served a Presentment of Claims letter upon the Federal Bureau of Investigation

("FBI"), the Boston Field Office of the FBI, and the United States Department of Justice

("DOJ") under the Federal Tort Claims Act, 28 U.S.C. § 1346 and §§ 2671 et seq,

pursuant to 29 U.S.C. § 2675, on March 29, 2001.  Six months has lapsed since these

Presentment Letters were submitted, and deeming these claims therefore denied, the

plaintiffs have amended their Complaint to include claims under the FTCA against the

FBI, DOJ and the United States Government, under the name of the United States of

America. These counts first allege that the plaintiffs were injured, and Mr. Donahue's

death was in fact caused, by the negligent and/or wrongful acts or omissions of the

individual defendants, committed while these defendants were acting within the scope of

their office or employment, under circumstances where the United States, if a private

person, would be liable to the plaintiffs in accordance with the laws of the

Commonwealth of Massachusetts governing wrongful death. Second, these counts allege

that the FBI supervisors, FBI – Boston, the FBI, and the United States itself committed

negligent and/or wrongful acts, maintained a persistent pattern of deliberate, reckless and

callous indifference to the wrongful acts of its agents and supervisors, and permitted and

maintained an environment which fostered and encouraged these wrongful acts, such that

these defendants through the United States are liable to the plaintiffs under Massachusetts

law for wrongful death. Finally, these counts allege that these acts and omissions, and

the reckless and/or deliberate cover up of these acts and omissions, from Mr. Donahue's

death to the present, injured the plaintiffs such that the United States is liable to them

under Massachusetts law for intentional and/or negligent infliction of emotional distress.

Many of the factual allegations herein are intentionally duplicated and/or

paraphrased from the factual findings of the Honorable Judge Mark L. Wolf, United

States District Court for the District of Massachusetts, found in the Court's Order of

September 15, 1999 at *United States  v. Salemme et al.*, 94-CR-10287, 91 F.Supp.2d 141

(D. Mass. 1999) ("*Judge Wolf's Findings*").[1,2]  As to the RICO allegations contained

herein, and many of the facts underlying the entirety of the plaintiffs' allegations, this

Complaint is also intentionally patterned after, and at times duplicated verbatim from, the

United States Government's superceding indictment which was returned by the Grand

Jury and filed on October 11, 2000 in *United States v. John J. Connolly, Jr. et al*, U.S.

---

[1] Citations to Judge Wolf's findings utilize page number references from the Federal Supplement. The Court's internal citations to Exhibits and Transcripts, which are included within Judge Wolf's findings, are omitted throughout this Complaint.

[2] The plaintiffs allege and argue that the Government (along with its agents and agencies) is bound by these findings of fact as it was a party to this previous criminal litigation, and that CONNOLLY, MORRIS, SARHATT, and FITZPATRICK are bound by their testimony in this proceeding.

District Court for the District of Massachusetts, Docket No. 99-CR-10428-JLT (Paper #158) (the "*Connolly Indictment*").[3]

## THE PARTIES

1.     The plaintiff Patricia Donahue is a natural person and a citizen of the United States of America, and maintains legal residence at  Randolph, Norfolk County, in the Commonwealth of Massachusetts.

2.     Patricia Donahue is the duly appointed administratrix of the estate of Michael J. Donahue.  Michael J. Donahue, at all times during his natural life, was a natural person and a citizen of the United States of America.

3.     Patricia and Michael J. Donahue were legally married at the time of Michael J. Donahue's death.

4.     The plaintiff Michael T. Donahue is a natural person and a citizen of the United States of America, and resides in Boston, Suffolk County, in the Commonwealth of Massachusetts.  Michael T. Donahue is the biological son of Patricia and Michael J. Donahue, and was a minor at the time of Michael J. Donahue's death.

5.     The plaintiff Shawn Donahue is a natural person and a citizen of the United States of America, and resides in Holbrook, Norfolk County, in the Commonwealth of Massachusetts.  Shawn Donahue is the biological son of Patricia and Michael J. Donahue, and was a minor at the time of Michael J. Donahue's death.

---

[3] Upon information and belief, this indictment and others were based on information gathered and verified during investigations, some of which remain ongoing, into corruption at the Boston Office of the FBI, accomplished by the Office of the United States Attorney.  The plaintiffs therefore have requested herein as a prayer for relief that the Government, and Connolly if he is found guilty in said criminal proceeding, be estopped and precluded by law from denying the essential truth of these allegations.  See and compare 18 U.S.C. § 1964(d).

6.     The plaintiff Thomas Donahue is a natural person and a citizen of the United States of America, and resides in Randolph, Norfolk County, in the Commonwealth of Massachusetts.  Thomas Donahue is the biological son of Patricia and Michael J. Donahue, and was a minor at the time of Michael J. Donahue's death.

7.     The defendant John J. Connolly, Jr. ("CONNOLLY") is a natural person and resides, upon information and belief, at 400 Main Street, in Lynnfield, Essex County, Massachusetts.  At all times relevant to this Complaint, CONNOLLY was a Federal employee of the United States of America, to wit, a Special Agent of the Federal Bureau of Investigation.  CONNOLLY is specifically sued hereby both individually and in his official capacity as a Special Agent of the FBI.

8.     The defendant John M. Morris ("MORRIS") is a natural person and resides, upon information and belief, at 4270 Armadillo Trail, in Niceville, Florida.  At all times relevant to this Complaint, MORRIS was a Federal employee of the United States of America, to wit, a Supervisory Special Agent of the Federal Bureau of Investigation, and head of the Organized Crime Squad of the Boston Field Office of the Federal Bureau of Investigation.  MORRIS is specifically sued hereby both individually and in his official capacity as a Supervisory Special Agent of the FBI.

9.     The defendant Lawrence Sarhatt ("SARHATT") is a natural person and resides, upon information and belief, in Michigan.  At all times relevant to this Complaint, SARHATT was a Federal employee of the United States of America, to wit, the Special Agent in Charge of the Boston Field Office of the Federal Bureau of Investigation.  SARHATT is specifically sued hereby both individually and in his official capacity as the Special Agent in Charge of the Boston Field Office of the FBI.

10.    The defendant Robert Fitzpatrick ("FITZPATRICK") is a natural person and resides at an unknown location within the United States. At all times relevant to this Complaint, FITZPATRICK was a Federal employee of the United States of America, to wit, the Assistant Special Agent in Charge of the Boston Field Office of the Federal Bureau of Investigation. SARHATT is specifically sued hereby both individually and in his official capacity as the Assistant Special Agent in Charge of the Boston Field Office of the FBI.

11.    The Federal Bureau of Investigation is an agency of the Executive Branch of the United States Government. The Federal Bureau of Investigation ("FBI") is the principal investigative arm of the United States Department of Justice ("DOJ") created pursuant to Title 28, United States Code (U.S. Code), Section 533, by the United States Attorney General. The United States of America is a party defendant pursuant to 28 U.S.C. §§ 1346 and 2671 *et seq.* in its own right, and as a substitute and representative of its agency the Federal Bureau of Investigation, the Boston Field Office of the Federal Bureau of Investigation, the Organized Crime Squad thereof, and the individual defendants CONNOLLY, MORRIS, SARHATT, and FITPATRICK in as much as they are sued in their official capacities. Each of the defendants at all relevant times acted under the color of the laws of the United States of America.

## JURISDICTION AND VENUE

12.    As the instant action is brought pursuant to, *inter alia*, the Constitution and laws of the United States of America, including the Racketeering Influenced and Corrupt Organizations Act,18 U.S.C. § 1961 et seq. and the Federal Tort Claims Act, this Court

has jurisdiction over the Counts stated in this Complaint pursuant to 18 U.S.C. § 1964 and 28 U.S.C. §§ 1331, 1346, and 1367. Jurisdiction is additionally conferred pursuant to 28 U.S.C. § 1332 as the instant action is between parties of diverse citizenship and the amount in controversy exceeds $75,000.

13. Venue is properly within the District of this Court pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. 1391 et seq.

14. On March 29, 2001, the plaintiffs herein duly submitted and presented Claims for Damage, Injury and Death, pursuant to 28 U.S.C. §§ 1346, 2401 and 2671 *et seq.*, and 28 C.F.R., Part 14, giving notice that the Estate's decedent had been killed and the surviving plaintiffs injured, by the negligent and/or wrongful acts or omissions of certain employees of the Federal Government while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the plaintiffs in accordance with the laws of the Commonwealth of Massachusetts, and the laws of the United States of America.

15. Although the clai-ms referred to in the previous paragraph have not been explicitly denied, the Government has failed to act on the Claims within six months from presentment. Therefore, the plaintiffs hereby exercise their option to have this inaction deemed a denial of the Claims.

## GENERAL ALLEGATIONS

### A.   Participants and the Relationship between FBI – Boston and Organized Crime

16.     The defendant CONNOLLY became a Special Agent of the Federal Bureau of Investigation ("FBI") in November 1968.  From February 1973 until his retirement in December 1990, CONNOLLY was assigned to the Boston Field Office of the FBI.  See *Connolly Indictment*, at 1.[4]

17.     From 1970 until in or about December 1995, the defendant MORRIS was an FBI Special Agent.  From approximately March 1972 until approximately November 1991, MORRIS was assigned to the FBI's Boston Field Office ("FBI-Boston").  At all relevant times, MORRIS was a Supervisory Special Agent and the direct supervisor of CONNOLLY as head of FBI-Boston's Organized Crime Squad.

18.     The defendant SARHATT was, at all relevant times beginning in 1979, the Special Agent in Charge ("SAC") of FBI-Boston, and therefore the supervisor of CONNOLLY and MORRIS.  In this role, SARHATT was first in command of FBI-Boston.

19.     The defendant FITZPATRICK was, at all relevant times beginning in January 1981, the Assistant Special Agent in Charge ("ASAC") of FBI-Boston, and therefore the supervisor of CONNOLLY and MORRIS.  In this role, FITZPATRICK was second in command of FBI-Boston.

20.     At all times material to this Complaint, James J. Bulger ("Bulger") and Stephen Flemmi ("Flemmi") were leaders of the Winter Hill Gang, "a clandestine

---

[6] *United States v. John J. Connolly, Jr. et al*, U.S. District Court for the District of Massachusetts, Docket No. 99-CR-10428-JLT, Paper # 158, Superceding Indictment, returned and filed October 11, 2000.  The plaintiffs expressly incorporate the entirety of this superceding indictment herein.

criminal organization that engaged in multiple crimes, including murder, bribery, extortion, loan sharking, and illegal gambling in the greater Boston, Massachusetts area." *Connolly Indictment*, at 1-2.

21.     At all times material to this Complaint, Bulger and Flemmi were confidential informants for the FBI, and in this role, CONNOLLY acted as their FBI informant "handler." MORRIS, as CONNOLLY's supervisor on the Organized Crime Squad, was responsible for directly supervising this relationship, and supervising CONNOLLY. SARHATT and FITZPATRICK, as heads of FBI - Boston, were responsible for supervising both MORRIS and CONNOLLY, and these agents' relationship with Bulger and Flemmi.

22.     Over the same period of time, however, CONNOLLY and MORRIS were receiving and accepting bribes from Bulger and Flemmi, intended to induce and influence CONNOLLY and MORRIS to provide confidential law enforcement information to Bulger and Flemmi in order to protect their criminal activities. See *Connolly Indictment*, at 4-5. Furthermore, over the same period of time, MORRIS was accepting bribes from and through CONNOLLY, intended to additionally protect CONNOLLY's own criminal activities. *Id.*

23.     In exchange for these bribes, CONNOLLY and MORRIS, in knowing and willful violation of their responsibilities as FBI agents, were unlawfully providing Bulger and Flemmi with confidential information regarding ongoing law enforcement initiatives and confidential law enforcement informants, were unlawfully omitting material information from official FBI documents regarding Bulger and Flemmi, and were failing to report information relating to Bulger and Flemmi related to their criminal activity, and

relating to ongoing investigation of criminal activity in the Boston area, in order to

protect their criminal activities, and continue the relationship involving bribes. See

*Connolly Indictment*, at 4-5. CONNOLLY and MORRIS also facilitated and encouraged

the prosecution of innocent persons for the crimes of Bulger, Flemmi, and their

associates, again in order to protect the illegal activity of Bulger and Flemmi and

continue the relationship involving bribes.

24.     By providing confidential law enforcement information to known

organized crime figures, knowing that the information would be used to commit further

crimes, CONNOLLY and MORRIS intentionally and recklessly disregarded, and in fact

violated, the Constitutional civil rights of private citizens. This activity was an extreme

deviation from reasonable standards of conduct, and includes the affirmative actions of

CONNOLLY and MORRIS in providing information to Bulger and Flemmi which

directly lead to the murders of Michael J. Donahue and Edward Brian Halloran.

25.     Over the same period of time, SARHATT, FITZPATRICK and MORRIS,

each a supervisory official of the FBI, and the FBI itself, each demonstrated a knowing

and/or reckless indifference to the extended pattern of unlawful and inappropriate

conduct perpetrated by CONNOLLY and others, and in doing so, recklessly disregarded,

and in fact violated, the Constitutional civil rights of private citizens. Additionally,

SARHATT and FITZPATRICK, each the supervisor of MORRIS, and the FBI itself,

each also demonstrated a knowing and/or indifference to the extended pattern of unlawful

and inappropriate conduct perpetrated by MORRIS and others, and in doing so,

recklessly disregarded, and in fact violated the Constitutional civil rights of private

citizens. This activity, and/or inactivity was an extreme deviation from reasonable

standards of conduct, and includes the pattern and practice of allowing and aiding the

ongoing criminal activity of Bulger and Flemmi,  allowing and encouraging the unlawful

and inappropriate actions of CONNOLLY, MORRIS and others, encouraging, promoting

and maintaining the unlawful and inappropriate relationship between CONNOLLY,

MORRIS, Bulger, and Flemmi, intentionally, knowingly and/or recklessly failing to train,

monitor, supervise, control, and sanction CONNOLLY, MORRIS and others, failing to

establish adequate policies and procedures pertaining to the informant/handler

relationship and intentionally failing to implement and enforce the policies and

procedures which were in place, and generally fostering an environment at FBI – Boston

in which agents were allowed and encouraged to engage in unlawful and inappropriate

activities which were likely to, and did, result in the violation of private citizens

Constitutional civil rights.  This includes the knowing and/or reckless disregard of the

affirmative actions of CONNOLLY, MORRIS and others, in providing information to

Bulger and Flemmi which directly lead to the murders of Michael J. Donahue and

Edward Brian Halloran.

### B.     Mr. Donahue's Murder

26.     At all relevant times, Edward Brian Halloran ("Halloran" or "Brian

Halloran") was a criminal associated with Bulger and Flemmi.  *United States v. Salemme*,

91 F.Supp.2d 141, at 185, 208-209. [5]

---

[5] United States District Court for the District of Massachusetts, Docket No. 94-CR-10287.  As noted, hearings conducted by Judge Wolf in this case culminated in the decision of the Court found at *United States v. Salemme*, 91 F.Supp.2d 141 (D. Mass. 1999).  The plaintiffs expressly incorporate the entirety of Judge Wolf's Findings herein.

27. "In or about January 1982, Brian Halloran approached the FBI in Boston and offered to cooperate in the investigation of the Roger Wheeler homicide." *Connolly Indictment*, at 11.

28. Immediately prior to his death, Roger Wheeler was a businessman who owned World Jai Alai, a legal sport and gambling enterprise doing business in Florida and Connecticut. *United States v. Salemme*, 91 F.Supp.2d 141, at 208. Wheeler suspected that John Callahan, the President of World Jai Alai and an associate of Halloran, Bulger and Flemmi, "was skimming money from World Jai Alai for himself and [these] members of the Winter Hill Gang...." *United States v. Salemme*, 91 F.Supp.2d 141, at 208-209. After ordering an audit and firing Callahan, "Wheeler was shot and killed as he left his golf club in Tulsa [, Oklahoma]." *United States v. Salemme*, 91 F.Supp.2d 141, at 208, 209; *Connolly Indictment*, at 10.

29. "Based on descriptions provided by witnesses, Bulger, Flemmi, and John Martorano, [a member of the Winter Hill Gang and] a fugitive, became prime suspects." *United States v. Salemme*, 91 F.Supp.2d 141, at 209.

30. "Among other things, Halloran told [the FBI] that he had met Bulger and Flemmi at Callahan's apartment and was asked if he was willing to murder Wheeler," *United States v. Salemme*, 91 F.Supp.2d 141, at 209.

31. Halloran also "told FBI agents ... that Bulger and Flemmi, along with John Callahan and John Martorano ... had [in fact] caused Roger Wheeler to be murdered." *Connolly Indictment*, at 11.

32. "[One of the FBI agents who interviewed Halloran] consulted MORRIS, as the supervisor of the Organized Crime squad, to get his assessment of Halloran's

reliability as a potential witness. [The Agent] told MORRIS about Halloran's allegations concerning Bulger and Flemmi." *United States v. Salemme*, 91 F.Supp.2d 141, at 209.

33.   "MORRIS realized that Halloran's allegations threatened their [Bulger and Flemmi's] futures as FBI informants...." *United States v. Salemme*, 91 F.Supp.2d 141, at 209. Halloran's allegations, therefore, threatened the relationship between CONNOLLY, MORRIS, Bulger, and Flemmi.

34.   "MORRIS and CONNOLLY did not want to lose their prize sources, who were important to their investigations, and to their own status and future careers in the FBI." *United States v. Salemme*, 91 F.Supp.2d 141, at 209. Furthermore, MORRIS and CONNOLLY were receiving bribes from Bulger and Flemmi, and any investigation might disclose past bribes and/or preclude future bribes.

35.   "MORRIS [therefore] told [the Agent interviewing Halloran] that Halloran was untrustworthy and unstable, and would not be a believable witness." *United States v. Salemme*, 91 F.Supp.2d 141, at 209. And while the FBI in Oklahoma City had expressed interest in Halloran, *United States v. Salemme*, 91 F.Supp.2d 141, at 209, upon information and belief, no Oklahoma agents were ever informed of Halloran's discussions with the FBI in Boston.[6]

36.   "MORRIS, however, told CONNOLLY that Halloran was speaking with [the FBI], and of the information he was providing about Bulger and Flemmi." *United States v. Salemme*, 91 F.Supp.2d 141, at 209. Specifically, MORRIS "told CONNOLLY that Halloran had implicated Bulger and Flemmi in the Roger Wheeler homicide." *Connolly Indictment*, at 11.

---

[6] Judge Wolf's Findings indicate that "no evidence was introduced [at hearing] indicating that any of [the Oklahoma FBI Field Office's] agents were informed of Halloran's discussions with the FBI in Boston." *U.S. v. Salemme*, 91 F.Supp.2d 141, at 209.

37.    "MORRIS expected [and anticipated] that CONNOLLY would tell Bulger and Flemmi about Halloran's charges," knowing "that doing so would endanger Halloran." *United States v. Salemme*, 91 F.Supp.2d 141, at 209.  Specifically, MORRIS knew that Bulger would retaliate against Mr. Halloran, to prevent Mr. Halloran from fully informing on Bulger and later testifying in Court regarding the Wheeler murder.

38.    "CONNOLLY [in turn and as expected] told Bulger and Flemmi about Halloran's cooperation and claims." *United States v. Salemme*, 91 F.Supp.2d 141, at 209. CONNOLLY also knew that Bulger would retaliate against Mr. Halloran, to prevent Mr. Halloran from fully informing on Bulger and later testifying in Court regarding the Wheeler murder.

39.    "In early May 1982, the FBI denied Halloran's request to be placed in the Witness Protection Program and told him that his relationship with the FBI was terminated." *United States v. Salemme*, 91 F.Supp.2d 141, at 209.

40.    The FBI and its supervisory officials, however, knew of the danger to Halloran and those around him, and recklessly and intentionally disregarded this danger. In the hearing preceding Judge Wolf's Findings, Former United States Attorney William Weld testified that: "[J]ust a few days before Mr. Halloran [and Mr. Donahue were] killed, I was having a conversation with Mr. Fitzpatrick, who was the Assistant Special Agent in Charge of the FBI.  And [Mr. Fitzpatrick] said to me: 'You know they always say there's a danger for this; they may get killed for cooperating.  I'm telling you, this guy [Halloran], I would not want to be standing next to this guy [Halloran].'  And then a

few days later, [Halloran] was killed." *United States v. Salemme*, 94-CR-10287,

Testimony of William Weld, May 27, 1998.

      41.    Specifically, because of MORRIS and CONNOLLY's unlawful and

inappropriate relay of confidential information, Bulger and others[8] gunned down

Halloran outside the Topside Café[9] in South Boston, on May 11, 1982. Halloran's

murder occurred a month after he had provided information about Bulger to the FBI, and

within ten days of the FBI's denial of his witness protection program admission. Michael

J. Donahue, a neighbor of Halloran who on an errand had offered Halloran a ride home,[10]

was killed as he sat next to Halloran.

      42.    "MORRIS received his first payment of $1000 from Bulger and Flemmi in

June of 1982, shortly after causing CONNOLLY to tell them of Halloran's allegations."

*United States v. Salemme*, 91 F.Supp.2d 141, at 227. CONNOLLY facilitated this

payment, which was, upon information and belief, in appreciation for the Halloran

information. *Id.*

---

[7] Judge Wolf's Findings indicate that the time gap between Connolly providing information to Bulger and Flemmi and the murder of Halloran and Mr. Donahue was "several weeks." *U.S. v. Salemme*, 91 F.Supp.2d 141, at 208.

[8] Upon information and belief, Kevin Weeks, a known close associate of Bulger and Flemmi, acted as look-out to these killings. In fact, upon information and belief, it is Weeks that identifies Bulger as one of the triggermen in Mr. Donahue and Halloran's murder. Furthermore, there is some evidence that CONNOLLY witnessed these killings and/or was in the area.

[9] At some point thereafter, the Topside Café became known as the Pier Restaurant.

[10] Mr. Donahue's presence at the murder scene was occasioned by a stop to make a phone call during an errand. On the day of his death, Mr. Donahue had taken the car of his father, a Boston Police officer, to purchase bait for an overnight family fishing trip, which was planned to celebrate his son Thomas' receiving of First Communion the weekend before, and Mother's Day. During this errand, Mr. Donahue stopped at the Topside Café and called his wife Patricia Donahue, and told her that he would be home soon for supper. Upon information and belief, it was at the Topside that Mr. Donahue ran into Halloran. Mr. Donahue knew Halloran as a neighbor and through Mr. Donahue's union membership as a truck driver. Mr. Donahue had offered Halloran a ride home to the neighborhood. It was while Mr. Donahue and Halloran sat in the car preparing to leave from the Topside that they were killed.

### C.   The Ongoing Pattern and Practice of Unlawful and

### Inappropriate Activity within FBI – Boston

43.   The Donahue and Halloran murders resulted from a larger pattern of unlawful and inappropriate conduct accomplished at and by FBI – Boston over the span of more than three decades, whereby Agent CONNOLLY and Supervisory Agent MORRIS, and their predecessors[11], utilized their positions as special agents of the FBI, in concert with Mr. Bulger, Mr. Flemmi, and other organized crime figures, to conduct an ongoing pattern of unlawful and inappropriate activity through the Boston Field Office of the FBI, which was intentionally and continuously ignored, and in fact encouraged, by supervisory officials who failed to adequately train, supervise, monitor, and control CONNOLLY, MORRIS and other agents.

44.   In fact, the relationship between Flemmi and the FBI began in 1965, when Flemmi became a confidential informant under Special Agent H. Paul Rico, the founding head of FBI-Boston's Organized Crime Squad and therefore MORRIS' predecessor.

45.   Bulger was opened as an informant in or about September 1975, by CONNOLLY himself. *Connolly Indictment*, at 2-3.  Furthermore, while Flemmi had been closed as an informant for a period of time, CONNOLLY officially re-opened

---

[11] Given the documents which have come to light on hearing of the defendants' motion for a new trial in the case of *Commonwealth v. Limone et al.*, Suffolk Superior Court, Indictment Nos. 32367, 32369 and 32370 (January 8, 2001) (Hinkle, J.), there is evidence that this pattern extends back through the tenure of MORRIS' predecessor as head of the Organized Crime Squad at FBI - Boston, H. Paul Rico.  As noted *infra*, Rico was the original head of the Organized Crime Squad and was Flemmi's original handler.  It is alleged that Rico intentionally withheld evidence that would tend to exculpate Mr. Limone (and co-defendants) and inculpate an associate of Steven Flemmi in the murder of Teddy Deegan.  Further, Judge Wolf held in *United States v. Salemme*, 91 F.Supp.2d 141, at 182, that in 1969 Rico told Mr. Flemmi that he was to be indicted.  "In doing so, Rico aided and abetted the unlawful flight of a fugitive in violation of 18 U.S.C. secs. 1073 and 1072."  *Id.*  The government did not dispute this finding.  *Id.*  Moreover, Judge Wolf found that Special Agent Rico engaged in criminal misconduct, including suborning perjury.  *Id,* at 182.

Flemmi as an informant in or about September 1980. *Connolly Indictment*, at 3. At all times relevant, CONNOLLY was Bulger and Flemmi's FBI handler.

46.     Bulger and Flemmi's status as informants was continued notwithstanding CONNOLLY and MORRIS' knowledge of crimes, including violent crimes and murder, committed by Bulger and Flemmi before and during this same time period, and CONNOLLY and MORRIS' knowledge and understanding that the confidential information provided by them to Bulger and Flemmi would and did directly result in Bulger, Flemmi and others committing crimes, including murder.

47.     CONNOLLY and MORRIS tolerated, and in fact encouraged and assisted, Bulger and Flemmi's commission of certain crimes, including murder and obstruction of justice.

48.     CONNOLLY and MORRIS's unlawful and inappropriate exchange of confidential FBI information and assistance and interference with law enforcement efforts for bribes and information from Bulger and Flemmi also continued throughout the time Bulger and Flemmi were informants, and continued even after CONNOLLY retired from the FBI.

49.     Moreover, CONNOLLY, MORRIS and other FBI agents undertook unlawful and inappropriate acts to continue Bulger and Flemmi's status as informants, and protect them from investigation, sanction and prosecution, so this mutually advantageous unlawful and inappropriate exchange could continue.  This included direct acts of CONNOLLY, MORRIS and other agents in obstructing and frustrating ongoing criminal investigations, providing Bulger and Flemmi with confidential law enforcement information, including the indentity of other confidential informants and potential

17

witnesses, and failing to report and concealing information relevant to ongoing criminal investigations.  This also included facilitating and encouraging the prosecution of innocent individuals for crimes committed by Bulger, Flemmi, and their associates.

50.     MORRIS, at all relevant times the head of the Organized Crime Squad and the direct supervisor of CONNOLLY, in knowing and willful violation of his responsibilities as an FBI supervisor, also intentionally and recklessly disregarded, and in fact encouraged and assisted, as a pattern and practice, the unlawful and inappropriate activities of CONNOLLY, Bulger, and Flemmi.  MORRIS also promoted and maintained an environment at FBI-Boston, and specifically in the Organized Crime Squad, that encouraged this unlawful and inappropriate conduct.  This pattern and practice was accomplished in willful and reckless disregard to the Constitutional civil rights of private citizens, and did as a foreseeable consequence violate the civil rights of private citizens, including the Donahues.

51.     SARHATT, FITZPATRICK and other supervisory officials, at all relevant times the SAC and ASAC of FBI – Boston and therefore the supervisors of CONNOLLY and MORRIS, in knowing and willful violation of their responsibilities as an FBI supervisors, also intentionally knowingly and recklessly disregarded, and in fact encouraged and assisted, as a pattern and practice the unlawful and inappropriate activities of CONNOLLY, MORRIS, Bulger, and Flemmi.  SARHATT, FITZPATRICK nad other supervisory officials also promoted and maintained an environment at FBI-Boston over four decades that encouraged this unlawful and inappropriate conduct.  This pattern and practice was accomplished in willful and reckless disregard to the

Constitutional civil rights of private citizens, and did as a foreseeable consequence violate the civil rights of private citizens, including the Donahues.

52.     The FBI itself also intentionally, knowingly and/or recklessly disregarded, and in fact encouraged and assisted, as a pattern and practice, the unlawful and inappropriate activities of CONNOLLY, MORRIS, Bulger, and Flemmi, and condoned and encouraged the lack of supervision on the part of SARHATT, FITZPATRICK, MORRIS, and other supervisory officials.  The FBI also promoted and maintained an environment at FBI-Boston that encouraged this unlawful and inappropriate conduct, and encouraged the knowing and/or reckless disregard of this conduct by supervisory officials.  This pattern and practice was accomplished in knowing and reckless disregard to the Constitutional civil rights of private citizens, and did as a foreseeable consequence violate the civil rights of private citizens, including the Donahues.

53.     At the same period of time, guidelines were in effect regarding FBI engagement of informants, promulgated by the Attorney General.  "The Attorney General directed that, '[u]nder no circumstances shall the FBI take any action to conceal a crime by one of its informants.'" *United States v. Salemme*, 91 F.Supp.2d 141, at  194. Further, "[t]he [Attorney General] Levi Memorandum also established the same procedure where the FBI had 'knowledge' that one of its informants had committed a 'serious' crime 'unconnected with his FBI assignment.  As described in [the Wolf Findings of Fact], these requirements too were regularly ignored with regard to Bulger and Flemmi." *Id*, at 194.

54.     "The evidence in this case indicates that at least with regard to Organized Crime matters, the [Attorney General's] Guidelines were ignored from the outset.  There

were no special seminars or major training concerning the guidelines that was received be

the witnesses in this case. MORRIS apparently did not read the new informant

Guidelines when they were issued. The informant Guidelines were discussed

occasionally in more general training sessions, but the Organized Crime Squad

supervisors in Boston did not get answers to any questions that they had." *United States

v. Salemme,* 91 F.Supp.2d 141, at 194.

55.     "In general, MORRIS and his successors as the supervisor of the

Organized Crime squad, Ring, viewed the Attorney General's Guidelines as inconsistent

with the Top Echelon informant program and utterly unrealistic. Thus, they felt the

Guidelines did not apply to Organized Crime matters. In their view, Top Echelon

informants were, by definition, members of Organized Crime, who had been involved in

serious criminal matters. Thus, Morris and Ring ignored provisions of the Attorney

General's Guidelines that required authorization of criminal activity and reporting of

unauthorized crime committed by informants." *United States v. Salemme*, 91 F.Supp.2d

141, at 195.

56.     "With regard to Flemmi and Bulger, at least, the requirements of the

Guidelines were either ignored or treated as a bureaucratic nuisance." *United States v.

Salemme*, 91 F.Supp.2d 141, at 196.

57.     "The evidence also indicates that FBI Headquarters did not effectively

supervise the implementation of the Guidelines." *United States v. Salemme*, 91

F.Supp.2d 141, at 196.

58.     When the FBI Headquarters did audit the Boston Office it routine

overlooked obvious deficiencies in the files concerning Bulger and Flemmi. "Moreover,

while FBI Headquarters periodically audited the Boston office's informant files, no deficiencies with regard to the handling of Bulger or Flemmi were noted, despite the fact that those files were replete with information indicating that Bulger and Flemmi were involved in serious criminal activity that had not been authorized in writing, investigated by the FBI, reported to other law enforcement agencies, or reported to the Assistant Attorney General for the Criminal Division as required by the Guidelines." *United States v. Salemme*, 91 F.Supp.2d 141, at 196.

59.     "Thus, at least with regard to Bulger and Flemmi, the FBI as an institution essentially disregarded the carefully calibrated standards and procedures that were developed by Attorney General Levi and his successors for continuing to use informants after the FBI had decided to employ them." *United States v. Salemme*, 91 F.Supp.2d 141, at 196.

60.     "As a result, it is not disputed that the Guidelines were not obeyed at least with regard to Flemmi and Bulger." *United States v. Salemme*, 91 F.Supp.2d 141, at 197. United States Attorney Donald Stern acknowledged that FBI Guidelines were not followed in critical areas: "The FBI and attorney general informant guidelines, together with FBI administrative controls, are intended to provide the necessary checks and balances and to ensure that often difficult decisions are made at appropriate levels, based on complete and accurate information.  While admittedly no system is foolproof, clearly those objectives were not met here, at least in certain critical respects." *Id*, at 197.

61.     CONNOLLY and MORRIS routinely ignored FBI policies and procedures regarding reporting on contacts with informants, and thereby hid the true nature of their relationship with Bulger and Flemmi.  In so doing, they concealed, and assisted, in

ongoing criminal activity in which Bulger and Flemmi were involved. *United States v. Salemme*, 91 F.Supp.2d 141, at 188-198.

62.    Throughout the same period of time, and extending to the present, the FBI and the supervisory officials of FBI - Boston, including but not limited to SAC SARHATT and ASAC FITZPATRICK, intentionally attempted to and did conceal the unlawful and inappropriate activities of CONNOLLY, MORRIS, Bulger, and Flemmi. MORRIS, in turn, as supervisor of CONNOLLY, intentionally attempted to and did conceal the unlawful and inappropriate activities of CONNOLLY, Bulger and Flemmi. These supervisory officials, and the FBI itself, also promoted and maintained an environment at FBI-Boston that encouraged concealment of unlawful and inappropriate activities by agents and informants.

63.    The FBI's willful disregard, encouragement and eventual concealment of these unlawful and inappropriate activities was motivated, in part, by a policy and desire to prosecute the LCN, an organized crime group competing with that of Bulger. The concurrent and subsequent cover-up activity was additionally motivated by a desire to protect the FBI, FBI-Boston, and its agents from embarrassment, sanction, and/or possible prosecution.

64.    Notably, the FBI, and specifically SARHATT and FITZPATRICK as the SAC and ASAC of FBI-Boston, continued Bulger and Flemmi as FBI informants, and continued the relationship between CONNOLLY, MORRIS, Bulger and Flemmi, despite strong evidence known to these supervisory officials that: a) Bulger and Flemmi were involved in serious and violent crime, including murder; b) CONNOLLY and MORRIS were providing confidential law enforcement information to Bulger and Flemmi,

including the identities of other informants, resulting in crimes including murder and the compromise of criminal investigations; and c) CONNOLLY and MORRIS, and others, were giving and receiving bribes. MORRIS, in turn, knowing the unlawful and inappropriate activities of CONNOLLY, Bulger and Flemmi, and in his supervisory role as head of the Organized Crime Squad, encouraged and assisted in continuing the relationship between CONNOLLY, Bulger and Flemmi.

65.    Furthermore, the FBI and its supervisory officials, including SARHATT and FITZPATRICK, their successors, and MORRIS himself, knowing of the unlawful and inappropriate conduct of CONNOLLY, MORRIS, Bulger and Flemmi, undertook efforts to conceal these crimes, and most especially took efforts to conceal the involvement and complicity of FBI personnel in these crimes. This effort included the encouragement of and assistance in prosecutions of innocent individuals for crimes actually committed by Bulger, Flemmi and their associates. As detailed below, this intentionally crafted veil of concealment continues to the present day, and has only recently been partially pierced by the investigative and prosecutorial efforts of the United States Attorney's Office in Boston under United States Attorney Donald Stern and a special investigative unit of the United States Attorney's Office under Special Prosecutor John Durham, and the judicial efforts of United States District Court Judge Mark Wolf in *United States v. Salemme*[12] and Suffolk Superior Court Judge Margaret Hinkle in *Commonwealth v. Limone.*[13]

---

[12] *United States v. Salemme*, 94-CR-10287-MLW, 91 F.Supp.2d 141 (D. Mass. 1999).
[13] Suffolk Superior Court, Indictment Nos. 32367, 32369 and 32370 (January 8, 2001). See also Footnote 12, supra.

### D.   The Lancaster Street Garage Investigation

66.   One example of the above-described pattern of unlawful and inappropriate
conduct, willful disregard and concealment within FBI-Boston occurred almost two years
before Halloran and Mr. Donahue were murdered.

67.   In and around July and August of 1980, the Massachusetts State Police
were investigating organized crime activity at a garage on Lancaster Street in Boston.
See Judge Wolf's Findings, *United States v. Salemme*, 94-CR-10287, 91 F.Supp.2d 141,
at  202 (D. Mass. 1999).

68.   "Flemmi and Bulger were among those targeted by the Massachusetts
State Police [in this investigation]." *United States v. Salemme*, 91 F.Supp.2d 141, at  202.

69.   Despite efforts of the State Police, "MORRIS discerned that the
Massachusetts State Police was conducting electronic surveillance at the Lancaster Street
Garage...." *United States v. Salemme*, 91 F.Supp.2d 141, at  202.

70.   Upon information and belief,  with MORRIS' information, "CONNOLLY
was ... able to confirm for Flemmi and Bulger that the Lancaster Street Garage was
bugged." *United States v. Salemme*, 91 F.Supp.2d 141, at  202.

71.   "Flemmi and Bulger advised some of their associates ... and the
discussion of criminal activity at the Lancaster Street Garage ceased." *United States v.
Salemme*, 91 F.Supp.2d 141, at 203.

72.   "[SAC] SARHATT recognized that Bulger and Flemmi might be
prosecuted for committing serious crimes.  Their prosecution would have raised within
the FBI, and perhaps more widely, questions concerning the Bureau's decision to work

with them rather than investigate them." *United States v. Salemme*, 91 F.Supp.2d 141, at 203.

73.     Furthermore, SARHATT knew of concerns that CONNOLLY and MORRIS had tipped Bulger and Flemmi to the investigation and electronic surveillance. *United States v. Salemme*, 91 F.Supp.2d 141, at 203.

74.     However, after speaking only with CONNOLLY, MORRIS, Assistant United States Attorney Jeremiah O'Sullivan[14], and Bulger himself, "SARHATT in December 1980 decided to continue Bulger and Flemmi as informants, rather than target them for investigation." *United States v. Salemme*, 91 F.Supp.2d 141, at 205. See also *id*, at 203-205.

75.     ASAC Robert Fitzpatrick, who had come to Boston in January 1981, also met with Bulger in early 1981. *United States v. Salemme*, 91 F.Supp.2d 141, at 207.

76.     "Fitzpatrick testified [at hearings held in *United States v. Salemme*] that he had misgivings [after this meeting, and before the Wheeler, Halloran, Donahue and Callahan murders] about continuing Bulger and Flemmi as informants.  More specifically, he stated that he was concerned that Bulger and Flemmi were not being sufficiently productive, and were engaged in serious crime, including crimes of violence and collecting 'tribute' from drug traffickers.  There is no written record indicating that Fitzpatrick ever expressed such concerns to Sarhatt, however." *United States v. Salemme*, 91 F.Supp.2d 141, at  207.

77.     With no dissent from FITZPATRICK, SARHATT again decided to

---

[14] Judge Wolf's Findings call into question SARHATT's rendition of his discussion with AUSA O'Sullivan, and AUSA O'Sullivan was unable to testify at hearing due to health problems. See *United States v. Salemme*, 91 F.Supp.2d 141, at 204.  Furthermore, AUSA O'Sullivan was the prosecutor who opted not to indict Bulger and Flemmi in a 1978 race-fixing scheme investigation in which Bulger was a "primary subject." *United States v. Salemme*, 91 F.Supp.2d 141, at  199-200.

continue Bulger and Flemmi as informants, and upon information and belief, any investigation into the unlawful and inappropriate activities of CONNOLLY, MORRIS, Bulger and Flemmi ceased. *United States v. Salemme*, 91 F.Supp.2d 141, at 207.

78.     In fact, "[a]t the same time the FBI was receiving, but not investigating, reports from informants regarded as reliable concerning criminal activity in which Bulger and Flemmi were engaged." *United States v. Salemme*, 91 F.Supp.2d 141, at 208.

79.     "For example, in 1981 and 1982, the FBI was told that Bulger and Flemmi were involved in cocaine distribution with Brian Halloran. The Bureau was also advised that bookmakers were required to pay Bulger and Flemmi to operate in South Boston. These allegations were not investigated by the FBI. Rather, with regard to Flemmi's reported drug activity, Connolly wrote that "source's contacts, at my direction, with individuals thought to possess information regarding [Judge Wood's] murder, may have resulted in the false belief that source is involved in narcotics."" *United States v. Salemme*, 91 F.Supp.2d 141, at 208.

80.     The Lancaster Street Garage investigation, among other previous and subsequent events, provided the FBI and its supervisory officials notice of the unlawful and inappropriate conduct of CONNOLLY, MORRIS, Bulger, Flemmi, and others within FBI – Boston. The FBI and its supervisory officials recklessly and/or intentionally failed to remedially act upon this notice, and other events, and instead allowed and encouraged the unlawful and/or inappropriate relationship between CONNOLLY, MORRIS, Bulger and Flemmi, and the unlawful and inappropriate activities that defined this relationship, to continue.

**E.     FBI – Boston Continues its Relationship with Bulger and Flemmi after Mr. Donahue's Murder, and Intentionally Keeps Information regarding the Murder from Other Law Enforcement Agencies, the Public and the Donahue Family**

80.     "No one has ever been convicted of [the Donahue and Halloran] murder[s]. MORRIS, however, believed [and, upon information and belief, knew] that Bulger and Flemmi were responsible. [In fact, t]he next time that MORRIS asked CONNOLLY to tip Flemmi off to an investigation, he added that he "did not want another Halloran" -- meaning another murder." *United States v. Salemme*, 91 F.Supp.2d 141, at 210.

81.     "MORRIS did not, however, hesitate to capitalize on the extraordinary disclosure of highly confidential information that he had caused CONNOLLY to make to Bulger and Flemmi. At some point prior to Halloran's murder CONNOLLY had told MORRIS that Bulger and Flemmi "really liked him," and hoped that MORRIS would let them know if he ever needed anything." *United States v. Salemme*, 91 F.Supp.2d 141, at 210.

82.     "Several weeks after Halloran's murder MORRIS was sent [by the FBI] to Glencoe, Georgia for drug training. At that time, although married, MORRIS was romantically involved with his secretary. While in Georgia, MORRIS decided that he would enjoy a visit from her. Recalling the offer communicated through CONNOLLY, he asked CONNOLLY if Bulger and Flemmi would provide the funds necessary to buy his secretary a plane ticket." *United States v. Salemme*, 91 F.Supp.2d 141, at 210.

83.    "CONNOLLY subsequently gave MORRIS' secretary an envelope containing $1000 cash, which MORRIS understood had come from Bulger and Flemmi.... She took the money and made the trip." *United States v. Salemme*, 91 F.Supp.2d 141, at 210.[15]

84.    "MORRIS knew that the fact that Bulger and Flemmi had been told by CONNOLLY of Halloran's effort to cooperate with the FBI would be relevant to any investigation of Halloran's murder, but he never provided this information to anyone in the FBI. Nor did he tell the Suffolk County District Attorney's Office, which conducted an investigation and obtained an indictment, but not a conviction, of Jimmy Flynn for the Halloran murder." *United States v. Salemme*, 91 F.Supp.2d 141, at 210.  CONNOLLY also failed to provide this information to anyone at the FBI or at the Suffolk County District Attorney's Office.

85.    Furthermore, while SAC SARHATT and ASAC FITZPATRICK knew of Halloran's cooperation, neither provided this information to the Suffolk County District Attorney's office or other law enforcement agencies investigating the Halloran, Donahue, and Wheeler murders.  In fact, upon information and belief, FBI-Boston participated in the investigation underlying the prosecution of Mr. Flynn, and efforts were taken to conceal information about Bulger and Flemmi's role in the Wheeler, Halloran and Donahue murders.

86.    Around the same time, "a decision was made [by supervisory officials at the FBI, including SAC SARHATT, ASAC FITZPATRICK, and MORRIS] to keep Bulger and Flemmi open as sources unless and until "substantiated information"

---

[15] Judge Wolf's findings indicate that Morris' secretary was told that the money was Morris', *U.S. v. Salemme*, 91 F.Supp.2d 141, at 210, and it does not appear that there is no evidence that she knew the money derived from Bulger and Flemmi.

implicating them in the murders was received." *United States v. Salemme*, 91 F.Supp.2d 141, at 210.

87.    "It does not appear that there was any discussion of whether Bulger and Flemmi had immunity that would protect them from possible prosecution for the Wheeler or Halloran [or Donahue] murders.  Nor does it appear that the implications of the Attorney General's Guidelines concerning informants were considered [with regard to Bulger and Flemmi]. More specifically, there was evidently no discussion of whether local law enforcement authorities in Boston or Oklahoma, which were conducting investigations, should be advised of the information Halloran had provided concerning Bulger and Flemmi or of whether the Assistant Attorney General should have been consulted." *United States v. Salemme*, 91 F.Supp.2d 141, at 210-211.

88.    "On August 4, 1982, the body of John Callahan was found in the trunk of his car in Miami, Florida. He had evidently been dead for several weeks." *United States v. Salemme*, 91 F.Supp.2d 141, at 211.

89.    "On September 23, 1982, Flemmi was administratively closed as an informant.  CONNOLLY and MORRIS told FBI Headquarters that they were closing Flemmi because he was being targeted for possible prosecution in the 98 Prince Street and 51 North Margin investigations. [Not because of the Donahue, Halloran, Wheeler, or Callahan killings].  This was not true." *United States v. Salemme*, 91 F.Supp.2d 141, at 211.

90.    "As in the past, Flemmi was not told he had been closed as a source.  In any event, Flemmi continued to provide information regularly to the FBI.  Indeed, the records reflect forty-six contacts between Flemmi and the FBI between February 1983

and May 1986, a period when Flemmi was administratively closed as a source." *United States v. Salemme*, 91 F.Supp.2d 141, at 211.

91.    "There was no diminution in Bulger's official status as an informant. Rather ... in February 1983, Bulger was elevated to Top Echelon status." *United States v. Salemme*, 91 F.Supp.2d 141, at 211.

92.    "Nevertheless, [SA] Montanari attempted to investigate whether Bulger and/or Flemmi played a role in the Wheeler homicide and related matters. Pursuant to standard practice, the files of his investigation were kept in an area that was accessible to other agents. Montanari, however, suspected that CONNOLLY was surreptitiously reviewing those files and furnishing information about his investigation to Bulger and Flemmi. He complained to [Assistant Special Agent in Charge Robert] FITZPATRICK, who was sufficiently concerned that he locked the files in his own office." *United States v. Salemme*, 91 F.Supp.2d 141, at 211.

93.    "However, FITZPATRICK [apparently] did not want anyone outside of the Boston office of the FBI to have access to Bulger and Flemmi. In April 1983, the FBI in Oklahoma City sought authority from the Director of the FBI to interview Bulger and Flemmi. FITZPATRICK strongly and successfully opposed this request", *United States v. Salemme*, 91 F.Supp.2d 141, at 211, "in part by falsely claiming that he had interviewed Bulger about the matter." *Id*, at 156. "FITZPATRICK claimed that he had interviewed Bulger concerning the Wheeler and Callahan murders, and that Bulger had denied being involved. As FITZPATRICK testified, this was not true. FITZPATRICK had never questioned Bulger on these subjects. Although he himself did not trust CONNOLLY fully, FITZPATRICK also argued that Oklahoma City should not be

allowed to interview Bulger and Flemmi in part because CONNOLLY was in continual

contact with them and was disseminating all relevant information that he received

regarding the Wheeler and Callahan murders. In essence, the Boston office of the FBI

was determined to control the information, and therefore the decisions to be made,

concerning its prize informants." *Id*, at 211.

94.    "In May 1983, shortly after FITZPATRICK prevented FBI agents from

Oklahoma City from interviewing Bulger and Flemmi, CONNOLLY urged the SAC to

reopen Flemmi as an informant because he was continuing 'to voluntarily furnish

sensitive information of an extremely high quality.'" *United States v. Salemme*, 91

F.Supp.2d 141, at 211.

95.    "The timing of this memorandum suggests that it may have been, in part,

an attempt by CONNOLLY to determine whether there was a threat that Flemmi would

soon be charged as a result of the Halloran and Callahan murder investigations." *United*

*States v. Salemme*, 91 F.Supp.2d 141, at 211-212.

96.    "[I]n November 1983, Bulger and Flemmi were interviewed together by

Montanari and [Special Agent] Brendan Cleary.  It was highly unusual for two subjects

of an investigation to be interviewed together.  Bulger and Flemmi denied any

involvement in the Wheeler and Callahan murders.  They refused, however, to take a

polygraph examination and objected to being photographed." *United States v. Salemme*,

91 F.Supp.2d 141, at 212.  Upon information and belief, no follow up was conducted on

this interview, and "[o]fficially, [the investigation into the Wheeler, Halloran and

Donahue murders] remains open." *Id*, at 212.

97.     In sum, "[t]he FBI in Boston ... succeeded in keeping agents from other offices and local law enforcement officials from speaking to Bulger and Flemmi," *United States v. Salemme*, 91 F.Supp.2d 141, at 208, and consequently, from successfully investigating the murders of Wheeler, Halloran, and Mr. Donahue.

98.     Subsequently, "the FBI in Boston ... departed from the Bureau's standard procedures to render the information that it had received from Halloran regarding Bulger and Flemmi virtually inaccessible to others who might wish to review or evaluate it. More specifically, in 1982 and 1983, FBI reports containing allegations against an individual were to be indexed by that individual's name and placed in an investigative file. With one exception, however, the many reports containing Halloran's charges against Bulger and Flemmi were not properly indexed with a reference to their names. Thus, these documents were not found or considered by the Department of Justice officials who were assigned, in July 1997, as a result of [the *United States v. Salemme* matter] to review allegations that had been made by informants and witnesses against Bulger and Flemmi." *United States v. Salemme*, 91 F.Supp.2d 141, at 212.

99.     In 1988 or 1989, Joseph Murray, a known member of the Winter Hill Gang, was referred to the FBI-Boston Office with information. *United States v. Salemme*, 91 F.Supp.2d 141, at 157, 256-258. Murray had implicated Bulger and another individual named Patrick Nee in the murders of Halloran and Mr. Donahue, and "claimed to know of a witness who saw Bulger participate in the Halloran [and Donahue] murder[s]." *Id*, at 157. Also see *id*, at 256-258. Murray also alleged that CONNOLLY and SA John Newton (and others) were selling information regarding law enforcement activities to Bulger and Flemmi. *Id*, at 157, 256-258.

100.    In June of 1989, SA Edward Clark and SA Edward Quinn of the Boston FBI Office interviewed Murray. *United States v. Salemme*, 91 F.Supp.2d 141, at 257. SA Quinn was "a member of the Organized Crime squad who had then worked with CONNOLLY for thirteen years and characterized CONNOLLY as a 'close friend'." *Id.*

101.    In this interview, "Murray was either not asked about his allegations concerning CONNOLLY and Newton or his responses were not recorded in the notes and FBI report of the interview. ASAC Dennis O'Callahan, however, subsequently prepared a memorandum, which Ahearn sent to FBI Headquarters, stating that Murray's allegations were unsubstantiated. In addition, Murray evidently was not questioned in detail about the information he indicated that he had concerning Bulger's role in the Halloran murder. Moreover, the information Murray did provide was not given to the FBI agents responsible for the Halloran murder investigation or indexed in a way that would permit them to find it. Nor was any effort made to employ the willing Murray as a source of information to be used against Flemmi, Bulger, or anyone." *Id,* at 154 n.3, 157, 256-258. "Accordingly, Murray was effectively eliminated as a threat to the symbiotic relationship between the FBI and Bulger and Flemmi." *Id,* at 258.

102.    "After CONNOLLY retired, in about 1992, the United States Attorney's Office began a grand jury investigation of Bulger and Flemmi." *United States v. Salemme*, 91 F.Supp.2d 141, at 158.

103.    "In 1992, the FBI refused a request by the then United States Attorney Wayne Budd, and his assistants, to confirm that Bulger was an informant or to permit them to review Bulger's informant file." *United States v. Salemme*, 91 F.Supp.2d 141, at 158.

104. "On about December 22, 1994, in anticipation of the imminent, additional charges in [*United States v. Salemme*], the United States Attorney's Office again asked the FBI if Bulger was an informant, emphasizing its need to know because the government would soon have to disclose exculpatory information to Bulger and his codefendants. Once again, the FBI resisted this request." *United States v. Salemme*, 91 F.Supp.2d 141, at 158.

105. Bulger's identity as an FBI informant was not admitted to the United States Attorney's office until January 9, 1995, four days after Flemmi had been arrested and the day before Bulger and Flemmi were indicted in the *United States v. Salemme* case,[16] see *United States v. Salemme*, 91 F.Supp.2d 141, at 295, and was not publicly admitted until an affidavit was filed in *United States v. Salemme*, 94-CR-10287 on June 3, 1997, pursuant to an Order of the Court (Wolf, J.) entered in on May 22, 1997.

106. According to Judge Wolf's Findings, "[f]rom the FBI's perspective, exposure of its agents' conduct had the foreseeable potential to reveal an extraordinary effort to protect Bulger and Flemmi that involved serious impropriety, if not illegality." *United States v. Salemme*, 91 F.Supp.2d 141, at 213. Therefore, "questions remain regarding ... the full degree to which the FBI in Boston has, from 1981 until recently, attempted to keep any such role from being discerned and demonstrated." *Id.*

107. Furthermore, soon after the murder of Michael J. Donahue, Patricia Donahue was in contact with the Boston Office of the FBI, seeking information related to the death of her husband.

---

[16] 94-CR-10428. The original indictment in this case was returned on October 25, 1994 against one defendant, Robert DeLuca. See *United States v. Salemme*, 91 F.Supp.2d 141, at 296. The superceding indictment was returned against the additional defendants, including Bulger and Flemmi, on January 10, 1995. *Id*, at 301.

108.    Each effort of Ms. Donahue, including this initial contact, was met with responses indicating that the FBI had no information, which was in each case untrue.

109.    In fact, the first conclusive information which Ms. Donahue and her three sons received about Michael J. Donahue's death came through Judge Wolf's Findings of Fact in *United States v. Salemme*,[17] and the subsequent Bulger and Connolly indictments,[18] seventeen years or more after Mr. Donahue's death.  Through these sources, the family of Michael J. Donahue learned that the FBI, which they had unwittingly turned to for information seventeen years prior, was directly responsible for the murder of their husband and father.

## F.    Indictments

110.    Beginning in or around January 1998 and continuing through June 1999, the Court (Wolf, J.) heard witnesses, received exhibits, and heard arguments on various motions to dismiss and suppress in *United States v. Salemme*, 94-CR-10287, culminating in the Order of the Court including Judge Wolf's Findings, referenced throughout this Complaint.  Much, if not the vast majority of the information elicited at this extended hearing had never been previously disclosed outside the confines of the FBI, most notably the connection between the FBI, Bulger and Flemmi, and the murders of Mr. Donahue and Halloran.  Some information relevant to this Complaint and Mr. Donahue's murder inevitably remains under seal in that case.

---

[17] *United States v. Salemme*, 91 F.Supp.2d 141 (D. Mass. 1999).
[18] *United States of America v. James J. Bulger et al.*, United States District Court for the District of Massachusetts, Docket No. 99-CR-10371; *United States v. John J. Connolly, Jr. et al*, U.S. District Court for the District of Massachusetts, Docket No. 99-CR-10428.

111.    Presumably as a result of being provided with information first elicited at the hearing held by Judge Wolf, in 1999, along with information gathered and verified by ongoing investigations by the Office of the United States Attorney in Boston under United States Attorney Donald Stern and a special investigative unit under Special Prosecutor John Durham, a Federal Grand Jury returned an indictment against Bulger implicating him in the murder of Mr. Donahue.  The indictment, in relevant part, reads: "On or about May 11, 1982, in the District of Massachusetts, the defendant **James J. Bulger**, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault Michael J. Donahue with the intent to murder Brian Halloran and did thereby kill and murder Michael J. Donahue in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws." *United States of America v. James J. Bulger et al.*, United States District Court for the District of Massachusetts, Docket No. 99-CR-10371.

112.    Similarly, on December 22, 1999, a federal Grand Jury returned an original indictment against CONNOLLY in *United States v. John J. Connolly, Jr. et al*, U.S. District Court for the District of Massachusetts, Docket No. 99-CR-10428-JLT.  The Superceding Indictment, quoted throughout this Complaint, was returned by a Federal Grand Jury and filed in the case against CONNOLLY on October 11, 2000.  The Superceding Indictment alleges that CONNOLLY committed various criminal acts of racketeering, racketeering conspiracy, obstruction of justice, conspiracy to obstruct justice, and false statement, including those acts which led to the death of Mr. Donahue and assisted in the subsequent cover-up.  *See Connolly Indictment.*

113.    Upon information and belief, MORRIS was given immunity from criminal prosecution regarding his unlawful and inappropriate activities with Bulger, Flemmi and CONNOLLY, in return for his agreement to provide testimony against CONNOLLY and others before the Federal Grand Jury and in *United States v. John J. Connolly, Jr. et al*, U.S. District Court for the District of Massachusetts, Docket No. 99-CR-10428-JLT.  See Shelley Murphy, *FBI Corruption Case Aimed at One Man*, THE BOSTON GLOBE, October 18, 2000, at B1.

114-128.    **Reserved**.

## COUNT I - VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS STATUTE, 18 U.S.C., § 1961, ET SEQ.

(MORRIS AND CONNOLLY AS DEFENDANTS; WINTER HILL GANG AND LCN AS ENTERPRISES)

129.     The plaintiffs reallege and reaffirm paragraphs 1 through 128 of this Complaint, and incorporate them by reference as if fully set forth herein.

130.     This Count is asserted by each of the plaintiffs against the defendants CONNOLLY and MORRIS under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., pursuant to 18 U.S.C. 1964(c) for violations of 18 U.S.C. §§ 1962 (b), (c), and (d).

### A. Persons

131.     CONNOLLY and MORRIS, at all relevant times to this Complaint, were "persons" as defined in 18 U.S.C. § 1961(3).

### B. Enterprises

132.     At all times relevant to this Complaint, the Winter Hill Gang was a RICO "enterprise" as defined in 18 U.S.C. § 1961(4). At all relevant times, the Winter Hill Gang was engaged in, and its activities affected, interstate commerce.

133.     At all times relevant to this Complaint, La Cosa Nostra was a RICO "enterprise" as defined in 18 U.S.C. § 1961(4). At all relevant times, the La Cosa Nostra was engaged in, and its activities affected, interstate commerce.

## C.  Predicate Acts

## PREDICATE RACKETEERING ACTS (STATE LAW)

134.   As described above, the individual defendants committed, and conspired

with one another and others to commit, repeated and continuous offenses chargeable

under State law and punishable by imprisonment for more than one year, over the period of

time from at least 1976 to December 1990, each of which constitutes "racketeering

activity" under 18 U.S.C. § 1961(1)(A), including but not limited to acts or threats

involving murder, bribery, and/or extortion.  The list of racketeering acts violative of State

law committed by the defendants includes, but is not limited to, those racketeering acts

outlined below as Racketeering Acts One through Five.


### Racketeering Act Number One (State Law)

### (Murder of Michael J. Donahue- CONNOLLY and MORRIS)

135.   The defendants CONNOLLY and MORRIS committed the following acts

involving murder, the commission of any of which alone constitutes the commission of

Racketeering Act Number One:


### a.   Murder and Accessory Before the Fact of Murder

136.   The plaintiffs reallege and reaffirm paragraphs 1 through 135 of this

Complaint, and incorporate them by reference as if fully set forth herein.

137.   In or about April 1982, the exact dates unknown, in the District of

Massachusetts, CONNOLLY and MORRIS, by providing confidential law enforcement

information to Bulger and Flemmi which alerted them to the fact that Brian Halloran had

provided information about the murder of Roger Wheeler in Tulsa, Oklahoma on May

27, 1981, including that Halloran had implicated Bulger and his associates and former

Special Agent Rico in the murder, and by providing information to law enforcement

causing Brian Halloran to be denied access to the witness protection program and

terminated from a relationship with the FBI, in order to prevent Halloran's further

cooperation and testimony against Bulger, Flemmi, and Rico, did commit an act

involving murder, that is, aided and acted as accessories before the fact in the murder of

Michael J. Donahue, in violation of Section 1 of Chapter 265 and Section 2 of Chapter

274 of the Massachusetts General Laws.

138.    Upon information and belief, on May 11, 1982 in Boston, Massachusetts,

Bulger and others then did, with dangerous weapons, assault Michael J. Donahue with the

intent to murder Brian Halloran and did thereby kill and murder Michael J. Donahue.


### b.    Accessory after the Fact – Bulger

139.    The plaintiffs reallege and reaffirm paragraphs 1 through 138 of this

Complaint, and incorporate them by reference as if fully set forth herein.

140.    Upon information and belief, CONNOLLY and MORRIS knew that

Bulger and Flemmi were responsible for the deaths of Halloran and Mr. Donahue.

141.    From May 11, 1982 until at least 1999, in the District of Massachusetts,

the defendants CONNOLLY and MORRIS, and others, did commit an act involving

murder, that is, after the commission of the murder of Michael J. Donahue, maintained

and assisted Bulger, who acted as the principal felon or the accessory before the fact in

said murder, and gave Bulger other aid, as outlined herein, knowing that Bulger was the principal felon or accessory before the fact, with the intent that Bulger would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

### c.    Accessory after the Fact -- Flemmi

142.    The plaintiffs reallege and reaffirm paragraphs 1 through 141 of this Complaint, and incorporate them by reference as if fully set forth herein.

143.    From May 11, 1982 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of Michael J. Donahue, maintained and assisted Flemmi, who acted as the principal felon or the accessory before the fact in said murder, and gave Flemmi other aid, as outlined herein, knowing that Flemmi was the principal felon or accessory before the fact, with the intent that Flemmi would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

### Racketeering Act Number Two (State Law)

### (Murder of Edward Brian Halloran - CONNOLLY and MORRIS)

144.    The defendants CONNOLLY and MORRIS committed the following acts involving murder, the commission of any of which alone constitutes the commission of Racketeering Act Number Two:

a.    Murder and Accessory Before the Fact of Murder

145.    The plaintiffs reallege and reaffirm paragraphs 1 through 144 of this Complaint, and incorporate them by reference as if fully set forth herein.

146.    In or about April 1982, the exact dates unknown, in the District of Massachusetts, CONNOLLY and MORRIS, by providing confidential law enforcement information to Bulger and Flemmi which alerted them to the fact that Brian Halloran had provided information about the murder of Roger Wheeler in Tulsa, Oklahoma on May 27, 1981, and providing information to law enforcement causing Brian Halloran to be denied access to the witness protection program and terminated from a relationship with the FBI, in order to prevent Halloran's further cooperation and testimony against Bulger and Flemmi, did commit an act involving murder, that is, aided and acted as accessories before the fact in the murder of Brian Halloran, in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

147.    Upon information and belief, on May 11, 1982 in Boston, Massachusetts, Bulger and others then did, with dangerous weapons, assault Brian Halloran with the intent to murder and did thereby kill and murder Brian Halloran.

b.    Accessory after the Fact - Bulger

148.    The plaintiffs reallege and reaffirm paragraphs 1 through 147 of this Complaint, and incorporate them by reference as if fully set forth herein.

149.    From May 11, 1982 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of Brian Halloran, maintained and

assisted Bulger, who acted as the principal felon or the accessory before the fact in said murder, and gave Bulger other aid, as outlined herein, knowing that Bulger was the principal felon or accessory before the fact, with the intent that Bulger would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

### c.    Accessory after the Fact -- Flemmi

150.    The plaintiffs reallege and reaffirm paragraphs 1 through 149 of this Complaint, and incorporate them by reference as if fully set forth herein.

151.    From May 11, 1982 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of Brian Halloran, maintained and assisted Flemmi, who acted as the principal felon or the accessory before the fact in said murder, and gave Flemmi other aid, as outlined herein, knowing that Flemmi was the principal felon or accessory before the fact, with the intent that Flemmi would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

### Racketeering Act Number Three (State Law)

#### (Murder of John Callahan - CONNOLLY and MORRIS)

152.    The defendants CONNOLLY and MORRIS committed the following acts involving murder, the commission of any of which alone constitutes the commission of Racketeering Act Number Three:

a.    Murder and Accessory Before the Fact of Murder

153.    The plaintiffs reallege and reaffirm paragraphs 1 through 152 of this Complaint, and incorporate them by reference as if fully set forth herein.

154.    "In or about June 1982, CONNOLLY told Bulger and Flemmi that John Callahan was sought as a witness in the Wheeler homicide investigation." *Connolly Indictment*, at 12.

155.    In or about June 1982, the exact date unknown, in the District of Massachusetts, CONNOLLY, by providing confidential law enforcement information to Bulger and Flemmi which alerted them to the identity of a witness who was being sought to testify in the Wheeler homicide investigation, in order to prevent the witness's cooperation and testimony and protect Bulger and Flemmi's criminal operations, did commit an act involving murder, that is, aided and acted as an accessory before the fact in the murder of Brian Halloran, in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

156.    Upon information and belief, on or about August 1, 1982, in the Southern District of Florida or elsewhere, Bulger and Flemmi murdered John Callahan, to wit, did unlawfully kill a human being, a felony, in violation of Sections 782.04 (1)(a) and 777.011 of the Florida Statutes.

b.    Accessory after the Fact - Bulger

157.    The plaintiffs reallege and reaffirm paragraphs 1 through 156 of this Complaint, and incorporate them by reference as if fully set forth herein.

158.   Upon information and belief, CONNOLLY and MORRIS knew that Bulger and Flemmi were responsible for the death of John Callahan.

159.   From August 1, 1982 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of John Callahan, maintained and assisted Bulger, who acted as the principal felon or the accessory before the fact in said murder, and gave Bulger other aid, as outlined herein, knowing that Bulger was the principal felon or accessory before the fact, with the intent that Bulger would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

### c.    Accessory after the Fact - Flemmi

160.   The plaintiffs reallege and reaffirm paragraphs 1 through 159 of this Complaint, and incorporate them by reference as if fully set forth herein.

161.   From August 1, 1982 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of John Callahan, maintained and assisted Flemmi, who acted as the principal felon or the accessory before the fact in said murder, and gave Flemmi other aid, as outlined herein, knowing that Flemmi was the principal felon or accessory before the fact, with the intent that Flemmi would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

<u>Racketeering Act Number Four (State Law)</u>

(Murder of Roger Wheeler - CONNOLLY and MORRIS)

162.   The defendants CONNOLLY and MORRIS committed the following acts involving murder, the commission of any of which alone constitutes the commission of Racketeering Act Number Four:

a.   <u>Accessory after the Fact - Bulger</u>

163.   The plaintiffs reallege and reaffirm paragraphs 1 through 162 of this Complaint, and incorporate them by reference as if fully set forth herein.

164.   Upon information and belief, on or about May 27, 1981, in the Northern District of Oklahoma, Bulger and Flemmi and others murdered Roger Wheeler, to wit, did unlawfully and with malice aforethought cause the death of a human being, a felony, in violation of Section 701.7 of Title 21 and Section 432 of Title 22 of the Oklahoma Statutes.

165.   Upon information and belief, CONNOLLY and MORRIS knew that Bulger and Flemmi were responsible for the death of Roger Wheeler.

166.   From May 27, 1981 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of John Callahan, maintained and assisted Bulger, who acted as the principal felon or the accessory before the fact in said murder, and gave Bulger other aid, as outlined herein, knowing that Bulger was the principal felon or accessory before the fact, with the intent that Bulger would avoid and

46

escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

b.      Accessory after the Fact - Flemmi

167.    The plaintiffs reallege and reaffirm paragraphs 1 through 166 of this Complaint, and incorporate them by reference as if fully set forth herein.

168.    From August 1, 1982 until at least 1999, in the District of Massachusetts, the defendants CONNOLLY and MORRIS, and others, did commit an act involving murder, that is, after the commission of the murder of Roger Wheeler, maintained and assisted Flemmi, who acted as the principal felon or the accessory before the fact in said murder, and gave Flemmi other aid, as outlined herein, knowing that Flemmi was the principal felon or accessory before the fact, with the intent that Flemmi would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

Racketeering Act Number Five (State Law)

(Murder of Richard Castucci - CONNOLLY and MORRIS)

169.    The defendants CONNOLLY and MORRIS committed the following acts involving murder, the commission of any of which alone constitutes the commission of Racketeering Act Number Five:

47

a.     Murder and Accessory Before the Fact of Murder

170.    The plaintiffs reallege and reaffirm paragraphs 1 through 169 of this

Complaint, and incorporate them by reference as if fully set forth herein.

171.    "On or about July 31, 1975, Joseph McDonald and James Sims, both

members of the Winter Hill Gang were charged with crimes in a federal indictment in the

District of Massachusetts.  Joseph McDonald and James Sims became fugitives from that

charge." *Connolly Indictment*, at 9.

172.    "In 1976 Richard Castucci was a nightclub owner and bookmaker who

associated with the Winter Hill Gang.  At the behest of the Winter Hill Gang, Castucci

subsequently assisted McDonald and Sims in obtaining an apartment in the Greenwich

Village section of New York City while they remained fugitives." *Connolly Indictment*,

at 9-10.

173.    "During that time, Richard Castucci also was a confidential informant of

the FBI.  In the latter part of 1976, Castucci began to provide the FBI with specific

information regarding the whereabouts of McDonald and Sims." *Connolly Indictment*, at

10.

174.    In late 1976, CONNOLLY told Bulger that Richard Castucci was a

confidential informant for the FBI. *Connolly Indictment,* at 10.

175.    In late 1976, the exact date unknown, in the District of Massachusetts,

CONNOLLY, by providing confidential law enforcement information to Bulger which

alerted him to Richard Castucci's status as an FBI confidential informant, in order to

protect Bulger's criminal operations, did commit an act involving murder, that is, aided

and acted as an accessory before the fact in the murder of Richard Castucci, in violation

of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

176.    "On or about December 29, 1976, as a result of being informed of Castucci's relationship with the FBI, members of the Winter Hill Gang murdered Richard Castucci [upon information and belief at the behest and counsel of Bulger], to prevent the capture of Joseph McDonald and James Sims." *Connolly Indictment*, at 10.

### b.    Accessory after the Fact - Bulger

177.    The plaintiffs reallege and reaffirm paragraphs 1 through 176 of this Complaint, and incorporate them by reference as if fully set forth herein.

178.    Upon information and belief, CONNOLLY and MORRIS knew that Bulger was responsible for the death of Richard Castucci.

179.    From December 29, 1976 until 1999, in the District of Massachusetts, the defendants CONNOLLY and others, did commit an act involving murder, that is, after the commission of the murder of Richard Casatucci, maintained and assisted Bulger, who acted as the principal felon or the accessory before the fact in said murder, and gave Bulger other aid, as outlined herein, knowing that Bulger was the principal felon or accessory before the fact, with the intent that Bulger would avoid and escape detention, arrest, trial and punishment, in violation of Section 1 of Chapter 265 and Section 4 of Chapter 274 of the Massachusetts General Laws.

PREDICATE RACKETEERING ACTS (FEDERAL LAW)

180.   As described herein, the individual defendants committed, and conspired with one another and others to commit, repeated and continuous indictable violations of among the following provisions of Title 18 of the United States Code, over the period of time from at least 1976 to December 1990, each which constitutes "racketeering activity" under 18 U.S.C. § 1961(1)(B):  Section 201 (relating to bribery), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), sections 2314 and 2315 (relating to interstate transportation of stolen property).  The list of racketeering acts violative of Federal law committed by the defendants includes, but is not limited to, those racketeering acts outlined below as Racketeering Acts Number Six through Twenty-Six.

<u>Racketeering Act Number Six (Federal Law)</u>

(Obstruction of Justice Relating to Wheeler Homicide Investigation and Witness Halloran

- CONNOLLY and MORRIS)

181.    The plaintiffs reallege and reaffirm paragraphs 1 through 180 of this

Complaint, and incorporate them by reference as if fully set forth herein.

182.    "In or about April 1982, the exact date unknown, in the District of

Massachusetts, CONNOLLY [and MORRIS, aiding and abetting one another,] did

corruptly endeavor to influence, obstruct, and impede the due administration of justice in

a federal grand jury sitting in the Northern District of Oklahoma and investigating the

murder of Roger Wheeler, by providing confidential law enforcement information to

Bulger and Flemmi which alerted them to the fact that Brian Halloran had provided

information about the murder of Roger Wheeler in Tulsa, Oklahoma on May 27, 1981, in

order to prevent Halloran's further cooperation and testimony, in violation of Title 18,

United States Code, Sections 1503 and 2." *Connolly Indictment*, at 11.

183.    "Bulger and others then caused Brian Halloran to be murdered in Boston,

Massachusetts on May 11, 1982, in order to prevent his further cooperation with law

enforcement authorities and to prevent his testimony before a federal grand jury

investigating the murder of Roger Wheeler." *Connolly Indictment*, at 11-12.

<u>Racketeering Act Number Seven (Federal Law)</u>

(Obstruction of Criminal Investigation regarding Wheeler Homicide Investigation and

Witness/Informant Tampering relating to Witness Halloran - CONNOLLY and MORRIS)

184. The plaintiffs reallege and reaffirm paragraphs 1 through 183 of this Complaint, and incorporate them by reference as if fully set forth herein.

185. "In or about April 1982, the exact date unknown, in the District of Massachusetts, CONNOLLY [and MORRIS, aiding and abetting one another], did willfully endeavor by means of intimidation and force and threats thereof to obstruct, delay, and prevent the communication of information by Brian Halloran to a criminal investigator relating to a violation of a criminal statute of the United States, by providing confidential law enforcement information to Bulger and Flemmi which alerted them to the fact that Brian Halloran had provided information about the murder of Roger Wheeler in Tulsa, Oklahoma on May 27, 1981, in violation of Title 18, United States Code, Section 1510 (later re-codified at Section 1512) and 2." *Connolly Indictment*, at 12.

### Racketeering Act Number Eight (Federal Law)

(Obstruction of Justice Relating to Wheeler Homicide Investigation and Witness Callahan - CONNOLLY)

186. The plaintiffs reallege and reaffirm paragraphs 1 through 185 of this Complaint, and incorporate them by reference as if fully set forth herein.

187. "In or about June 1982, CONNOLLY told Bulger and Flemmi that John Callahan was sought as a witness in the Wheeler homicide investigation." *Connolly Indictment*, at 12.

188. "In or about June 1982, the exact date unknown, in the District of Massachusetts, CONNOLLY did corruptly to endeavor to influence, obstruct, and

impede the due administration of justice in a federal grand jury sitting in the Northern

District of Oklahoma and investigating the murder of Roger Wheeler, by providing

confidential law enforcement information to Bulger and Flemmi which alerted them to

the identity of a witness who was being sought to testify in the Wheeler homicide

investigation, in order to prevent the witness's cooperation and testimony, in violation of

Title 18, United States Code, Section 1503." 12-13.

189.    "Acting in response to CONNOLLY's information, Bulger and Flemmi

caused John Callahan to be murdered in Fort Lauderdale, Florida on or about August 1,

1982, in order to prevent his cooperating with law enforcement authorities and to prevent

him from being able to provide testimony in the Wheeler homicide investigation."

*Connolly Indictment*, at 13.

Racketeering Act Number Nine (Federal Law)

(Connolly Obstruction of Criminal Investigation regarding Wheeler Homicide

Investigation and Witness/Informant Tampering relating to Witness Callahan -

CONNOLLY)

190.    The plaintiffs reallege and reaffirm paragraphs 1 through 189 of this

Complaint, and incorporate them by reference as if fully set forth herein.

191.    "In or about June 1982, the exact date being unknown, in the District of

Massachusetts, CONNOLLY did willfully endeavor by means of intimidation and force

and threats thereof to obstruct, and prevent the communication by John Callahan to a

criminal investigator relating to a violation of a criminal statue of the Unites States, by

53

providing confidential law enforcement information to Bulger and Flemmi which alerted

them that Callahan was sought as a witness in the Wheeler homicide investigation, in

violation of Title 18, United State Code, Section 1510 (late re-codified at Section 1512)

and 2." *Connolly Indictment*, at 13.

### Racketeering Act Number Ten (Federal Law)

#### (Receipt of Bribes from Bulger and Flemmi - CONNOLLY)

192.    The plaintiffs reallege and reaffirm paragraphs 1 through 191 of this

Complaint, and incorporate them by reference as if fully set forth herein.

193.    "In about June 1976, the exact date being unknown, in the District of

Massachusetts, CONNOLLY, being a public official, corruptly received, accepted, and

agreed to receive and accept from Bulger and Flemmi a thing of value, that being a

diamond ring, in return for being induced to do and omit to do acts in violation of his

official duty, specifically to divulge confidential and sensitive law enforcement

information in order to protect Bulger's and Flemmi's ongoing criminal activities in

violation of his official duty, in violation of Title 18, United States Code, Sections 201(c)

(later re-codified as 201(b)) and 2." *Connolly Indictment*, at 6.

### Racketeering Act Number Eleven

#### (Gift of Bribes to MORRIS - CONNOLLY)

194.    The plaintiffs reallege and reaffirm paragraphs 1 through 193 of this

Complaint, and incorporate them by reference as if fully set forth herein.

195.   "Beginning in the latter part of 1981 or early 1982, the exact date being unknown, in the District of Massachusetts, CONNOLLY, Bulger and Flemmi did corruptly give a thing of value, that being a case of fine wine, to a public official, that being Supervisory Special Agent John MORRIS, to induce such public official to do and omit to do acts in violation of his official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(b) and 2." *Connolly Indictment*, at 6.

## Racketeering Act Number Twelve (Federal Law)

### (Receipt of Bribes from CONNOLLY, Bulger and Flemmi - MORRIS)

196.   The plaintiffs reallege and reaffirm paragraphs 1 through 195 of this Complaint, and incorporate them by reference as if fully set forth herein.

197.   Beginning in the latter part of 1981 or early 1982, the exact date being unknown, in the District of Massachusetts, MORRIS, being a public official, corruptly received, accepted, and agreed to receive and accept from CONNOLLY, Bulger and Flemmi a thing of value, that being a case of fine wine, in return for being induced to do and omit to do acts in violation of his official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(c) (later re-codified as 201(b)) and 2. *Connolly Indictment*, at 6; *United States v. Salemme*, 91 F.Supp.2d 141, at 207.

<u>Racketeering Act Number Thirteen (Federal Law)</u>

(Gift of Bribe to MORRIS - CONNOLLY)

198.   The plaintiffs reallege and reaffirm paragraphs 1 through 197 of this Complaint, and incorporate them by reference as if fully set forth herein.

199.   "In or about June 1982, the exact date being unknown, in the District of Massachusetts, CONNOLLY, Bulger and Flemmi did corruptly give a thing of value, that being $1,000 in United States currency, to a public official, that being Supervisory Special Agent John MORRIS, to induce that public official to do and omit to do acts in violation of official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(b) and 2." *Connolly Indictment*, at 7.

<u>Racketeering Act Number Fourteen (Federal Law)</u>

(Receipt of Bribe from CONNOLLY, Bulger and Flemmi - MORRIS)

200.   The plaintiffs reallege and reaffirm paragraphs 1 through 199 of this Complaint, and incorporate them by reference as if fully set forth herein.

201.   In or about June 1982, the exact date being unknown, in the District of Massachusetts, MORRIS, being a public official, corruptly received, accepted, and agreed to receive and accept from CONNOLLY, Bulger and Flemmi a thing of value, that being $1,000 in United States currency, in return for being induced to do and omit to do acts in violation of his official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal

activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(c) (later re-codified as 201(b)) and 2. *Connolly Indictment*, at 7; *United States v. Salemme*, 91 F.Supp.2d 141, at 154 n.4, 210, 227, 340.

## Racketeering Act Number Fifteen (Federal Law)

### (Gift of Bribe to MORRIS - CONNOLLY)

202.    The plaintiffs reallege and reaffirm paragraphs 1 through 201 of this Complaint, and incorporate them by reference as if fully set forth herein.

203.    "Sometime in late 1982 or 1983, the exact date being unknown, in the District of Massachusetts, CONNOLLY, Bulger, and Flemmi did corruptly give a thing of value, that being a case of fine wine containing $1,000 in United States currency, to a public official, that being FBI Supervisory Special Agent John MORRIS, to induce that public official to do and omit to do acts in violation of his official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(b) and 2." *Connolly Indictment*, at 7.

## Racketeering Act Number Sixteen (Federal Law)

### (Receipt of Bribe from CONNOLLY, Bulger and Flemmi - MORRIS)

204.    The plaintiffs reallege and reaffirm paragraphs 1 through 203 of this Complaint, and incorporate them by reference as if fully set forth herein.

205.    Sometime in late 1982 or 1983, the exact date being unknown, in the District of Massachusetts, MORRIS, being a public official, corruptly received, accepted, and agreed to receive and accept from CONNOLLY, Bulger and Flemmi a thing of value, that being a case of fine wine containing $1,000 in United States currency, in return for being induced to do and omit to do acts in violation of his official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(c) (later re-codified as 201(b)) and 2. *Connolly Indictment*, at 7; *United States v. Salemme*, 91 F.Supp.2d 141, at 227, 340.

## Racketeering Act Number Seventeen (Federal Law)

### (Gift of Bribe to MORRIS - CONNOLLY)

206.    The plaintiffs reallege and reaffirm paragraphs 1 through 205 of this Complaint, and incorporate them by reference as if fully set forth herein.

207.    "Sometime in or about 1986 – 1987, the exact date being unknown, in the District of Massachusetts, CONNOLLY, Bulger and Flemmi did corruptly give a thing of value, that being $5,000 in United States currency, to a public official, that being FBI Supervisory Special Agent John MORRIS, to induce that public official to do and omit to do acts in violation of his official duty, specifically to divulge confidential and sensitive law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal activities in violation of his official duty, in violation of Title 18, United States Code, Sections 201(b) and 2." *Connolly Indictment*, at 7-8.

Racketeering Act Number Eighteen (Federal Law)

(Receipt of Bribe from CONNOLLY, Bulger and Flemmi - MORRIS)

208.    The plaintiffs reallege and reaffirm paragraphs 1 through 207 of this
Complaint, and incorporate them by reference as if fully set forth herein.

209.    Sometime in or about 1986 – 1987, the exact date being unknown, in the
District of Massachusetts, MORRIS, being a public official, corruptly received, accepted,
and agreed to receive and accept from CONNOLLY, Bulger and Flemmi a thing of value,
that being $5,000 in United States currency, in return for being induced to do and omit to
do acts in violation of his official duty, specifically to divulge confidential and sensitive
law enforcement information in order to protect Bulger's and Flemmi's ongoing criminal
activities in violation of his official duty, in violation of Title 18, United States Code,
Sections 201(c) (later re-codified as 201(b)) and 2. *Connolly Indictment*, at 7-8; *United
States v. Salemme*, 91 F.Supp.2d 141, at 243-244, 340-341.

Racketeering Act Number Nineteen (Federal Law)

(Extortion of Steven and Julie Rakes - CONNOLLY)

210.    The defendant CONNOLLY committed the following racketeering acts, the
commission of any of which alone constitutes the commission of Racketeering Act Number
Nineteen:

a.    Extortion

211.    The plaintiffs reallege and reaffirm paragraphs 1 through 210 of this Complaint, and incorporate them by reference as if fully set forth herein.

212.    "In or about December 1983, the exact date being unknown, Stephen Rakes and his wife, Julie Rakes, opened a liquor store at 295 Old Colony Avenue, South Boston, Massachusetts." *Connolly Indictment*, at 8.

213.    "In or about January 1984, the exact date unknown, Bulger, Flemmi and Kevin Weeks threatened Stephen Rakes with physical harm if he refused to convey the liquor store to them." *Connolly Indictment*, at 8.

214.    "Shortly thereafter, Joseph Lundbloom, then a Boston police officer, approached CONNOLLY on behalf of the Rakes, to report the extortionate demands of Bulger and Flemmi." *Connolly Indictment*, at 8.

215.    "In response to Joseph Lundbloom's report, CONNOLLY falsely told Lundbloom that unless Rakes agreed to wear a recording device in conversations with Bulger and Flemmi, the FBI was unlikely to take action on the complaint." *Connolly Indictment*, at 8.

216.    "Stephen Rakes acceded to the extortionate demands of Bulger and Flemmi, and Stephen Rakes and Julie Rakes conveyed their interest in the liquor store to Kevin Weeks, who was acting on behalf of Bulger and Flemmi." *Connolly Indictment*, at 8.

217.    "In violation of FBI regulations, and in a further effort to protect the extortionate activities of Bulger and Flemmi, CONNOLLY failed to report or to

otherwise memorialize on any official FBI document the information that he had received from Joseph Lundbloom." *Connolly Indictment*, at 9.

218.   "In or about January through May 1984, the exact date unknown, in the District of Massachusetts, Bulger and Flemmi, aided and abetted by CONNOLLY, obstructed, delayed, and affected commerce by extortion, in violation of Title 18, Unites States Code, Sections 1951 and 2." *Connolly Indictment*, at 9.

### b.   Conspiracy to Commit Extortion

219.   The plaintiffs reallege and reaffirm paragraphs 1 through 218 of this Complaint, and incorporate them by reference as if fully set forth herein.

220.   "In or about January through May 1984, the exact date unknown, in the District of Massachusetts, Bulger and Flemmi, aided and abetted by CONNOLLY, conspired to obstruct, delay and affect commerce by extortion, in violation of Title 18, United States Code, Sections 1951 and 2." *Connolly Indictment*, at 9.

### Racketeering Act Number Twenty (Federal Law)

(Obstruction of Justice and Witness Tampering relating to Homicide of Richard Castucci

- CONNOLLY)

221.   The plaintiffs reallege and reaffirm paragraphs 1 through 220 of this Complaint, and incorporate them by reference as if fully set forth herein.

222.   "In late 1976, in the District of Massachusetts, CONNOLLY did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede the due administration of justice in a case captioned United States v. Sims, et al, Cr. No.

359G (D. Mass.), in the District of Massachusetts, by providing confidential law enforcement information to Bulger which alerted him to the fact that Richard Castucci was a confidential informant of the FBI, with intent to thwart the arrest and prosecution of Joseph McDonald and James Sims in United States v. Sims, Cr. No. 359G (D. Mass.), in violation of Title 18, United States Code, Sections 1503 and 2." *Connolly Indictment*, at 10.

223.   "On or about December 29, 1976, as a result of being informed of Castucci's relationship with the FBI, members of the Winter Hill Gang murdered Richard Castucci to prevent the capture of Joseph McDonald and James Sims." *Connolly Indictment*, at 10.

### Racketeering Act Number Twenty-One (Federal Law)

(Obstruction of Justice regarding Wiretap – CONNOLLY and MORRIS)

224.   The plaintiffs reallege and reaffirm paragraphs 1 through 223 of this Complaint, and incorporate them by reference as if fully set forth herein.

225.   "In or about June 1988, Supervisory Special Agent John MORRIS learned that other agents of the FBI who were working with the Organized Crime Strike Force of the Department of Justice had obtained court authorization to conduct a wiretap of telephones used by a person known to the Grand Jury to conduct illegal gambling activity." *Connolly Indictment*, at 13-14.

226.   "This wiretap authorization was obtained in conjunction with an ongoing Grand Jury investigation in the District of Massachusetts." *Connolly Indictment*, at 14.

227. "In keeping with the understanding among MORRIS, Bulger, Flemmi, and CONNOLLY, MORRIS informed CONNOLLY of the wiretap authorization." *Connolly Indictment*, at 14.

228. "Also in keeping with that understanding, and because the individual known to the Grand Jury was suspected of paying extortion payments, commonly referred to as "rent," to Bulger and Flemmi in order to be able to continue to conduct his illegal gambling operation, CONNOLLY arranged a meeting among MORRIS, Bulger, Flemmi and CONNOLLY so that MORRIS could directly advise them of the wiretap." *Connolly Indictment*, at 14.

229. "Shortly thereafter, at a meeting by CONNOLLY, MORRIS did inform Bulger and Flemmi of the wiretap authorization and investigation." *Connolly Indictment*, at 14.

230. "In or about June 1988, in the District of Massachusetts, CONNOLLY [and MORRIS, aiding and abetting one another,] did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede in the due administration of justice before a federal Grand Jury in the District of Massachusetts, by providing confidential law enforcement information to Bulger and Flemmi which alerted them that a federal wiretap had been authorized in conjunction with a Grand Jury investigation into the activities of a person known to the Grand Jury, in violation of Title 18, United States Code, Sections 1503 and 2." *Connolly Indictment*, at 14.

Racketeering Act Number Twenty-Two (Federal Law)

(Obstruction of Justice regarding Bulger Indictment – CONNOLLY)

231.    The plaintiffs reallege and reaffirm paragraphs 1 through 230 of this Complaint, and incorporate them by reference as if fully set forth herein.

232.    "On or about December 23, 1994, in the District of Massachusetts, CONNOLLY did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede the due administration of justice in a federal Grand Jury in the District of Massachusetts by causing confidential law enforcement information to be provided to James Bulger which alerted him to the fact that law enforcement agents would soon attempt to arrest him in connection with the Grand Jury's investigation of Title 18, United States Code, Section 1503." *Connolly Indictment*, at 15.

Racketeering Act Number Twenty-Three (Federal Law)

(Obstruction of Justice regarding Flemmi Indictment - CONNOLLY)

233.    The plaintiffs reallege and reaffirm paragraphs 1 through 232 of this Complaint, and incorporate them by reference as if fully set forth herein.

234.    "Beginning in or about December 23, 1994 and continuing until about early January 1995, the exact date unknown, in the District of Massachusetts, CONNOLLY did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede the due administration of justice in a federal Grand Jury in the District of Massachusetts by causing confidential law enforcement information to be provided to Flemmi which alerted him to the fact that the Grand Jury would be asked

to issue an indictment against him, in violation of Title 18, United States Code, Section

1503." *Connolly Indictment*, at  15.

### Racketeering Act number Twenty-Four (Federal Law)

#### (Obstruction of Justice regarding Salemme Indictment - CONNOLLY)

235.    The plaintiffs reallege and reaffirm paragraphs 1 through 234 of this

Complaint, and incorporate them by reference as if fully set forth herein.

236.    "In or about early January 1995, the exact date unknown, in the District of

Massachusetts, Flemmi, aided and abetted by CONNOLLY, did corruptly influence,

obstruct and impede, and did endeavor to influence, obstruct, and impede the due

administration of justice in a federal Grand Jury in the District of Massachusetts by

providing confidential law enforcement information to Francis P. Salemme which alerted

him to the fact that the Grand Jury would be asked to issue an indictment against him, in

violation of Title 18, United States Code, Sections 1503 and 2." *Connolly Indictment*, at

15-16.

### Racketeering Act Number Twenty-Five (Federal Law)

#### (Obstruction of Justice regarding Wolf Letter - CONNOLLY)

237.    The plaintiffs reallege and reaffirm paragraphs 1 through 236 of this

Complaint, and incorporate them by reference as if fully set forth herein.

238.    "On or about March 27, 1997, during pretrial proceedings in United States

v. Salemme, et al, Cr. No. 94-10287-MLW (D. Mass.), CONNOLLY caused to be sent to

United States District Court Judge Mark L. Wolf a letter falsely purporting to have been

written by three unnamed members of the Boston Police Department." *Connolly Indictment*, at 16.

239.   "That letter stated, in part, that "[t]he Massachusetts State Police, DEA and the FBI are ... guilty of prosecutorial misconduct in the so-called investigation of Frank Salemme, Whitey Bulger and Stevie Flemmi." The letter went on to state that Boston Police Detective Frank Dewan, the Massachusetts State Police, the DEA, the FBI and the Department of Justice Organized Crime Strike Force had furnished or relied upon false information in efforts to prosecute James Bulger and Stephen Flemmi. In specific reference to an issue directly before the Court at the time, the letter contended that: 'You, Judge Wolf, were deliberately lied to by the Government when they testified under oath that they did not know a Mafia induction ceremony was going to take place at the time they applied for their wire.' The letter implored Judge Wolf to 'expose Dewan, [former FBI Special Agent John] MORRIS, and all the rest of the criminal element in those agencies who every bit as much tarnished their own badges!'" *Connolly Indictment*, at 16.

240.   "The defense attorneys in United States v. Salemme, et al, Cr. No. 94-10287-MLW (D. Mass.) filed a brief regarding the letter and on April 18, 1997, Judge Wolf held a hearing regarding the letter." *Connolly Indictment*, at 16-17.

241.   "On or about March 27, 1997, in the District of Massachusetts, CONNOLLY did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede an officer of a court of the United States in the discharge of his duty and did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede the due administration of justice in pretrial proceedings in

United States v. Salemme, et al, Cr. No. 94-10287-MLW (D. Mass.), by having obtained

letterhead of the Boston Police Department, causing to be sent to United States District

Court Judge Mark L. Wolf a letter falsely purporting to have been written by unnamed

Boston Police Officers in an effort to dupe Judge Wolf into crediting defense claims and

to assist through false representation the defense of Stephen Flemmi, in violation of Title

18, United States Code, Sections 1503 and 2." *Connolly Indictment*, at 17.


### Racketeering Act Number Twenty-Six (Federal Law)

### (Obstruction of Justice Regarding Flemmi Testimony – CONNOLLY)

242.   The defendant CONNOLLY committed the following racketeering acts, the

commission of any of which alone constitutes the commission of Racketeering Act Number

Twenty-Six:


### a.   Obstruction of Justice

243.   The plaintiffs reallege and reaffirm paragraphs 1 through 242 of this

Complaint, and incorporate them by reference as if fully set forth herein.

244.   "In or about early 1998, the exact date being unknown, Flemmi was

preparing to testify in pretrial hearings in United States v. Salemme, et al, Cr. No. 94-

10287-MLW (D. Mass.) in support of his claim that he had been authorized by the

Federal Bureau of Investigation to commit certain of the crimes charged in that

indictment." *Connolly Indictment*, at 17.

245.   "Through an intermediary, Flemmi informed CONNOLLY that he would

falsely testify that it was John MORRIS, rather than CONNOLLY, who had alerted him

and James Bulger to the impending indictment, as alleged in Racketeering Acts 11 and 12 [of the Connolly Indictment]." *Connolly Indictment*, at 17.

246.    "Through the same intermediary CONNOLLY informed Flemmi that Flemmi should assert that John MORRIS learned of the impending indictment through Washington which had received a "pros memo." *Connolly Indictment*, at 18.

247.    "In or about early 1998, the exact date being unknown, in the District of Massachusetts, CONNOLLY did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct and impede and officer of a court of the United States in the discharge of his duty and did corruptly influence, obstruct and impede, and did endeavor to influence, obstruct, and impede the due administration of justice in pretrial proceedings in United States v. Salemme, et al, Cr. No. 94-10287-MLW (D. Mass.) by corruptly persuading Stephen Flemmi to testify falsely that John MORRIS had learned of the impending indictment in United States v. Salemme, et al, through Washington which had received a "pros memo," so that Flemmi could more plausibly testify falsely that John MORRIS had tipped James Bulger and him to the impending indictment in that case, in violation of Title 18, United States Code, Sections 1503 and 2." *Connolly Indictment*, at 18.

248.    "Subsequently, on August 28, 1998 and September 1, 1998, Flemmi falsely testified before United States District Judge Mark L. Wolf that John MORRIS had alerted Bulger to the impending indictment in United States v. Salemme, et al, Cr. No. 94-10287-MLW (D. Mass.) after MORRIS had learned of the indictment from Washington, which had received a copy of the 'cross memo' in the case." *Connolly Indictment*, at 18.

b.      Witness Tampering

249.    The plaintiffs reallege and reaffirm paragraphs 1 through 248 of this Complaint, and incorporate them by reference as if fully set forth herein.

250.    "In or about early 1998, the exact date unknown, in the District of Massachusetts, CONNOLLY did knowingly and corruptly persuade Stephen Flemmi, with intent to influence the testimony of Stephen Flemmi in pretrial proceedings in United States v. Salemme, Cr. No. 10287-MLW (D. Mass.), to testify falsely that John MORRIS had learned of the impending indictment in United States v. Salemme, et al, through Washington which had received a "pros memo," so that Flemmi could more plausibly testify falsely that John MORRIS had tipped James Bulger and him to the impending indictment in that case, in violation of Title 18, United States Code, Section 1512(b)(1)." *Connolly Indictment*, at 18-19.

### D.  Pattern of Racketeering Activity

251.    Each instance of racketeering activity, as described above, occurred after October 15, 1970.

252.    The defendants, individually and collectively, engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5), by having repeatedly and continuously committed unlawful acts of racketeering, as listed herein, and other racketeering acts, known or unknown to the plaintiffs, not herein specified.

253.    Each instance of racketeering activity had similar purposes, namely to foster, encourage, assist, protect, and conceal the present and future criminal activities of

Bulger, Flemmi, their associates, and the defendants themselves, to conceal past criminal acts of Bulger, Flemmi and the defendants themselves in order to avoid prosecution, sanction, or other adverse consequence, to foster mutual pecuniary gain amongst CONNOLLY, MORRIS, Bulger, Flemmi and others, by bribe and otherwise, and to gain praise, recognition, prestige, and social and professional status for CONNOLLY and MORRIS. As described herein, this was accomplished by, *inter alia*,: (a) unlawfully providing Bulger and Flemmi with confidential law enforcement information regarding Grand Jury investigations, court-authorized electronic surveillance, informant identities, and other investigative and prosecutorial efforts; (b) unlawfully deflecting, squelching and redirecting prosecutions and criminal investigations of crimes committed by Bulger, Flemmi, the defendants themselves, and others; (c) improperly and unlawfully preserving the status of Bulger and Flemmi as FBI informants through the filing of misleading official reports and by failing to report information relating to Bulger and Flemmi which was material to the investigation of criminal activity; (d) unlawfully gifting and accepting bribes with purpose to influence the actions of public officers; and (e) otherwise unlawfully influencing and impeding law enforcement. Furthermore, each act of racketeering activity involved the same or similar participants and methods of commission, and has similar results impacting victims such as the plaintiffs and the plaintiff's decedent. Hence, these acts constituted a pattern of racketeering activity as that term is defined in 18 U.S.C. 1961(5).

254.    This pattern of racketeering activity, as alternatively and/or simultaneously conducted through each listed and pleaded Enterprise by the named defendants, individually and in concert, acted to protect James Bulger and his associates,

including those in the Winter Hill Gang, and CONNOLLY and MORRIS, from arrest and prosecution for criminal activities including murder, loan sharking, illegal gambling, extortion, obstruction of justice, and bribery; and it acted to facilitate those criminal activities of Bulger and others, and for mutual pecuniary gain.

### E.  Violation of 1962(b)

255.    The plaintiffs reallege and reaffirm paragraphs 1 through 254 of this Complaint, and incorporate them by reference as if fully set forth herein.

256.    The defendants CONNOLLY and MORRIS individually, in concert, and with others, conducted the above-described pattern of racketeering activity to acquire and maintain an interest in and control of the Winter Hill Gang, which at all times relevant acted as a RICO enterprise.  This activity was conducted in violation of 18 U.S.C. § 1962(b).

257.    The defendants CONNOLLY and MORRIS individually, in concert, and with others, conducted the above-described pattern of racketeering activity to acquire and maintain an interest in and control of the LCN, which at all times relevant acted as a RICO enterprise.  This activity was conducted in violation of 18 U.S.C. § 1962(b).

### F.  Violation of 1962(c)

258.    The plaintiffs reallege and reaffirm paragraphs 1 through 257 of this Complaint, and incorporate them by reference as if fully set forth herein.

259.    The defendants CONNOLLY and MORRIS were each associated with the Winter Hill Gang, which at all times relevant acted as a RICO enterprise, and thereby

conducted and participated in the conduct of the affairs of such Enterprise through the

pattern of racketeering activity described above, in violation of 18 U.S.C. §1962(c).

### G.  Violation of 1962(d) – Conspiracy to Violate RICO Statute

260.    The plaintiffs reallege and reaffirm paragraphs 1 through 259 of this

Complaint, and incorporate them by reference as if fully set forth herein.

261.    As outlined above, the defendants CONNOLLY and MORRIS conspired

among themselves and with others, namely, but not limited to, Bulger and Flemmi, to

violate 18 U.S.C. § 1962 (b) and (c), by and in addition to conspiring to engage in the

conduct described above, in violation of 18 U.S.C. § 1962 (d).

### H.  Plaintiffs' Injuries

262.    The plaintiffs reallege and reaffirm paragraphs 1 through 261 of this

Complaint, and incorporate them by reference as if fully set forth herein.

263.    Michael J. Donahue, and consequently his estate, a plaintiff here through

Patricia Donahue, administratrix of the estate of Michael J. Donahue, was injured in his

business and property by reason of the defendants individual and collective violations of

18 U.S.C. §1962, as described above.  Namely, the plaintiff suffered, among other

pecuniary losses, lost wages and benefits, lost earning capacity, loss of current

employment, lost future business and employment opportunities, and a loss of

Constitutional rights.

264.    The plaintiff, Patricia Donahue, as an individual, was injured in her

business and property by reason of the defendants' individual and collective violations of

18 U.S.C. §1962, as described above. Namely, the plaintiff Patricia Donahue suffered, among other pecuniary losses, the loss of her primary source of economic support, and a loss of Constitutional rights.

265.   The plaintiff, Michael T. Donahue, was injured in his business and property by reason of the defendants' individual and collective violations of 18 U.S.C. §1962, as described above. Namely, the plaintiff Michael T. Donahue suffered, among other pecuniary losses, the loss of his primary source of economic support during his minority and a substantial source of support thereafter, and a loss of Constitutional rights.

266.   The plaintiff, Shawn Donahue, was injured in his business and property by reason of the defendants' individual and collective violations of 18 U.S.C. §1962, as described above. Namely, the plaintiff Shawn Donahue suffered, among other pecuniary losses, the loss of his primary source of economic support during his minority and a substantial source of support thereafter, and a loss of Constitutional rights.

267.   The plaintiff, Thomas Donahue, was injured in his business and property by reason of the defendants' individual and collective violations of 18 U.S.C. §1962, as described above. Namely, the plaintiff Thomas Donahue suffered, among other pecuniary losses, the loss of his primary source of economic support during his minority and a substantial source of support thereafter, and a loss of Constitutional rights.

## COUNT II – VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS STATUTE, 18 U.S.C., § 1961, ET SEQ.

(MORRIS AND CONNOLLY AS DEFENDANTS; ASSOCIATION-IN-FACT ENTERPRISE)

268.    The plaintiff realleges and reaffirms paragraphs 1 through 267 of this Complaint, and incorporates them by reference as if fully set forth herein.

269.    This Count is asserted by each of the plaintiffs against the defendants CONNOLLY and MORRIS under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., pursuant to 18 U.S.C. 1964(c) for violations of 18 U.S.C. §§ 1962 (b), (c), and (d).

270.    This Count is averred, and relief requested hereupon, in the alternative to Counts I, III, and IV of this Complaint, pursuant to Rule 8 of the Federal Rules of Civil Procedure.

271.    At all times relevant to this Complaint, *and for the purposes of this Count only,* in the District and Commonwealth of Massachusetts and elsewhere, CONNOLLY, MORRIS, Bulger, and Flemmi were a group of individuals associated in fact and thereby constituted a RICO "enterprise" as defined in 18 U.S.C. § 1961(4).  At all relevant times, this association in fact was engaged in, and its activities affected, interstate commerce.

272.    At all relevant times, the defendants CONNOLLY and MORRIS were "persons" as defined in 18 U.S.C. § 1961(3), and engaged, individually and collectively, in a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5), and as described herein and specifically in Count I of this Complaint.

74

273. The defendants CONNOLLY and MORRIS individually, in concert, and with others, conducted the above-described pattern of racketeering activity to acquire and maintain an interest in and control of the association-in-fact consisting of CONNOLLY, MORRIS, Bulger, and Flemmi, which at all times relevant acted as a RICO enterprise. This activity was conducted in violation of 18 U.S.C. § 1962(b).

274. The defendants CONNOLLY and MORRIS were each associated with the association-in-fact consisting of CONNOLLY, MORRIS, Bulger, and Flemmi, which at all times relevant acted as a RICO enterprise, and thereby conducted and participated in the conduct of the affairs of such Enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. §1962(c).

275. As outlined above, the defendants CONNOLLY and MORRIS conspired among themselves and with others, namely, but not limited to, Bulger and Flemmi, to violate 18 U.S.C. § 1962 (b) and (c), by conspiring to engage in the conduct described above, in violation of 18 U.S.C. § 1962 (d).

276. As described herein and specifically in Count I of this Complaint, the plaintiffs were each injured in their business and property due to the defendants' individual and collective violations of 18 U.S.C. § 1962.


## COUNT III - VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS STATUTE, 18 U.S.C., § 1961, ET SEQ.

(FBI AS DEFENDANT; VICARIOUS LIABILITY FOR MORRIS AND CONNOLLY)

277. The plaintiffs reallege and reaffirm paragraphs 1 through 276 of this Complaint, and incorporate them by reference as if fully set forth herein.

278.     This Count is asserted by each of the plaintiffs against the defendant FBI, itself and as it exists through its subdivisions the Boston Field Office of the FBI, and Organized Crime Squad of the Boston Field Office of the FBI, under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., pursuant to 18 U.S.C. 1964(c) for violations of 18 U.S.C. §§ 1962 (b), (c), and (d).[19]

279.     This Count is averred, and relief requested hereupon, in addition to and in the alternative to Count IV of this Complaint, pursuant to Rule 8 of the Federal Rules of Civil Procedure.

280.     The FBI, and its subdivisions the Boston Field Office of the FBI and the Organized Crime Squad of the Boston Field Office of the FBI, are all "persons" as defined by 18 U.S.C. § 1961(3) and for the purposes of RICO liability, in that it is an entity capable of holding a legal or beneficial interest in property.

281.     At all relevant times, MORRIS and CONNOLLY were employed as Special Agents of the FBI.

282.     At all relevant times, SARHATT and FITZPATRICK were the FBI supervisors of MORRIS and CONNOLLY.

283.     At all relevant times, MORRIS was the FBI supervisor of CONNOLLY.

284.     The unlawful acts of CONNOLLY, and of CONNOLLY and MORRIS, as described herein were committed within the scope of their employment as Special Agents of the FBI.

---

[19] Because of the egregious nature of conduct accomplished by the FBI, more specifically the Boston Office of the FBI, in the instant case, this Count argues that *respondeat superior* liability is especially appropriate against said entities, and argues that the facts of this case merit a narrow exception to the general rule that RICO liability is not attachable to government entities because they may not be able to form the requisite criminal intent, under the line of cases which attach RICO liability to similar corporate entities.  See, e.g., Brady v. Dairy Fresh Products Co., 974 F.2d 1149 (9th Cir. 1992)("an employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior....").

285.   The FBI, itself and through its supervisory employees, SARHATT,

FITZPATRICK and MORRIS, was an "aggressor" employer, in that at all relevant times,

and as a regular pattern and practice, it willfully disregarded, facilitated and encouraged,

by direct actions and by fostering an encouraging environment, the racketeering and

otherwise unlawful acts of CONNOLLY and/or MORRIS, and the collective unlawful

acts of the two committed with Bulger and Flemmi, and did so with knowledge of and/or

reckless disregard for these unlawful acts.

286.   MORRIS, an FBI supervisor himself as Head of FBI-Boston's Organized

Crime Squad, directly and himself committed predicate acts of racketeering as described

herein, in addition to facilitating, encouraging, and in fact aiding and abetting, the

racketeering and otherwise unlawful acts of CONNOLLY.

287.   The FBI, and its supervisory officials, directly benefited from the

racketeering activity of CONNOLLY and MORRIS, namely they increased the number

of successful investigations, gained prestige and recognition for these successful

investigations, including those resulting in successful prosecutions of LCN members, and

secured pecuniary gain by way of, *inter alia*, forfeiture proceeds obtained through these

investigations and prosecutions.

288.   Pursuant to 18 U.S.C. § 1964, the FBI is directly and vicariously liable,

under *respondeat superior* or otherwise, for the unlawful acts of CONNOLLY and

MORRIS, the acts they committed in concert with Bulger and Flemmi, including but not

limited to CONNOLLY and MORRIS' violations of 18 U.S.C. § 1962 (b), (c) and (d) as

described in Counts I and II of this Complaint,[20] and the predicate racketeering acts of

---

[20] Count III intentionally and specifically does not allege *respondeat superior* or other vicarious liability for
the RICO violations of CONNOLLY and MORRIS alternatively pled in Count IV of this Complaint.

such violations, and the resulting harm to the plaintiffs as described in Count One of this Complaint, including the murder of Michael J. Donahue.

## COUNT IV – VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS STATUTE, 18 U.S.C., § 1961, ET SEQ.

(MORRIS & CONNOLLY AS DEFENDANTS;  FBI AS ENTERPRISE)

289.    The plaintiff realleges and reaffirms paragraphs 1 through 288 of this Complaint, and incorporates them by reference as if fully set forth herein.

290.    This Count is asserted by each of the plaintiffs against the defendants CONNOLLY and MORRIS under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., pursuant to 18 U.S.C. 1964(c) for violations of 18 U.S.C. §§ 1962 (b), (c), and (d).

291.    This Count is averred, and relief requested hereupon, in the alternative to Counts I, II, and III of this Complaint, pursuant to Rule 8 of the Federal Rules of Civil Procedure.

292.    At all times relevant to this Complaint, *and for the purposes of this Count only,* the FBI was a RICO "enterprise" as defined in 18 U.S.C. § 1961(4).  At all relevant times, the FBI was engaged in, and its activities affected, interstate commerce.

293.    At all times relevant to this Complaint, *and for the purposes of this Count only,* the Boston Field Office of the FBI was a RICO "enterprise" as defined in 18 U.S.C. § 1961(4).  At all relevant times, the Boston Field Office of FBI was engaged in, and its activities affected, interstate commerce.

294.   At all times relevant to this Complaint, *and for the purposes of this Count only,* the Organized Crime Squad of the Boston Field Office of the FBI was a RICO "enterprise" as defined in 18 U.S.C. § 1961(4).  At all relevant times, the Organized Crime Squad of the Boston Field Office of FBI was engaged in, and its activities affected, interstate commerce.

295.   At all relevant times, the defendants CONNOLLY and MORRIS were "persons" as defined in 18 U.S.C. § 1961(3), and engaged, individually and collectively, in a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5), and as described herein and specifically in Count I of this Complaint.

296.   The defendants CONNOLLY and MORRIS individually, in concert, and with others, conducted the herein described pattern of racketeering activity to acquire and maintain an interest in and control of, alternatively, simultaneously, and/or at diverse times, the enterprises listed in this Count, including the FBI, the Boston Field Office of the FBI, and the Organized Crime Squad of the Boston Field Office of the FBI.  This activity was conducted in violation of 18 U.S.C. § 1962(b).

297.   The defendants CONNOLLY and MORRIS were each associated and employed by the enterprises listed within this Count, including the FBI, the Boston Field Office of the FBI, and the Organized Crime Squad of the Boston Field Office of the FBI, which at all times relevant acted as RICO enterprises, and thereby conducted and participated in the conduct of the affairs of such Enterprises through the pattern of racketeering activity described herein, in violation of 18 U.S.C. §1962(c).

298.   As outlined above, the defendants CONNOLLY and MORRIS conspired among themselves and with others, namely, but not limited to, Bulger and Flemmi, to

violate 18 U.S.C. § 1962 (b) and (c), by conspiring to engage in the conduct described above, in violation of 18 U.S.C. § 1962 (d).

299.    As described herein and specifically in Count I of this Complaint, the plaintiffs were each injured in their business and property due to the defendants' individual and collective violations of 18 U.S.C. § 1962.

## COUNT V – VIOLATION OF CONSTITUTIONAL RIGHTS

### (CONNOLLY, MORRIS)

300.    The plaintiffs reallege and reaffirm paragraphs 1 through 299 of this Complaint, and incorporate them by reference as if fully set forth herein.

301.    This Count is asserted by each of the plaintiffs against the defendants CONNOLLY and MORRIS pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.

302.    Each of the plaintiffs is entitled to the protections afforded by the Constitution and laws of the United States of America.  Plaintiff's decedent, Michael J. Donahue, at all times during his natural lifetime and at all times relevant to this Complaint, was entitled to the protections afforded by the Constitution and laws of the United States of America.

### a.    Violation of Constitutional Rights

303.    The defendants CONNOLLY and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate

80

the clearly established rights of plaintiff's decedent Michael J. Donahue: a) not to be

deprived of life, liberty, or property without due process of law as guaranteed by the Fifth

Amendment to the Constitution of the United States; b) to be secure in his person, house,

papers, and effects, against unreasonable searches and seizures, as guaranteed by the

Fourth Amendment to the Constitution of the United States; and c) to peaceably assemble

and to freedom of intimate association, as guaranteed by the First Amendment to the

Constitution of the United States.

304.    As a result of their actions, CONNOLLY and MORRIS did, in fact and

among other things, actually deprive Michael J. Donahue of his rights under the Fifth,

Fourth and First Amendments to the Constitution.  This deprivation includes, but is not

limited to, the events leading up to, surrounding and including Michael J. Donahue's

murder.

305.    The defendants CONNOLLY and MORRIS, by their individual and

collective unlawful acts as described herein, and while acting under color of Federal law

in their positions as FBI Special Agents, did each intentionally and/or recklessly violate

the clearly established rights of plaintiff Patricia Donahue: a) not to be deprived of life,

liberty, or property without due process of law, namely her right to association,

companionship, and relationship with her husband, and her right to choose how to

conduct her family affairs, as guaranteed by the Fifth Amendment to the Constitution of

the United States; and b) to freedom of intimate association, namely with her husband, as

guaranteed by the First Amendment to the Constitution of the United States.

306.    As a result of their actions, CONNOLLY and MORRIS did, in fact and

among other things, actually deprive Patricia Donahue of her rights under the Fifth and

First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

307.    The defendants CONNOLLY and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Michael T. Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

308.    As a result of their actions, CONNOLLY and MORRIS did, in fact and among other things, actually deprive Michael T. Donahue of his rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

309.    The defendants CONNOLLY and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Shawn Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association,

namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

310.    As a result of their actions, CONNOLLY and MORRIS did, in fact and among other things, actually deprive Shawn Donahue of his rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

311.    The defendants CONNOLLY and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Thomas Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

312.    As a result of their actions, CONNOLLY and MORRIS did, in fact and among other things, actually deprive Thomas Donahue of his rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

313.    The actions of MORRIS and CONNOLLY, and each of them, as outlined herein, were an extreme deviation from reasonable standards of conduct, undertaken intentionally, with actual malice and/or with a reckless disregard for each of the plaintiffs' constitutional rights.

314.    As to each <u>Bivens</u> Count averred by this Complaint, there is no alternative means available to adequately remedy the plaintiffs' deprivation of Constitutional Rights, as detailed herein, and money damages are an appropriate remedy.

### b.    Conspiracy to Violate Constitutional Rights

315.    As outlined herein, MORRIS and CONNOLLY, between themselves and with others, did conspire to deprive the plaintiffs, and each of them, of their Constitutional rights, and in so doing, did in fact deprive each of the plaintiffs their Constitutional rights by virtue of said conspiracy.

### COUNT VI – VIOLATION OF CONSTITUTIONAL RIGHTS

### (SUPERVISORS SARHATT, FITZPATRICK AND MORRIS AS DEFENDANTS)

316.    The plaintiffs reallege and reaffirm paragraphs 1 through 315 of this Complaint, and incorporate them by reference as if fully set forth herein.

317.    This Count is asserted by each of the plaintiffs against the defendant supervisors SARHATT, FITZPATRICK and MORRIS pursuant to <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) and its progeny.

318.    Supervisory officials SARHATT, FITZPATRICK and MORRIS, being the Special Agent in Charge of FBI - Boston, the Assistant Special Agent in Charge of FBI - Boston, and the Supervisory Special Agent in charge of the Organized Crime Squad of FBI – Boston, respectively, intentionally and recklessly failed to train, supervise

and control CONNOLLY. SARHATT and FITZPATRICK, in turn, intentionally and recklessly failed to train, supervise and control MORRIS.

319.   Supervisory officials SARHATT, FITZPATRICK and MORRIS inadequately and improperly monitored, investigated and remediated the unlawful acts of CONNOLLY, and instead tolerated and encouraged the same. In turn, SARHATT and FITZPATRICK inadequately and improperly monitored, investigated and remediated the unlawful acts of MORRIS, and instead tolerated and encouraged the same.

320.   As a result, CONNOLLY, MORRIS, and others, believed and understood that their unlawful actions would not be monitored or sanctioned, but would be tolerated and encouraged.

321.   By their actions and omissions, supervisors SARHATT, FITZPATRICK and MORRIS demonstrated a reckless indifference to the extended pattern of unlawful acts of CONNOLLY, and SARHATT and FITZPATRICK also to the actions of MORRIS, and each to the Constitutional rights of the plaintiffs, actually resulting in the deprivation of plaintiffs' Constitutional rights as herein described, and moreover SARHATT, FITZPATRICK and MORRIS took affirmative actions, as described herein, all of which deprived the plaintiffs of their Constitutional rights.

322.   These acts and omissions of the supervisory defendants SARHATT, FITZPATRICK and MORRIS, and each of them, were an extreme deviation from reasonable standards of conduct, were undertaken intentionally, with actual malice and/or with a reckless disregard for each of the plaintiffs' Constitutional rights.

### a.    **Violation of Constitutional Rights**

323.    Specifically, the supervisor defendants SARHATT, FITZPATRICK and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff's decedent Michael J. Donahue: a) not to be deprived of life, liberty, or property without due process of law as guaranteed by the Fifth Amendment to the Constitution of the United States; b) to be secure in his person, house, papers, and effects, against unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States; and c) to peaceably assemble and to freedom of intimate association, as guaranteed by the First Amendment to the Constitution of the United States.

324.    As a result of their actions, the supervisory defendants SARHATT, FITZPATRICK and MORRIS did, in fact and among other things, actually deprive Michael J. Donahue of his rights under the Fifth, Fourth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

325.    Specifically, the supervisory defendants SARHATT, FITZPATRICK and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Patricia Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely her right to association, companionship, and relationship with her husband, and

86

her right to choose how to conduct her family affairs, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with her husband, as guaranteed by the First Amendment to the Constitution of the United States.

326.    As a result of their actions, the supervisory defendants SARHATT, FITZPATRICK and MORRIS did, in fact and among other things, actually deprive Patricia Donahue of her rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

327.    Specifically the supervisory defendants SARHATT, FITZPATRICK and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Michael T. Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

328.    As a result of their actions, the supervisory defendants SARHATT, FITZPATRICK and MORRIS did, in fact and among other things, actually deprive Michael T. Donahue of his rights under the Fifth and First Amendments to the Constitution.  This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

329.    Specifically, the supervisory defendants SARHATT, FITZPATRICK and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Shawn Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

330.    As a result of their actions, the supervisory defendants SARHATT, FITZPATRICK and MORRIS did, in fact and among other things, actually deprive Shawn Donahue of his rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

331.    Specifically, the supervisory defendants SARHATT, FITZPATRICK and MORRIS, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as FBI Special Agents, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Thomas Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

332.    As a result of their actions, the supervisory defendants SARHATT, FITZPATRICK and MORRIS did, in fact and among other things, actually deprive Thomas Donahue of his rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

### b.    Conspiracy to Violate Constitutional Rights

333.    As outlined herein, the supervisory defendants SARHATT, FITZPATRICK and MORRIS, between themselves, with CONNOLLY, and with others, did conspire to deprive the plaintiffs, and each of them, of their Constitutional rights, and in so doing, did in fact deprive the plaintiffs their Constitutional rights by virtue of said conspiracy.

### COUNT VII – VIOLATION OF CONSTITUTIONAL RIGHTS

### (FBI AS DEFENDANT)

334.    The plaintiffs reallege and reaffirm paragraphs 1 through 333 of this Complaint, and incorporate them by reference as if fully set forth herein.

335.    This Count is asserted by each of the plaintiffs against the defendant FBI, itself and as and through its Boston Field Office and the Organized Crime Squad of the Boston Field Office (the "FBI Bivens defendants"), pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.[21]

---

[21] Because of the egregious nature of conduct accomplished by the FBI, more specifically the Boston Office of the FBI, in the instant case, this Count argues that the Bivens remedy is especially appropriate against said entities, and argues that the facts of this case merit a narrow exception to the blanket rule established by FDIC v. Meyer, 510 U.S. 471 (1994).

336.    The FBI Bivens defendants, being the employers of CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, intentionally and recklessly failed to train, supervise and control these individuals.  Furthermore, the FBI Bivens defendants failed to create, implement and enforce appropriate policies and procedures for the handling of informants.

337.    The FBI Bivens defendants inadequately and improperly monitored, investigated and remediated the unlawful acts of CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, and instead tolerated and encouraged the same.  In doing so, the FBI Bivens defendants established, maintained and promoted a pattern and practice of unlawful activity within FBI – Boston.

338.    As a result of these actions and omissions of the FBI Bivens defendants, CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, and others, believed and understood that their unlawful actions would not be monitored or sanctioned, but would be tolerated and encouraged.

339.    By their actions and omissions, the FBI Bivens defendants demonstrated a reckless indifference to the extended pattern of unlawful acts of CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, and to the Constitutional rights of the plaintiffs, actually resulting in the deprivation of plaintiffs' Constitutional rights as herein described, and moreover the FBI Bivens defendants took affirmative actions, as described herein, all of which deprived the plaintiffs of their Constitutional rights.

340.    These acts and omissions of the FBI Bivens defendants, and each of them were an extreme deviation from reasonable standards of conduct, were undertaken

intentionally, with actual malice and/or with a reckless disregard for each of the plaintiffs' Constitutional rights.

### a.   Violation of Constitutional Rights

341.   Specifically, the FBI Bivens defendants, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as government law enforcement agencies, did each intentionally and/or recklessly violate the clearly established rights of plaintiff's decedent Michael J. Donahue: a) not to be deprived of life, liberty, or property without due process of law as guaranteed by the Fifth Amendment to the Constitution of the United States; b) to be secure in his person, house, papers, and effects, against unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the Constitution of the United States; and c) to peaceably assemble and to freedom of intimate association, as guaranteed by the First Amendment to the Constitution of the United States.

342.   As a result of their actions, the FBI Bivens defendants did, in fact and among other things, actually deprive Michael J. Donahue of his rights under the Fifth, Fourth and First Amendments to the Constitution.  This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

343.   Specifically, the FBI Bivens defendants, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as government law enforcement agencies, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Patricia Donahue: a) not to be

deprived of life, liberty, or property without due process of law, namely her right to association, companionship, and relationship with her husband, and her right to choose how to conduct her family affairs, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with her husband, as guaranteed by the First Amendment to the Constitution of the United States.

344. As a result of their actions, the FBI Bivens defendants did, in fact and among other things, actually deprive Patricia Donahue of her rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

345. Specifically, the FBI Bivens defendants, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as government law enforcement agencies, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Michael T. Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

346. As a result of their actions, the FBI Bivens defendants did, in fact and among other things, actually deprive Michael T. Donahue of his rights under the Fifth and First Amendments to the Constitution. This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

347.     Specifically, the FBI Bivens defendants, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as government law enforcement agencies, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Shawn Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

348.     As a result of their actions, the FBI Bivens defendants did, in fact and among other things, actually deprive Shawn Donahue of his rights under the Fifth and First Amendments to the Constitution.  This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

349.     Specifically, the FBI Bivens defendants, by their individual and collective unlawful acts as described herein, and while acting under color of Federal law in their positions as government law enforcement agencies, did each intentionally and/or recklessly violate the clearly established rights of plaintiff Thomas Donahue: a) not to be deprived of life, liberty, or property without due process of law, namely his right to association, companionship, and relationship with his father, as guaranteed by the Fifth Amendment to the Constitution of the United States; and b) to freedom of intimate association, namely with his father, as guaranteed by the First Amendment to the Constitution of the United States.

93

350.    As a result of their actions, the FBI Bivens defendants did, in fact and among other things, actually deprive Thomas Donahue of his rights under the Fifth and First Amendments to the Constitution.  This deprivation includes, but is not limited to, the events leading up to, surrounding and including Michael J. Donahue's murder.

### b.    Conspiracy to Violate Constitutional Rights

351.    As outlined herein, the FBI Bivens defendants, between themselves, with CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, and with others, did conspire to deprive the plaintiffs, and each of them, of their Constitutional rights, and in so doing, did in fact deprive the plaintiffs their Constitutional rights by virtue of said conspiracy.

## COUNT VIII - FEDERAL TORT CLAIMS ACT

(BY THE PLAINTIFF, PATRICIA DONAHUE, IN HER CAPACITY AS ADMINISTRATRIX OF THE ESTATE OF MICHAEL J. DONAHUE, AGAINST THE UNITED STATES OF AMERICA et al.)

352.    The plaintiffs reallege and reaffirm paragraphs 1 through 351 of this Complaint, and incorporate them by reference as if fully set forth herein.

353.    The plaintiffs also incorporate by reference, as if set forth fully herein, the Claims for Damage, Injury and Death, pursuant to 28 U.S.C. §§ 1346, 2401 and 2671 *et seq.*, and 28 C.F.R., Part 14, which the plaintiffs duly submitted and presented to the United States of America and its relevant agencies on March 29, 2001.  Copies of these Claim Notices are attached hereto.

354.    As outlined herein, Michael J. Donahue, plaintiff's decedent, was killed as a direct and proximate result of the negligent and/or wrongful acts or omissions of certain employees of the Federal Government, including but not limited to CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the plaintiff Estate in accordance with the laws of the Commonwealth of Massachusetts, and the laws of the United States of America.

355.    The individual defendants committed these acts while acting on behalf of, engaged in the business of, and to further the interests of, the United States.

356.    It was not within the official discretion of the defendants to commit these acts and omissions, as in doing so, they intentionally, knowingly and/or recklessly violated, and allowed to be violated, *inter alia*: the constitutional civil rights of the plaintiffs and others; the United States Constitution itself; the RICO statute, 18 U.S.C., §§ 1961 *et seq.*; M.G.L. c. 265 § 1, c. 274 § 2, and c. 274, § 4 (relating to murder); Chapters 1503 (regarding obstruction of justice), 201 (regarding bribery), 1511 (regarding interference with State investigations), and 1512 (regarding witness tampering) of Title 18 of the United States Code; the Attorney General Guidelines concerning informants; the FBI Manual of Instructions; and the FBI Manual of Investigative and Operational Guidelines.

357.    Generally, the decedent was killed as a direct and proximate result of: a) the willful, wanton, and/or reckless, and/or negligent, acts or omissions of individual Federal officers including but not limited to CONNOLLY, MORRIS, SARHATT, and FITZPATRICK; b) the persistent, deliberate, reckless and callous indifference, and

willful blindness, of the FBI and its supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, to the described wrongful actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS; and c) the environment created and maintained by the FBI, the United States and its supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, which permitted, encouraged and fostered the described wrongful actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS.

358.    Specifically, as described herein, Michael J. Donahue's murder, and the related conscious pain and suffering, was a direct and proximate result of the willful, wanton, and/or reckless, and/or negligent, acts or omissions of the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, the individual supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, and the individual Agent CONNOLLY, each acting in their official capacity, such that they, each and collectively, are liable to the plaintiff Estate under M.G.L. c. 229, §§ 2 and 6.

359.    As described herein, the persistent deliberate, reckless and callous indifference, and willful blindness, of the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or the individual supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, to the described wrongful actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS while acting in their official capacity, was a direct and proximate result of Michael J. Donahue's death,

and related conscious pain and suffering, such that the United States, its agencies and supervisory employees are liable to the plaintiff Estate under M.G.L. c. 229, §§ 2 and 6.

360.    As described herein, the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or the individual supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, created and maintained an environment which permitted, fostered and encouraged the described wrongful actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS committed while acting in their official capacity, and this environment was a direct and proximate result of Michael J. Donahue's death, and related conscious pain and suffering, such that the United States, its agencies and supervisory employees are liable to the plaintiff Estate under M.G.L. c. 229, §§ 2 and 6.

361.    Specifically, as described herein, Michael J. Donahue's murder, and the related pecuniary loss to his estate, was a direct and proximate result of intentional violations of the RICO statute, 18 U.S.C., §§ 1961 *et seq.*, committed by the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, the individual supervisory official MORRIS, and the individual Agent CONNOLLY, each acting in their official capacity, such that they, each and collectively, are liable to the plaintiff Estate under 18 U.S.C., § 1964(c).

362.    As described herein, the persistent deliberate, reckless and callous indifference, and willful blindness, of the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or the individual supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, to the described intentional violations of the RICO

statute, 18 U.S.C., §§ 1961 *et seq.* committed by the individual defendants CONNOLLY

and MORRIS while acting in their official capacity, was a direct and proximate result of

Michael J. Donahue's death, and the related pecuniary loss to his Estate, such that the

United States, its agencies and supervisory employees are liable to the plaintiff Estate

under 18 U.S.C., § 1964(c).

363.    As described herein, the United States of America, by and through its

agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or

the individual supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, created and maintained an environment which permitted,

fostered and encouraged the described wrongful actions of the individual defendants

CONNOLLY, SARHATT, FITZPATRICK, and MORRIS committed while acting in

their official capacity, and this environment was a direct and proximate result of Michael

J. Donahue's death, and the related pecuniary loss to his Estate, such that the United

States, its agencies and supervisory employees are liable to the plaintiff Estate under 18

U.S.C., § 1964(c).

364.    The United States of America is therefore liable to the plaintiff Estate,

benefit to accrue to the next of kin, pursuant to 28 U.S.C., §§ 2671 *et seq.* and M.G.L. c.

229, §§ 2 and 6, for : a) the fair monetary value of the decedent to the next of kin,

Patricia, Michael T., Shawn, and Thomas, including but not limited to compensation for

the loss of expected net income, services, protection, care, assistance, society,

companionship, comfort, guidance, counsel, and advice of the decedent to his family over

the life of the decedent; b) the reasonable medical, funeral and burial expenses of the

decedent; c) punitive and/or multiple damages if allowed by the FTCA; and d) damages for the conscious pain and suffering of the decedent immediately prior to his death.

365.    The United States of America is therefore also liable, pursuant to 28 U.S.C., §§ 2671 *et seq.* and 18 U.S.C., § 1964(c), for the pecuniary loss to the estate given decedent's death, and/or punitive and/or multiple damages if allowed by the FTCA.

## COUNT IX - FEDERAL TORT CLAIMS ACT

(BY THE PLAINTIFFS, PATRICIA DONAHUE, INDIVIDUALLY, MICHAEL T. DONAHUE, SHAWN DONAHUE, AND THOMAS DONAHUE, AGAINST THE UNITED STATES OF AMERICA et al.)

366.    The plaintiffs reallege and reaffirm paragraphs 1 through 365 of this Complaint, and incorporate them by reference as if fully set forth herein.

367.    The plaintiffs also incorporate by reference, as if set forth fully herein, the Claims for Damage, Injury and Death, pursuant to 28 U.S.C. §§ 1346, 2401 and 2671 *et seq.*, and 28 C.F.R., Part 14, which the plaintiffs duly submitted and presented to the United States of America and its relevant agencies on March 29, 2001.  Copies of these Claim Notices are attached hereto.

368.    As outlined herein, the surviving plaintiffs, Patricia Donahue, Michael T. Donahue, Shawn Donahue, and Thomas Donahue, were injured by the negligent and/or wrongful acts or omissions of certain employees of the Federal Government, including but not limited to CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the plaintiffs in accordance with the

laws of the Commonwealth of Massachusetts, and the laws of the United States of America.

369.   The individual defendants committed these acts while acting on behalf of, engaged in the business of, and to further the interests of, the United States.

370.   It was not within the official discretion of the defendants to commit these acts and omissions, as in doing so, they intentionally, knowingly and/or recklessly violated, and allowed to be violated, *inter alia*: the constitutional civil rights of the plaintiffs and others; the United States Constitution itself; the RICO statute, 18 U.S.C., §§ 1961 *et seq.*; M.G.L. c. 265 § 1, c. 274 § 2, and c. 274, § 4 (relating to murder); Chapters 1503 (regarding obstruction of justice), 201 (regarding bribery), 1511 (regarding interference with State investigations), and 1512 (regarding witness tampering) of Title 18 of the United States Code; the Attorney General Guidelines concerning informants; the FBI Manual of Instructions; and the FBI Manual of Investigative and Operational Guidelines.

### a.   Negligent Infliction of Emotional Distress

371.   Generally, the decedent was killed, and the surviving plaintiffs suffered serious emotional harm, as a direct and proximate result of: a) the willful, wanton, and/or reckless, and/or negligent, acts or omissions of the FBI and its individual Federal officers and supervisory officials including but not limited to CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, including those actions that led to the death of Mr. Donahue, and that consisted of the cover-up of the causes of Mr. Donahue's death from the time of such death to the present; b) the persistent, deliberate, reckless and callous

indifference, and willful blindness, of the FBI and its supervisory officials including but

not limited to SARHATT, FITZPATRICK, and MORRIS, to the described wrongful

actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and

MORRIS, including those actions that led to the death of Mr. Donahue, and that

consisted of the cover-up of the causes of Mr. Donahue's death from the time of such

death to the present; and c) the environment created and maintained by the FBI, the

United States and its supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, which permitted, encouraged and fostered the described

wrongful actions of the FBI and its individual defendants CONNOLLY, SARHATT,

FITZPATRICK, and MORRIS, including those actions that led to the death of Mr.

Donahue, and that consisted of the cover-up of the causes of Mr. Donahue's death from

the time of such death to the present.  This tort continues to the present day due to the

intentional and/or reckless acts or omissions of the defendants.

     372.    Specifically, as described herein, the surviving plaintiffs suffered

foreseeable, serious, reasonable, and objective emotional distress as a direct and

proximate result of the negligent, willful, and/or reckless acts or omissions of the United

States of America, by and through its agency the Federal Bureau of Investigation, the

Organized Crime Squad thereof, the individual supervisory officials including but not

limited to SARHATT, FITZPATRICK, and MORRIS, and the individual Agent

CONNOLLY, each acting in their official capacity, such that they, each and collectively,

are liable to the plaintiff Estate under the common law of the Commonwealth of

Massachusetts for negligent infliction of emotional distress.  These acts and omissions

included not only those which caused the death of Michael J. Donahue, but the nineteen

year cover-up of the causes behind Mr. Donahue's death which persists to the present

day, including the involvement of the FBI and the FBI's assistance and complicity in the

unsuccessful prosecution of James Flynn for the murder.

373.    As described herein, the persistent deliberate, reckless and callous

indifference, and willful blindness, of the United States of America, by and through its

agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or

the individual supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, to the described wrongful actions of the individual

defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS, including those

actions that led to the death of Mr. Donahue, and that consisted of the cover-up of the

causes of Mr. Donahue's death from the time of such death to the present, was a direct

and proximate result of the surviving plaintiffs' foreseeable, serious, reasonable, and

objective emotional distress, such that the United States, its agencies and supervisory

employees are liable to the surviving plaintiffs under the common law of the

Commonwealth of Massachusetts for negligent infliction of emotional distress.

374.    As described herein, the United States of America, by and through its

agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or

the individual supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, created and maintained an environment which permitted,

fostered and encouraged the described wrongful actions of the individual defendants

CONNOLLY, SARHATT, FITZPATRICK, and MORRIS, including those actions that

led to the death of Mr. Donahue, and that consisted of the cover-up of the causes of Mr.

Donahue's death from the time of such death to the present, and this environment was a

direct and proximate result of the surviving plaintiffs' foreseeable, serious, reasonable, and objective emotional distress, such that the United States, its agencies and supervisory employees are liable to the surviving plaintiffs under the common law of the Commonwealth of Massachusetts for negligent infliction of emotional distress.

375.    The United States of America is therefore liable in damages to the surviving plaintiffs, pursuant to 28 U.S.C., §§ 2671 *et seq.* and the common law of the Commonwealth of Massachusetts for negligent infliction of emotional distress.

### b.    Intentional Infliction of Emotional Distress

376.    Generally, the decedent was killed, and the surviving plaintiffs suffered severe emotional harm, as a direct and proximate result of: a) the willful, wanton, and/or reckless, and/or negligent, acts or omissions of the FBI and its individual Federal officers and supervisory officials including but not limited to CONNOLLY, MORRIS, SARHATT, and FITZPATRICK, including those actions that led to the death of Mr. Donahue, and that consisted of the cover-up of these actions from the time of Mr. Donahue's death to the present; b) the persistent, deliberate, reckless and callous indifference, and willful blindness, of the FBI and its supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, to the described wrongful actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS, including those actions that led to the death of Mr. Donahue, and that consisted of the cover-up of these actions from the time of Mr. Donahue's death to the present; and c) the environment created and maintained by the FBI, the United States and its supervisory officials including but not limited to SARHATT, FITZPATRICK, and

MORRIS, which permitted, encouraged and fostered the described wrongful actions of

the FBI and its individual defendants CONNOLLY, SARHATT, FITZPATRICK, and

MORRIS, including those actions that led to the death of Mr. Donahue, and that

consisted of the cover-up of these actions from the time of Mr. Donahue's death to the

present day. This tort continues to the present day due to the intentional and/or reckless

acts or omissions of the defendants.

377.    Specifically, as described herein, the surviving plaintiffs suffered

foreseeable and severe emotional distress as a direct and proximate result of the extreme

and outrageous conduct of the United States of America, by and through its agency the

Federal Bureau of Investigation, the Organized Crime Squad thereof, the individual

supervisory officials including but not limited to SARHATT, FITZPATRICK, and

MORRIS, and the individual Agent CONNOLLY, each acting in their official capacity,

such that they, each and collectively, are liable to the plaintiff Estate under the common

law of the Commonwealth of Massachusetts for intentional infliction of emotional

distress. These acts and omissions included not only those which caused the death of

Michael J. Donahue, but the nineteen year cover-up of the causes behind Mr. Donahue's

death which persists to the present day, including the involvement of the FBI and the

FBI's assistance and complicity in the unsuccessful prosecution of James Flynn for the

murder.

378.    As described herein, the persistent deliberate, reckless and callous

indifference, and willful blindness, of the United States of America, by and through its

agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or

the individual supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, to the described wrongful actions of the individual

defendants CONNOLLY, SARHATT, FITZPATRICK, and MORRIS while acting in

their official capacity, was extreme and outrageous conduct in itself, and was a direct and

proximate result of the surviving plaintiffs' foreseeable and severe emotional distress,

such that the United States, its agencies and supervisory employees are liable to the

surviving plaintiffs under the common law of the Commonwealth of Massachusetts for

intentional infliction of emotional distress.

379.    As described herein, the United States of America, by and through its

agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or

the individual supervisory officials including but not limited to SARHATT,

FITZPATRICK, and MORRIS, created and maintained an environment which permitted,

fostered and encouraged the described wrongful actions of the individual defendants

CONNOLLY, SARHATT, FITZPATRICK, and MORRIS, including those actions that

led to the death of Mr. Donahue, and that consisted of the cover-up of the causes of Mr.

Donahue's death from the time of such death to the present, and this environment was a

direct and proximate result of the surviving plaintiffs' foreseeable and severe emotional

distress, such that the United States, its agencies and supervisory employees are liable to

the surviving plaintiffs under the common law of the Commonwealth of Massachusetts

for intentional infliction of emotional distress.

380.    The defendants knew or should have known that severe emotional distress,

at the very least, was the likely result of their wrongful actions. The conduct of each

defendant, as described herein relating to both the death of Mr. Donahue and the cover-up

of the cause of his death, was "beyond all possible bounds of decency," and is "utterly

intolerable in a civilized society."

381.    The United States of America is therefore liable in damages to the

surviving plaintiffs, pursuant to 28 U.S.C., §§ 2671 *et seq.* and the common law of the

Commonwealth of Massachusetts for negligent infliction of emotional distress.


### c.    RICO

382.    Generally, the decedent was killed, and the surviving plaintiffs suffered

pecuniary harm, as a direct and proximate result of: a) the willful, wanton, and/or

reckless, and/or negligent, acts or omissions of the FBI and its individual Federal officers

and supervisory officials including but not limited to CONNOLLY, MORRIS,

SARHATT, and FITZPATRICK, including those actions that led to the death of Mr.

Donahue, and that consisted of the cover-up of these actions from the time of Mr.

Donahue's death to the present; b) the persistent, deliberate, reckless and callous

indifference, and willful blindness, of the FBI and its supervisory officials including but

not limited to SARHATT, FITZPATRICK, and MORRIS, to the described wrongful

actions of the individual defendants CONNOLLY, SARHATT, FITZPATRICK, and

MORRIS, including those actions that led to the death of Mr. Donahue, and that

consisted of the cover-up of these actions from the time of Mr. Donahue's death to the

present; and c) the environment created and maintained by the FBI, the United States and

its supervisory officials including but not limited to SARHATT, FITZPATRICK, and

MORRIS, which permitted, encouraged and fostered the described wrongful actions of

the FBI and its individual defendants CONNOLLY, SARHATT, FITZPATRICK, and

MORRIS, including those actions that led to the death of Mr. Donahue, and that consisted of the cover-up of these actions from the time of Mr. Donahue's death to the present day.

383.    Specifically, as described herein, the surviving plaintiffs suffered significant pecuniary injury as a direct and proximate result of intentional violations of the RICO statute, 18 U.S.C., §§ 1961 *et seq.*, committed by the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, the supervisory official MORRIS. and the individual Agent CONNOLLY, each acting in their official capacity, such that the United States, and each defendant, are liable to the surviving plaintiffs under 18 U.S.C., § 1964(c).  These acts and omissions included not only those which caused the death of Michael J. Donahue, but the nineteen year cover-up of the causes behind Mr. Donahue's death which persists to the present day, including the involvement of the FBI and the FBI's assistance and complicity in the unsuccessful prosecution of James Flynn for the murder.

384.    Furthermore, as described herein, the persistent deliberate, reckless and callous indifference, and willful blindness, of the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or the individual supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, to the described intentional violations of the RICO statute, 18 U.S.C., §§ 1961 *et seq.* committed by the individual defendants CONNOLLY and MORRIS while acting in their official capacity, was a direct and proximate result of Michael J. Donahue's death, the cover-up, and the related pecuniary

loss to the surviving plaintiffs, such that the United States, its agencies and supervisory employees are liable to the surviving plaintiffs under 18 U.S.C., § 1964(c).

385.    As described herein, the United States of America, by and through its agency the Federal Bureau of Investigation, the Organized Crime Squad thereof, and/or the individual supervisory officials including but not limited to SARHATT, FITZPATRICK, and MORRIS, created and maintained an environment which permitted, fostered and encouraged the described intentional violations of the RICO statute, 18 U.S.C., §§ 1961 *et seq.* committed by the individual defendants CONNOLLY and MORRIS while acting in their official capacity, and this environment was therefore a direct and proximate result of Michael J. Donahue's death, the cover-up, and the related pecuniary loss to the surviving plaintiffs, such that the United States, its agencies and supervisory employees are liable to the surviving plaintiffs under 18 U.S.C., § 1964(c).

386.    The United States of America is therefore also liable, pursuant to 28 U.S.C., §§ 2671 *et seq.* and 18 U.S.C., § 1964(c), for the pecuniary loss to the each surviving plaintiff given decedent's death.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully demand Entry of Judgment against all defendants, jointly and severally, as follows:

(a)    Declaring that the United States Government is estopped from denying the essential allegations of Mr. CONNOLLY's criminal offenses as outlined herein, by nature of the indictment (as amended) issued by the Government and returned by the

Grand Jury in <u>United States of America v. John J. CONNOLLY, Jr. et al</u>, U.S. District Court for the District of Massachusetts, Docket No. 99-CR-10428-JLT;

    (b)    Similarly declaring, pursuant to 18 U.S.C. §1964(d), that Mr. CONNOLLY himself is estopped from denying the essential allegations of Mr. CONNOLLY's criminal offenses as outlined herein, should a judgment enter in favor of the United States in <u>United States of America v. John J. CONNOLLY, Jr. et al</u>, U.S. District Court for the District of Massachusetts, Docket No. 99-CR-10428-JLT;

    (c)    Declaring that the defendants are collaterally estopped from denying the essential Findings of Fact included in the September 15, 1999 Order of the Court, issued in <u>United States of America v. Salemme et al.</u>, U.S. District Court for the District of Massachusetts, Docket No. 94-CR-10287 (Wolf, J);

    (d)    Declaring, after a trial on the merits, that the defendants' individual and collective acts as described herein constitute a violation(s) of the federal Racketeering Influenced and Corrupt Organizations statute, 18 U.S.C. § 1962 (b), (c), and (d), and that these violations caused pecuniary injury to the estate of plaintiff's decedent Michael J. Donahue, Patricia Donahue, Michael T. Donahue, Shawn Donahue, and Thomas Donahue;

    (e)    Declaring, after a trial on the merits, that the defendants' individual and collective acts and omissions as described herein constitute a violation(s) of the Constitutional rights of the plaintiff's decedent Michael J. Donahue, Patricia Donahue, Michael T. Donahue, Shawn Donahue, and Thomas Donahue under the First, Fourth and/or Fifth Amendments to the Constitution of the United States of America, that the plaintiffs were in fact thereby deprived of such Constitutional rights, and that the

defendants committed such acts and omissions intentionally and with reckless disregard to the plaintiffs' Constitutional rights;

(f)     Declaring, after a trial on the merits, that the defendants conspired to deprive the plaintiffs of their Constitutional rights, and by conspiring did in fact so deprive the plaintiffs of their Constitutional rights as outlined herein;

(g)     Declaring, after a trial on the merits, that the defendant United States of America, by itself and by and through it its representative agencies and employees, is liable to the plaintiffs through the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 *et seq.,* under the law of the Commonwealth of Massachusetts for Wrongful Death, M.G.L c. 229, §§ 2 and 6, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress, and under the law of the United States of America for violations of the RICO statute, 18 U.S.C. §§ 1961 *et seq.*;

(h)     Awarding the plaintiffs all compensatory damages against the United States of America allowed through the Federal Tort Claims Act and under Massachusetts and Federal law;

(i)     Awarding the plaintiffs all compensatory damages allowed under *Bivens,* 403 U.S. 388 (1971), the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and any other applicable law;

(j)     Awarding the plaintiffs treble actual damages pursuant to the Racketeering Influenced and Corrupt Organizations statute, 18 U.S.C., § 1962 et seq.;

(k)     Awarding the plaintiffs any and all other punitive damages allowed under law, including pursuant to *Bivens* and its progeny, in an amount to be determined by a jury at trial;

(l)     Awarding the plaintiffs their reasonable attorneys fees, costs and disbursements incurred in connection with this action, pursuant to Racketeering Influenced and Corrupt Organizations statute, at 18 U.S.C., § 1964(c), the Equal Access to Justice Act, at 28 U.S.C. § 2412, Rule 54 of the Federal Rules of Civil Procedure, and/or any other applicable law;

(m)     Awarding of interest regarding the above damages, and granting such other and further relief as this Honorable Court may deem just and proper.

## JURY DEMAND

The plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
The Plaintiffs,
PATRICIA DONAHUE, Individually, and
in her Capacity as Administratrix of the
Estate of MICHAEL J. DONAHUE,
MICHAEL T. DONAHUE,
SHAWN DONAHUE, and
THOMAS DONAHUE,
By their Attorneys,

Edward T. Hinchey, BBO #235090
Christopher T. Meier, BBO #640995
SLOANE AND WALSH, LLP
Three Center Plaza
Boston, MA 02108
(617) 523-6010

and

Robert A. George, BBO # 189400
ROBERT A. GEORGE AND
ASSOCIATES, P.C.
138 Newbury Street, Suite Three
Boston, MA 02116
(617) 262-6900

Dated: 10/24/01

## SLOANE AND WALSH

A PROFESSIONAL LIMITED LIABILITY PARTNERSHIP

ATTORNEYS AT LAW

THREE CENTER PLAZA

BOSTON, MASSACHUSETTS 02108

WILLIAM J. DAILEY, JR.
JOHN P. RYAN
ROBERT H. GAYNOR
EDWARD T. HINCHEY
LAWRENCE J. KENNEY, JR.
MYLES W. MCDONOUGH
MARCIA K. DIVOLL

ANTHONY J. ANTONELLIS
WILLIAM J. DAILEY III
CURTIS R. DIEDRICH
JAMES P. DONOHUE, JR.
JOHN A. DONOVAN III
JOHN P. FAGGIANO
KEITH G. FLANAGAN

LAURA MEYER GREGORY
MICHAEL P. GUAGENTI
DAVID M. HARTIGAN
ROSS A. KIMBALL
GREGG M. LYSKO
JOHN MCCORMACK
CHRISTOPHER T. MEIER
STACEY E. MORRIS
HEIDI M. OH
HARRY A. PIERCE
ANN L. SIMONEAU

JOSEPH J. WALSH
COUNSEL

TELEPHONE: (617) 523-6010
FAX: (617) 227-0927
E-MAIL ADDRESS: EMAIL@SLOANEWALSH.COM

WRITER'S DIRECT E-MAIL ADDRESS: CMEIER@SLOANEWALSH.COM

March 29, 2001

United States Department of Justice
c/o The Honorable John D. Ashcroft, Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Re:   Claimants:   Patricia Donahue, individually and as administratrix of the Estate
                   of Michael J. Donahue
                   Michael T. Donahue
                   Shawn Donahue
                   Thomas Donahue
      Date of Loss:  May 11, 1982

Dear Attorney General Ashcroft:

Pursuant to 28 U.S.C. §§ 1346 and 2671 et seq. and 28 CFR 14, please find enclosed for submission and presentment the Claim for Wrongful Death (Standard Form 95 with supporting materials) of the Donahue family, listed above, related to the murder of Michael J. Donahue on May 11, 1982. These claims have additionally been submitted to the Federal Bureau of Investigation, care of Director Louis J. Freeh, and the Boston Office of the Federal Bureau of Investigation, care of SAC Charles S. Prouty.

Please direct this claim to the appropriate agency. Thank you for your consideration of this claim.

Very truly yours,

Edward T. Hinchey
Christopher T. Meier

ETH/CTM/mtc
Enc.
Cc:   Donald K. Stern, Esq., United States Attorney for the District of Massachusetts
      Suzanne E. Durrell, Esq., Chief, Civil Division

F:\Public\Shauna\Ctm\Donahue 5064\Correspondence\Defendant\FTCA Correspondence\Ashcroft Ltr. 03.07.01.Doc

## SLOANE AND WALSH

A PROFESSIONAL LIMITED LIABILITY PARTNERSHIP

ATTORNEYS AT LAW

THREE CENTER PLAZA

BOSTON, MASSACHUSETTS 02108

WILLIAM J. DAILEY, JR.
JOHN P. RYAN
ROBERT H. GAYNOR
EDWARD T. HINCHEY
LAWRENCE J. KENNEY, JR.
MYLES W. MCDONOUGH
MARCIA K. DIVOLL

ANTHONY J. ANTONELLIS
WILLIAM J. DAILEY III
CURTIS R. DIEDRICH
JAMES P. DONOHUE, JR.
JOHN A. DONOVAN III
JOHN P. FAGGIANO
KEITH G. FLANAGAN

LAURA MEYER GREGORY
MICHAEL P. GUAGENTY
DAVID M. HARTIGAN
ROSS A. KIMBALL
GREGG M. LYSKO
JOHN MCCORMACK
CHRISTOPHER T. MEIER
STACEY E. MORRIS
HEIDI M. OH
HARRY A. PIERCE
ANN L. SIMONEAU

JOSEPH J. WALSH
COUNSEL

TELEPHONE: (617) 523-6010
FAX: (617) 227-0927
E-MAIL ADDRESS: EMAIL@SLOANEWALSH.COM

WRITER'S DIRECT E-MAIL ADDRESS: CMEIER@SLOANEWALSH.COM

March 7, 2001

Boston Field Office
Federal Bureau of Investigation
c/o Charles S. Prouty, Special Agent in Charge
One Center Plaza, Suite 600
Boston, Massachusetts 02108

Re:   Claimants:   Patricia Donahue, individually and as administratrix of the Estate
                   of Michael J. Donahue
                   Michael T. Donahue
                   Shawn Donahue
                   Thomas Donahue
      Date of Loss:   May 11, 1982

Dear SAC Prouty:

Pursuant to 28 U.S.C. §§ 1346 and 2671 et seq. and 28 CFR 14, please find enclosed for submission and presentment the Claim for Wrongful Death (Standard Form 95 with supporting materials) of the Donahue family, listed above, related to the murder of Michael J. Donahue on May 11, 1982. These claims have additionally been submitted to the Federal Bureau of Investigation, care of Director Louis J. Freeh, and the United States Department of Justice, care of Attorney General John D. Ashcroft.

Please direct this claim to the appropriate agency. Thank you for your consideration of this claim.

Very truly yours,

Edward T. Hinchey
Christopher T. Meier

ETH/CTM/mtc
Enc.
Cc:   Donald K. Stern, Esq., United States Attorney for the District of Massachusetts
      Suzanne E. Durrell, Esq., Chief, Civil Division

F:\Public\Shauna\Ctm\Donahue 5064\Correspondence\Defendant\FTCA Correspondence\Prouty Ltr. 03.07.01.Doc

## SLOANE AND WALSH

A PROFESSIONAL LIMITED LIABILITY PARTNERSHIP

ATTORNEYS AT LAW

THREE CENTER PLAZA

BOSTON, MASSACHUSETTS 02108

TELEPHONE: (617) 523-6010
FAX: (617) 227-0927
E-MAIL ADDRESS: EMAIL@SLOANEWALSH.COM

WRITER'S DIRECT E-MAIL ADDRESS: cmeier@sloanewalsh.com

WILLIAM J. DAILEY, JR.
JOHN P. RYAN
ROBERT H. GAYNOR
EDWARD T. HINCHEY
LAWRENCE J. KENNEY, JR.
MYLES W. MCDONOUGH
MARCIA K. DIVOLL

ANTHONY J. ANTONELLIS
WILLIAM J. DAILEY III
CURTIS R. DIEDRICH
JAMES P. DONOHUE, JR.
JOHN A. DONOVAN III
JOHN P. FAGGIANO
KEITH G. FLANAGAN

LAURA MEYER GREGORY
MICHAEL P. GUAGENTY
DAVID M. HARTIGAN
ROSS A. KIMBALL
GREGG M. LYSKO
JOHN MCCORMACK
CHRISTOPHER T. MEIER
STACEY E. MORRIS
HEIDI M. OH
HARRY A. PIERCE
ANN L. SIMONEAU

JOSEPH J. WALSH
COUNSEL

March 29, 2001

Federal Bureau of Investigation
c/o Louis J. Freeh, Director
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535-0001

Re:   Claimants:   Patricia Donahue, individually and as administratrix of the Estate
of Michael J. Donahue
Michael T. Donahue
Shawn Donahue
Thomas Donahue

Date of Loss:  May 11, 1982

Dear Director Freeh:

Pursuant to 28 U.S.C. §§ 1346 and 2671 et seq. and 28 CFR 14, please find enclosed for submission and presentment the Claim for Wrongful Death (Standard Form 95 with supporting materials) of the Donahue family, listed above, related to the murder of Michael J. Donahue on May 11, 1982. These claims have additionally been submitted to the Boston Office of the Federal Bureau of Investigation, care of SAC Charles S. Prouty, and the United States Department of Justice, care of Attorney General John D. Ashcroft.

Please direct this claim to the appropriate agency. Thank you for your consideration of this claim.

Very truly yours,

Edward T. Hinchey
Christopher T. Meier

ETH/CTM/mtc
Enc.
Cc:   Donald K. Stern, Esq., United States Attorney for the District of Massachusetts
Suzanne E. Durrell, Esq., Chief, Civil Division

F:\Public\Shauna\Ctm\Donahue 5064\Correspondence\Defendant\FTCA Correspondence\L. Freeh Ltr. 03.07.01.Doc

# SLOANE AND WALSH

### A PROFESSIONAL LIMITED LIABILITY PARTNERSHIP

#### ATTORNEYS AT LAW

WILLIAM J. DAILEY, JR.
JOHN P. RYAN
ROBERT H. GAYNOR
EDWARD T. HINCHEY
LAWRENCE J. KENNEY, JR.
MYLES W. McDONOUGH
MARCIA K. DIVOLL
———
ANTHONY J. ANTONELLIS
WILLIAM J. DAILEY III
CURTIS R. DIEDRICH
JAMES P. DONOHUE, JR.
JOHN A. DONOVAN III
JOHN P. FAGGIANO
KEITH G. FLANAGAN

THREE CENTER PLAZA

BOSTON, MASSACHUSETTS 02108

TELEPHONE: (617) 523-6010
FAX: (617) 227-0927
E-MAIL ADDRESS: email@sloanewalsh.com

WRITER'S DIRECT E-MAIL ADDRESS: kflanagan@sloanewalsh.com

LAURA MEYER GREGORY
MICHAEL P. GUAGENTY
DAVID M. HARTIGAN
ROSS A. KIMBALL
GREGG M. LYSKO
JOHN McCORMACK
CHRISTOPHER T. MEIER
STACEY E. MORRIS
HEIDI M. OH
HARRY A. PIERCE
ANN L. SIMONEAU
———
JOSEPH J. WALSH
COUNSEL

March 29, 2001

The Honorable Donald K. Stern
United States Attorney for the District of Massachusetts
Suzanne E. Durrell, Chief, Civil Division
United States Courthouse
1 Courthouse Way - Suite 9200
Boston, MA 02210

RE:   Estate of Michael J. Donahue, *et al.* v. Federal Bureau of Investigation, *et al.*
       USDC, D. Mass, Docket No. 01-CV-10433-RGL
       Our File No.  PE000-5064

Dear Counsel:

As you are aware, this office represents the Estate of Michael J. Donahue, and his surviving wife, Patricia Donahue, and sons, Michael T. Donahue, Sean Donahue and Thomas Donahue.

As a courtesy, I am forwarding to you copies of the presentment letters which have been submitted under the Federal Tort Claims Act to the Department of Justice, care of Attorney General John D. Ashcroft, the Federal Bureau of Investigation, care of Director Louis J. Freeh, and the Boston Field Office of the FBI, care of SAC Charles S. Prouty.  I would ask that you ensure that these notices have been forwarded to the appropriate agencies.

It is my understanding that your office is fully aware of the basis of the Donahues' claim.  Indeed, the United States Attorneys' Office in Boston is currently prosecuting former Agent John Connolly for having provided information to an organized crime figure, James Bulger, which directly led to the murder of Michael J. Donahue.  Based on the findings of fact of Judge Wolf in the matter of United States v. Salemme, No. 94-CR-10287, 91 F. Supp. 2d, 141 (D. Mass. 1999), and the information uncovered in the course of the criminal investigation resulting in the indictment of former Special Agent John Connolly in United States v. Connolly, USDC, D. Mass. No. 99-CR-

The Honorable Donald K. Stern
March 29, 2001
Page 2

10428, the United States Government is estopped from denying the claims of the
Donahue family.

On behalf of my clients, I would like to request a meeting with you at your
earliest convenience to discuss the available options to compensate the Donahues and to
resolve this matter.

Very truly yours,

Edward T. Hinchey
Christopher T. Meier

ETH:CTM:dlc
Enclosures
cc:    Robert A. George, Esq.
F:\Public\Shauna\Ctm\Donahue 5064\Correspondence\Defendant\FTCA Correspondence\Stearn Ltr. 03.07.01.Doc

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS:  Please read carefully the instructions on the reverse side and supply information requested on both sides of this form.  Use additional sheet(s) if necessary.   See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: <br><br> Please see attached list. | 2. Name, Address of claimant and claimant's personal representative, if any. <br> (See instructions on reverse.)  (Number, street, city, State and Zip Code) <br><br> Patricia A. Donahue, as Administratrix of the Estate of Michael J. Donahue <br> Edward T. Hinchey, Esq. SLOANE & WALSH, LLP |
|---|---|

| 3. TYPE OF EMPLOYMENT <br> ☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH <br> 5-28-49 | 5. MARITAL STATUS <br> married | 6. DATE AND DAY OF ACCIDENT <br> May 11, 1982 | 7. TIME (A.M. OR P.M.) <br> P.M. |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

Please see attached.

**9.** PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED.  (See instructions on reverse side.)

n/a

**10.** PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM.  IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see attached.

**11.** WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Please see attached. | Please see attached. |

| 12. (See Instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE <br> n/a | 12b. PERSONAL INJURY <br> n/a | 12c. WRONGFUL DEATH <br> $9,000,000.00 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) <br> $9,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) <br> *Patricia A. Donahue* | 13b. Phone number of signatory <br> (617) 523-6010 | 14. DATE OF CLAIM <br> 3.29.2001 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM <br> The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS <br> Fine of not more than $10,000 or imprisonment for not more than 5 years or both.  (See 18 U.S.C. 287, 1001.) |
|---|---|

95-109 <br> Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) <br> PRESCRIBED BY DEPT. OF JUSTICE <br> 28 CFR 14.2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Please see attached. | Patricia Donahue, 604 Irving Rd., Randolph, MA 02<br><br>Edward T. Hinchey, Esq. SLOANE & WALSH, LLP<br>3 Center Plaza, Boston, Massachusetts 02108 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>3-16-45 | 5. MARITAL STATUS<br>widowed | 6. DATE AND DAY OF ACCIDENT<br>May 11, 1982 | 7. TIME (A.M. OR P.M.)<br>P.M. |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

Please see attached.

**9.** PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

n/a

**10.** PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see attached.

**11.** WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Please see attached. | Please see attached. |

12. (See instructions on reverse) AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| n/a | n/a | $9,000,000.00 | $9,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br><br>*Patricia Donahue* | 13b. Phone number of signatory<br>(617) 523-6010 | 14. DATE OF CLAIM<br>3-29-2001 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING CLAIM OR MAKING FALSE STATEMENTS<br>Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

95-109
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See Instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Please see attached. | Shawn Donahue<br>14 Marion Street, Holbrook, MA 02343<br>Edward T. Hinchey, Esq. SLOANE & WALSH, LLP<br>3 Center Plaza, Boston, Massachusetts 02108 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>9/11/70 | 5. MARITAL STATUS<br>married | 6. DATE AND DAY OF ACCIDENT<br>May 11, 1982 | 7. TIME (A.M. OR P.M.)<br>P.M. |
|---|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

Please see attached.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

n/a

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see attached.

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Please see attached. | Please see attached. |

**12. (See Instructions on reverse)**        **AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE<br>n/a | 12b. PERSONAL INJURY<br>n/a | 12c. WRONGFUL DEATH<br>$6,000,000.00 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$6,000,000.00 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See Instructions on reverse side.)<br>*Shawn Donahue* | 13b. Phone number of signatory<br>(617) 523-6010 | 14. DATE OF CLAIM<br>3.29.2001 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

95-109<br>Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS:  Please read carefully the instructions on the reverse side and supply information requested on both sides of this form.   Use additional sheet(s) if necessary.   See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Please see attached. | 2. Name, Address of claimant and claimant's personal representative, if any.<br>(See instructions on reverse.)  (Number, street, city, State and Zip Code)<br>Thomas Donahue, 604 Irving Rd., Randolph, MA 02⬛<br>Edward T. Hinchey, Esq. SLOANE & WALSH, LLP<br>3 Center Plaza, Boston, Massachusetts 0210⬛ |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>3/15/74 | 5. MARITAL STATUS<br>single | 6. DATE AND DAY OF ACCIDENT<br>May 11, 1982 | 7. TIME (A.M. OR P.M.)<br>P.M. |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

Please see attached.

---

**9.                                                      PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED.   (See instructions on reverse side.)

n/a

---

**10.                                          PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM.   IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see attached.

---

**11.                                                      WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Please see attached. | Please see attached. |

---

| 12. (See instructions on reverse) | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>n/a | 12b. PERSONAL INJURY<br>n/a | 12c. WRONGFUL DEATH<br>$6,000,000.00 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$6,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*Thomas Donahue* | 13b. Phone number of signatory<br>(617) 523-6010 | 14. DATE OF CLAIM<br>3.29.2001 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Fine of not more than $10,000 or imprisonment for not more than 5 years or both.  (See 18 U.S.C. 287, 1001.) |
|---|---|

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: Please see attached. | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) Michael T. Donahue,15 Heckla St.,Boston, MA 02 Edward T. Hinchey, Esq. SLOANE & WALSH, LLP 3 Center Plaza, Boston, Massachusetts 02108 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 1/17/69 | 5. MARITAL STATUS single | 6. DATE AND DAY OF ACCIDENT May 11, 1982 | 7. TIME (A.M. OR P.M.) P.M. |
|---|---|---|---|---|

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)*

Please see attached.

**9.** **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

n/a

**10.** **PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see attached.

**11.** **WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| Please see attached. | Please see attached. |

**12. (See instructions on reverse)** **AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| n/a | n/a | $6,000,000.00 | $6,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory (617) 523-6010 | 14. DATE OF CLAIM 3·29·2001 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |
|---|---|

95-109
Previous editions not usable.

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**Addendum to STANDARD FORM 95**

Claimants:                Estate of Michael J. Donahue
Patricia A. Donahue, Individually and As Administratrix
Michael T. Donahue
Thomas Donahue
Shawn Donahue

This Addendum is attached to FTCA Notices filed on behalf of (1) The Estate of Michael J. Donahue, by Patricia A. Donahue, Administratrix; (2) Patricia A. Donahue, wife; (3) Michael T. Donahue, son; (4) Thomas Donahue, son; and (5) Shawn Donahue, son. Under the Massachusetts Wrongful Death Statute, General Laws ch. 229, sec. 1 et seq., the Administratrix is authorized to prosecute all claims arising out of the wrongful death of Michael J. Donahue.

Legal Representatives:      Edward T. Hinchey, Esq.
Christopher T. Meier, Esq.
SLOANE & WALSH, LLP
3 Center Plaza
Boston, Massachusetts 02108
(617) 523-6010

Robert A. George, Esq.
Law Offices of Robert A. George
138 Newbury Street
Boston, MA 02116
(617) 262-6900

---

## RESPONSE NO. 1

This Claim is hereby submitted to the following Federal Agencies:

Boston Field Office
Federal Bureau of Investigation
C/o Charles Prouty, Special Agent in Charge
One Center Plaza, Suite 600
Boston, Massachusetts 02108

Federal Bureau of Investigation
C/o Louis J. Freeh, Director
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535-0001

United States Department of Justice
C/o The Honorable John D. Ashcroft, United States Attorney General
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

## RESPONSE NO. 8

Basis of Claim:

This Claim is brought regarding the wrongful death and murder of Michael J. Donahue, which occurred on May 11, 1982. The claimants are the wife, Patricia Donahue, and the children, Michael, Thomas and Shawn, of Mr. Donahue, and Mr. Donahue's Estate. It is alleged that former supervisors and agents of the Boston Field Office of the Federal Bureau of Investigation ("FBI-Boston"), along with the Federal Bureau of Investigation ("FBI") itself, directly caused Mr. Donahue's murder, which was physically committed by James J. Bulger, a known organized crime figure and then an FBI "top-echelon" informant, and his associates.

The facts of this claim are drawn primarily from the factual findings of Judge Mark L. Wolf in the case of United States v Salemme et al, Doc. No. 94-CR-10287-MLW, 91 F.Supp.2d 141 (D. Mass. September 15, 1999) and federal indictments which the United States has asserted against various former FBI agents, including John Connolly, and organized crime members, including Mr. Bulger and Mr. Flemmi. See United States v. Connolly et al, Doc. No. 99-CR-10428-JLT, Superceding Indictment (Paper # 158) (October 11, 2000); United States v. Bulger et al, Doc. No. 99-CR-10371-RGS, Superceding Indictment (Paper No. 158) (November 1, 2000). As such, the gravamen of this claim is based on assertions that have either been established as fact in a Federal Court proceeding or are being asserted as true in criminal indictments by the Federal Government, through the Department of Justice and the Office of the United States Attorney for the District of Massachusetts. It would be inconsistent in this context for the Government to deny the very facts which it has asserted as true, or those facts which have been proven in a previous proceeding to which the Government was a party.

In summary, Mr. Donahue was an innocent bystander victim who was killed when Mr. Bulger murdered Edward Brian Halloran, who was in a car with Mr. Donahue at the time of their death. Mr. Halloran had offered information to the FBI incriminating Mr. Bulger in the murder of Roger Wheeler. Mr. Bulger, seeking to protect himself, killed Mr. Halloran to prevent Mr. Halloran from fully informing on him and later testifying in Court regarding the Wheeler murder.

FBI agents, specifically including Special Agent John Connolly and Supervisory Special Agent John Morris, informed Mr. Bulger that Mr. Halloran was cooperating with the FBI and was providing information incriminating Mr. Bulger in the Wheeler murder. Supervisory Special Agent Morris, then head of the Organized Crime Squad for FBI-Boston, informed Special Agent Connolly, who was Mr. Bulger's official FBI handler, of Mr. Halloran's tender of information implicating Mr. Bulger, with the full knowledge and

2

understanding that Special Agent Connolly would inform Mr. Bulger, who in turn would retaliate against Mr. Halloran.

Special Agent Connolly did in fact immediately relay the information provided by Supervisory Special Agent Morris regarding Mr. Halloran to Mr. Bulger. As a direct result, Mr. Bulger, and his associates, shot Mr. Halloran to death outside of a South Boston restaurant, also killing Michael Donahue, who was giving Mr. Halloran a ride home to their neighborhood.

Approximately a month after these killings, Supervisory Special Agent Morris accepted a $1,000 "reward" from Mr. Bulger, in appreciation for the Halloran information. Special Agent Connolly facilitated and delivered this bribe.

These murders were a part of a larger pattern of inappropriate and unlawful conduct committed at FBI-Boston over the span of at least three decades, whereby Special Agent Connolly, Supervisory Special Agent Morris and their predecessors utilized their positions as special agents of the FBI, in concert with Mr. Bulger, Mr. Flemmi, and other organized crime figures, to conduct an ongoing pattern of unlawful activity through the Boston Field Office of the FBI. Special Agent Connolly and Supervisory Special Agent Morris protected their own interests by cooperating with these Organized Crime figures. Furthermore, these intentional patterns of unlawful and inappropriate conduct, including those actions that resulted in the murders of Mr. Donahue, were allowed to continue for decades due to the negligent, reckless and deliberate indifference of the FBI and its supervisory officials. In fact, the direct actions of the FBI and its supervisory officials have concealed the bulk of this unlawful activity until very recently, and it is unclear what continues to remain unknown.

Specifically, FBI-Boston, and in particular the Organized Crime Squad within FBI - Boston, willfully ignored FBI rules, regulations, procedures and protocols with respect to the handling of informants and the supervision of agents handling informants. This lax and inappropriate oversight promoted inappropriate relationships to develop between agents and informants, which directly resulted in deprivation of Constitutional civil rights of private citizens, in Mr. Donahue's case the loss of life. If the FBI-Boston or FBI Headquarters had enforced the FBI policies or the existing Guidelines promulgated by the United States Attorney General, which together constitute a minimum standard, the improper relationship between Agent Connolly, Supervisory Agent Morris, and others, with organized crime figures posing as Top Echelon Informants would have been discovered, the improper relationships terminated, and the improper exchange of information from FBI personnel to Mr. Bulger would not have occurred, thereby sparing Michael Donahue his life.

Wolf Hearing:

In September, 1999, Judge Mark Wolf, United Stated District Court for the District Of Massachusetts, issued findings of fact after conducting hearings into the relationship between the FBI-Boston and informants that involved forty-six witnesses, eighty days of

testimony and 276 exhibits.  United States v Salemme, 91 F.Supp.2d 141, 175 (1999).
Judge Wolf specifically considered the relationship between Supervisory Agent Morris,
Agent Connolly and others within the FBI with informants, including Mr. Bulger and Mr.
Flemmi.  Also addressed within Judge Wolf's hearing were the murder of Michael
Donahue, and the role of the FBI in providing information to Mr. Bulger that directly
lead to that murder.  Judge Wolf's factual findings document a pattern of inappropriate
and negligent conduct within the FBI-Boston office, and FBI Headquarters, which
promoted, encouraged, and then allowed improper conduct on the part of Special Agents,
and which ultimately lead to the murder of Michael Donahue.  Judge Wolf's findings
included the following:

A. Specific Findings of a Pattern and Practice of Improper Relationships
   Between FBI Agents and Informants, and Negligent Supervision By
   FBI:

1.  In 1969 FBI Special Agent H. Paul Rico told Mr. Flemmi, then an FBI informant
    and known organized crime figure, that he was to be indicted.  "In doing so, Rico
    aided and abetted the unlawful flight of a fugitive in violation of 18 U.S.C. secs.
    1073 and 1072."  Id. at 182.  The government did not dispute this finding.  Id.
2.  Special Agent Rico engaged in criminal misconduct, involving FBI informants,
    including suborning perjury.  Id. at 182.
3.  The Attorney General of the United States issued guidelines for FBI engagement
    of informants.  "The Attorney General directed that, '[u]nder no circumstances
    shall the FBI take any action to conceal a crime by one of its informants.'  [Cite
    omitted.]  As described in this Memorandum, this direction was regularly
    disregarded concerning Flemmi and Bulger."  Id. at 194.
4.  "The [Attorney General] Levi Memorandum also established the same procedure
    where the FBI had 'knowledge' that one of its informants had committed a
    'serious' crime 'unconnected with his FBI assignment.  [Cite omitted.]  As
    described in this Memorandum, these requirements too were regularly ignored
    with regard to Bulger and Flemmi."  Id. at 194.
5.  "The evidence in this case indicates that at least with regard to Organized Crime
    matters, the [Attorney General's] Guidelines were ignored from the outset.  There
    were no special seminars or major training concerning the Guidelines that was
    received by the witnesses in this case.  [Cite omitted.]  Morris apparently did not
    read the new informant Guidelines when they were issued.  [Cite omitted.]  The
    informant Guidelines were discussed occasionally in more general training
    sessions, but the Organized Crime squad supervisors in Boston did not get
    answers to any questions that they had."  [Cite omitted.]  Id. at 195.
6.  "In general, Morris and his successors as the supervisor of the Organized Crime
    squad, Ring, viewed the Attorney General's Guidelines as inconsistent with the
    Top Echelon informant program and utterly unrealistic.  [Cite omitted.]  Thus,
    they felt the Guidelines did not apply to Organized Crime matters.  In their view,
    Top Echelon informants were, by definition, members of Organized Crime, who
    had been involved in serious criminal matters.  [Cite omitted.]  Thus, Morris and
    Ring ignored provisions of the Attorney General's Guidelines that required

authorization of criminal activity and reporting of unauthorized crimes committed by informants." Id. at 195.

7. "With regard to Flemmi and Bulger, at least, the requirements of the Guidelines were either ignored or treated as a bureaucratic nuisance." Id. at 196.

8. "The evidence also indicates that FBI Headquarters did not effectively supervise the implementation of the Guidelines." Id. at 196.

9. When the FBI Headquarters did audit the Boston Office it routine overlooked obvious deficiencies in the files concerning Bulger and Flemmi. "Moreover, while FBI Headquarters periodically audited the Boston office's informant files, no deficiencies with regard to the handling of Bulger or Flemmi were noted, despite the fact that those files were replete with information indicating that Bulger and Flemmi were involved in serious criminal activity that had not been authorized in writing, investigated by the FBI, reported to other law enforcement agencies, or reported to the Assistant Attorney General for the Criminal Division as required by the Guidelines." Id. at 196.

10. "Thus, at least with regard to Bulger and Flemmi, the FBI as an institution essentially disregarded the carefully calibrated standards and procedures that were developed by Attorney General Levi and his successors for continuing to use informants after the FBI had decided to emply them." Id. at 196

11. "As a result, it is not disputed that the Guidelines were not obeyed at least with regard to Flemmi and Bulger." Id. at 197.

12. United States Attorney Donald Stern acknowledged that FBI Guidelines were not followed in critical areas: "The FBI and attorney general informant guidelines, together with FBI administrative controls, are intended to provide the necessary checks and balances and to ensure that often difficult decisions are made at appropriate levels, based on complete and accurate information. While admittedly no system is foolproof, clearly those objectives were not met here, at least in certain critical respects." Id. at 197.

13. Agent Connolly developed a social relationship and urged Supervisory Special Agent Morris "not to treat Flemmi and Bulger like informants". Id. at 198.

14. Social dinners were arranged with Mr. Bulger and Mr. Flemmi, which included Special Agent Connolly, Special Agent Nick Gianturco, Special Agent Michael Buckley, Supervisory Special Agent Morris and Supervisory Special Agent Ring. Id. at 198-199.

15. "At some of these meetings gifts were exchanged… There is no record of the gifts [within the official FBI files]." Id. at 202.

16. Special Agent Connolly and Supervisory Special Agent Morris routinely ignored FBI policies and procedures regarding reporting on contacts with informants, and thereby hid the true nature of their relationship with Mr. Bulger and Mr. Flemmi. In so doing, they concealed, and assisted, in ongoing criminal activity in which Mr. Bulger and Mr. Flemmi were involved. Id. at 188-198.

B.   Murder of Michael Donahue

17. On March 27, 1981 Roger Wheeler was murdered in Tulsa, Oklahoma. Mr. Flemmi and Mr. Bulger became prime suspects. Id. at 208.

5

18. Brian Halloran offered information to the FBI, which would implicate Mr. Bulger and Mr. Flemmi in the murder. Supervisory Special Agent Morris became aware of Mr. Halloran's offer of incriminating evidence and (a) sought to discredit Mr. Halloran's reliability as a witness to the investigating FBI agents; and (b) immediately reported to Special Agent Connolly, who was not involved in any way with Mr. Halloran's involvement with the FBI, the fact the Mr. Halloran was offer incriminating evidence against Mr. Bulger and others. Id. at 209.

19. If Supervisory Special Agent Morris had not intervened in this fashion, FBI protocols would have required that Mr. Bulger, who would then be under investigation for murder, be closed as an informant. If that had happened there would be no reason for Special Agent Connolly to be communicating with Mr. Bulger and transmitting to him the information regarding Mr. Halloran's involvement with the FBI. Id. at 209.

20. The continuation of Mr. Bulger and Mr. Flemmi as FBI informants was important to the careers of Special Agent Connolly and Supervisory Special Agent Morris; the exchange of gifts between the parties also would have stopped. Id. at 209.

21. "Morris expected that Connolly would tell Bulger and Flemmi about Halloran's charges." Id. at 209.

22. "Morris knew that doing so would endanger Halloran." Id. at 209.

23. "Connolly told Bulger and Flemmi about Halloran's cooperation and claims." Id. at 209.

24. "On May 11, 1982 Halloran was murdered as he emerged from a restaurant in South Boston…Morris believed that Bulger and Flemmi were responsible. The next time that Morris asked Connolly to tip Flemmi off to an investigation, he added that he 'did not want another Halloran'—meaning another murder." Id. at 209-210.

25. "Morris did not, however, hesitate to capitalize on the extraordinary disclosure of highly confidential information he had caused Connolly to make to Bulger and Flemmi." Within weeks of the murder of Mr. Halloran, Supervisory Special Agent solicited, through Special Agent Connolly, a bribe of $1,000.00 from Mr. Bulger, to allow Supervisory Special Agent Morris to take his girlfriend/secretary away to a FBI training program in Georgia. Id. at 210.

26. "Morris knew that the fact that Bulger and Flemmi had been told by Connolly of Halloran's effort to cooperate with the FBI would be relevant to any investigation of Halloran's murder, but he never provided this information to anyone in the FBI. [Cite omitted.] Nor did he tell the Suffolk County District Attorney's Office, which conducted an investigation and obtained an indictment, but not a conviction, of Jimmy Flynn for the Halloran murder." Id. at 210.

Michael Donahue was in Boston on May 11, 1982, to purchase bait for a planned fishing trip to celebrate his son's First Communion. He stopped at the South Boston Restaurant before driving home. At the restaurant he ran into Mr. Halloran, who was a neighbor from his neighborhood. Mr. Donahue offered Mr. Halloran a ride home. When they got into Mr. Donahue's car they were met with a barrage of gunfire, intended to silence Mr. Halloran. Mr. Donahue was struck several times, including fatal shots to the head and chest. He was pronounced dead at Massachusetts General Hospital.

On information and belief, the FBI and United States Attorney's Office have received reliable information confirming that Mr. Bulger was responsible for the murder of Michael Donahue.

At the time of his death Michael Donahue was 32 years old. He was a husband and father of three small children. Mr. Donahue was the son of a Boston Police Officer. He was employed as a truck driver and was a member of the Teamster's union. His family was devastated.

The murder of Mr. Donahue was a direct result of Supervisory Special Agent Morris informing Special Agent Connolly of Mr. Halloran's efforts to cooperate with the FBI, knowing fully that Special Agent Connolly would immediately inform Mr. Bulger, who would seek to harm Mr. Halloran. There can be no doubt that this result was foreseeable.

Former Governor William Weld testified at the Wolf hearings:

> [J]ust a few days before Mr. Halloran [and Mr. Donahue were] killed, I was having a conversation with Mr. Fitzpatrick, who was the Assistant Special Agent in Charge of the FBI. And [Mr. Fitzpatrick] said to me: 'You know they always say there's a danger for this; they may get killed for cooperating. I'm telling you, this guy [Halloran], I would not want to be standing next to this guy [Halloran].' And then a few days later, [Halloran] was killed."

United States v. Salemme, 94-CR-10287, Testimony of William Weld, May 27, 1998.

Indictment of Special Agent John Connolly:

The Unites States of America has asserted the essential elements of this claim in a criminal indictment filed against former Special Agent John Connolly. See, United States of America v. John J. Connolly Jr. and Stephen Flemmi, Doc. No. 99-CR-10428-JLT (D. Mass. 2000). In the indictment the government has asserted the following:

a. "On May 27, 1981, Roger Wheeler was shot to death in the parking lot of the Southern Hills Country Club in Tulsa, Oklahoma." Indictment paragraph 44.

b. "In or about January 1982, Brian Halloran approached the FBI in Boston, Massachusetts and offered to cooperate in the investigation of the Roger Wheeler homicide." Indictment paragraph 46.

c. "As a Supervisory Special Agent in the FBI's Boston Office, John Morris learned of the information that Brian Halloran had provided to [the FBI agents investigating the Wheeler murder, implicating Bulger and Flemmi]." Indictment paragraph 47-48.

d. "John Morris told Connolly that Halloran had implicated Bulger and Flemmi in the Roger Wheeler homicide." Indictment paragraph 49.

e. "In or about April 1982, Connolly…provided confidential law enforcement information to Bulger and Flemmi which alerted them to the fact that Brian Halloran had provided information about the murder of Roger Wheeler in Tulsa,

Oklahoma on May 27, 1981, in order to prevent Halloran's further cooperation and testimony, in violation of Title 18, United States Code, Section 1503." Indictment paragraph 50.

f. "Bulger and others then caused Brian Halloran [and Michael Donahue] to be murdered in Boston, Massachusetts on May 11, 1982." Indictment paragraph 51.

Attached hereto are the following additional materials which are incorporated herein:
Patricia Donahue et al v. Federal Bureau of Investigation et al, [Bivens/RICO allegations]
United States v. Salemme, 91 F.Supp.2d 141 (D. Mass. 1999) (Wolf, J.)
United States v. Kevin P. O'Neil, Crim. No. 99-10371- RGS
United States v. John J. Connolly, Jr., Crim. No. 99-10428 – JTL

The Claimants submit that the actions and inactions of former FBI Special Agents John Connolly, John Morris, Lawrence Sarhatt, and Robert Fitzpatrick, and personnel at FBI Headquarters as described herein resulted in the murder of Michael J. Donahue, and were accomplished by these former FBI agents within the scope of their office and/or employment as Federal law enforcement officers, under circumstances where the United States, if a private person, would be liable to the Claimant in accordance with the laws of the Commonwealth of Massachusetts.

## RESPONSE NO. 10

Nature and Extent of Each Injury or Cause of Death, which Forms the Basis of the Claim. If other than Claimant, state name of injured person or decedent.

|  |  |
|---|---|
| Decedent: | Michael J. Donahue<br>DOB:  May 28, 1949<br>SSN:  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 |
| Immediate Cause of Death: | Multiple gunshot wounds with<br>perforation of brain |
| Relationship of decedent to claimant: | Patricia A. Donahue – husband;<br>Michael T. Donahue – father;<br>Thomas Donahue – father;<br>Shawn Donahue – father. |

Please also see Response No. 8, which is expressly incorporated herein.

## RESPONSE NO. 11

Witnesses (Upon information and belief):

| Name | Address |
|---|---|
| James J. Bulger | Unknown |

| | |
|---|---|
| Steven Flemmi | Incarcerated |
| Patrick Nee | Unknown |
| Kevin Weeks | Incarcerated |
| Brian Halloran | Deceased |
| John Connolly | 400 Main St., Lynnfield, MA 01940 |
| John Morris | Florida |

Personnel at FBI-Boston from 1969 – 1990.
Personnel at FBI Headquarters from 1969 – 1990.
Personnel from the Boston Police Department.
Personnel from the Suffolk County District Attorney's Office.
Personnel from the Massachusetts State Police.
All persons identified in the criminal indictments incorporated herein.


## SUPPLEMENTAL RESPONSES

A)  The survivors of the decedent Michael J. Donahue, each of whom depended on said decedent for full support at the time of his death, are as follows:

Patricia A. Donahue
604 Irving Road
Randolph, MA  02368
Relationship to decedent:   Wife
DOB:  03/16/45

Michael T. Donahue
15 Heckla Street
Boston, MA  02122
Relationship to decedent:   Son
DOB:  01/17/69

Shawn Donahue
14 Marion Street
Holbrook, MA  02343
Relationship to decedent:   Son
DOB:  09/11/70

Thomas Donahue
604 Irving Road
Randolph, MA  02368
Relationship to decedent:   Son
DOB:  03/15/74

B)      Attached are the following additional materials (originals have been submitted
        to the FBI-Boston Field Office, Special Agent in Charge Charles Prouty):

1. Marriage Certificate, Patricia Donahue and Michael Donahue;
2. Certified death certificate of Michael J. Donahue;
3. Appointment of Administratrix, Patricia Donahue;
4. Birth Certificates, Michael T. Donahue, Shawn P. Donahue and
   Thomas B. Donahue;
5. Patricia Donahue et al v. Federal Bureau of Investigation et al,;
5. United States v. Salemme, 91 F.Supp.2d 141 (D. Mass. 1999)
   (Wolf, J.);
6. Uited States v. Kevin P. O'Neil, Crim. No. 99-10371- RGS;
7. United States v. John J. Connolly, Jr., Crim. No. 99-10428 –

F:\Public\Shauna\Ctm\Donahue 5064\Pleadings\Addendum To STANDARD FORM 95.Doc

# REGISTRY DIVISION, CITY OF BOSTON

COUNTY OF SUFFOLK, COMMONWEALTH OF MASSACHUSETTS, UNITED STATES OF AMERICA

### CERTIFIED COPY OF RECORD OF **MARRIAGE** IN OFFICE OF THE CITY REGISTRAR

Certificate

Nº 020435

J

*I, the undersigned, hereby certify that I hold the office of* ...........................................*City Registrar of the City of Boston, and have custody of the Records of Births, Marriages and Deaths required by law to be kept in said City; and I certify that the following facts appear on said Records:*

**No.** 1199   **Date of Marriage** ............APRIL 20 1968............   **Place of Marriage** BOSTON MA

| NAME AND SURNAME OF GROOM AND BRIDE | RESIDENCE OF EACH AT TIME OF MARRIAGE | AGE | COLOR | NUMBER OF MARRIAGE (WID. OR DIV.) | OCCUPATION |
|---|---|---|---|---|---|
| MICHAEL J DONAHUE | BOSTON MA | 18 | WHITE | FIRST | TRUCK DRIVER |
| PATRICIA A YATES | BOSTON MA | 23 | WHITE | FIRST | INSPECTOR |

| PLACE OF BIRTH OF EACH | NAMES OF PARENTS (MAIDEN NAME OF MOTHER) | |
|---|---|---|
| BOSTON MA | THOMAS M DONAHUE — | CECELIA T FOLEY |
| BOSTON MA | CHARLES YATES — | MARY KITTERICK |

| NAME, RESIDENCE AND OFFICIAL POSITION OF THE PERSON WHO SOLEMNIZED THE MARRIAGE | DATE OF RECORD |
|---|---|
| FRANCIS F MCELROY                    PRIEST | APRIL 25 1968 |
| BOSTON MA | |

I further certify that by annexation, the Records of the following-named cities and towns are in the custody of the City Registrar of Boston:—

| | ANNEXED | | ANNEXED |
|---|---|---|---|
| East Boston | 1637 | Charlestown | 1874 |
| South Boston | 1804 | Brighton | |
| Roxbury | 1868 | West Roxbury | |
| Dorchester | 1870 | Hyde Park | 1912 |

Date of Amendment _____

WITNESS my hand and the SEAL of the CITY REGISTRAR

on this .............. Day of.....**JAN 1 1 2001**....... A.D. .......

................................ *Elizabeth C. McCarthy* ............City Registrar

By Chapter 314 of Acts of 1892, "the certificates or attestations of either Assistant City Registrar shall have the same force and effect as that of the City Registrar."





# REGISTRY DIVISION OF THE CITY OF BOSTON

### COUNTY OF SUFFOLK, COMMONWEALTH OF MASSACHUSETTS, UNITED STATES OF AMERICA

Certificate **P**   N⁰   **50340**

*I, the undersigned, hereby certify that I hold the office of.....................................*
*City Registrar of the City of Boston and I certify the following facts appear on the*
*records of Births, Marriages and Deaths kept in said City as required by law.*

---

## The Commonwealth of Massachusetts

### STANDARD CERTIFICATE OF DEATH
### REGISTRY OF VITAL RECORDS AND STATISTICS

REGISTERED NUMBER: **03490**   STATE USE ONLY

| DECEDENT NAME FIRST | MIDDLE | LAST | SEX | DATE OF DEATH (Mo. Day. Yr.) |
|---|---|---|---|---|
| Michael | J. | Donahue | Male | May 11,1982 |

| PLACE OF DEATH (CITY OR TOWN) | COUNTY OF DEATH | HOSPITAL OR OTHER INSTITUTION | IF IN HOSPITAL D.O.A. (Yes or No) |
|---|---|---|---|
| Boston | Suffolk | Mass. General Hospital | No |

| RACE | AGE Last Birthday (YR.) | UNDER 1 YEAR MOS / DAYS | UNDER 1 DAY HOURS / MINS | DATE OF BIRTH (Mo. Day. Yr.) | STATE OF BIRTH (If not in USA name country) |
|---|---|---|---|---|---|
| White | 32 | | | May 20,1949 | Massachusetts |

| MARRIED, NEVER MARRIED, WIDOWED OR DIVORCED | SPOUSE (If wife, give maiden name) | USUAL OCCUPATION | KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|
| Married | Patricia A.Yates | Truck Driver | Transportation |

| SOCIAL SECURITY NUMBER | IF U.S. WAR VETERAN SPECIFY WAR | RESIDENCE - STREET AND NUMBER CITY OR TOWN COUNTY STATE ZIP CODE |
|---|---|---|
| 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 | No | 7 Roseland St. Dorchester,Suffolk,Ma 02124 |

| FATHER FULL NAME | STATE OF BIRTH (If not in USA name country) | MOTHER NAME (GIVEN) MAIDEN | STATE OF BIRTH (If not in USA name country) |
|---|---|---|---|
| Thomas M.Donahue | Mass. | Cecilia Foley | Mass. |

| INFORMANT NAME AND ADDRESS | RELATIONSHIP |
|---|---|
| Mrs.Patricia M.Donahue,7 Roseland St.Dorchester,MA 02124 | Wife |

| TYPE OF DISPOSITION | DATE OF DISPOSITION | PLACE OF DISPOSITION | CITY OR TOWN STATE |
|---|---|---|---|
| Burial | May 15,1982 | Cedar Grove Cemetery, Dorchester, Ma |

| FUNERAL SERVICE LICENSEE | NAME OF FACILITY | ADDRESS OF FACILITY |
|---|---|---|
| Anna E.Mulry | J.C.Mulry Funeral Homes | 2 King St. Dorchester |

**IMMEDIATE CAUSE** *(ENTER ONLY ONE CAUSE PER LINE FOR (a), (b), AND (c)) (PRINT OR TYPE LEGIBLY)*

| PART I | | Interval between onset and death |
|---|---|---|
| (a) | Multiple gunshot wounds with perforation of brain | 2 1/2 hours |
| DUE TO OR AS A CONSEQUENCE OF (b) | | |
| DUE TO OR AS A CONSEQUENCE OF (c) | | |

| PART II OTHER SIGNIFICANT CONDITIONS - Conditions contributing to death but not related to cause given in Part I (a) | AUTOPSY (Yes or No) | WAS CASE REFERRED TO MED EXAM (Yes or No) |
|---|---|---|
| | Yes | YES |

| ACC. SUICIDE, HOM. UNDET. OR PENDING INVEST. (Specify) | DATE OF INJURY (Mo. Day. Yr.) | HOUR OF INJURY | DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|
| Homicide | May 11-82 | 6:00p | Multiple gunshot wounds |

| INJURY AT WORK (Specify Yes or No) | PLACE OF INJURY - At home, farm, street, factory, office building, etc. (Specify) | LOCATION STREET | CITY OR TOWN STATE |
|---|---|---|---|
| No | In an automobile | Northern Ave., Boston, Ma. |

| 25a. To the best of my knowledge death occurred at the time, date and place and due to the cause(s) stated (Signature and Title) | 26a. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) stated (Signature and Title) | MEDICAL EXAMINER |
|---|---|---|
| DATE SIGNED (Mo. Day. Yr.) | HOUR OF DEATH | DATE SIGNED (Mo. Day. Yr.) May 12-82 | HOUR OF DEATH UNKNOWN |
| NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | PRONOUNCED DEAD (Mo. Day. Yr.) 5/11/82 | PRONOUNCED AT 8:55 P.M. |

| NAME AND ADDRESS OF CERTIFYING PHYSICIAN OR MEDICAL EXAMINER (Type or Print) |
|---|
| George G. Katsas, M.D., Medical Examiner 784 Massachusetts Avneue, Boston, MA 02118 |

| DATE BURIAL PERMIT ISSUED 5-14-82 | RECEIVED BY CITY OR TOWN OF BOSTON | MAY 18 1982 (DATE RECEIVED) |
|---|---|---|
| STATE SO HEALTH ACT N019253 | | |

---

*I further certify that by annexation,*
*the Records of the following-named cities*
*and towns are in the custody of the City*
*Registrar of Boston:—*

|  | ANNEXED |
|---|---|
| East Boston | 1637 |

WITNESS my hand and the SEAL of the CITY REGISTRAR

on this ...... 25 ...... Day of ...... MAY ...... A. D. 19 82





[AC 149A]

# Commonwealth of Massachusetts

**Suffolk, ss.**                                    **Probate Court.**

I, **Richard Iannella,** *Register of Probate for said County of Suffolk, hereby certify, that a Probate Court held at Boston in and for said County, on the* _____15th_____ *day of* __February__ *in the year of our Lord* __Two thousand and one__

Patricia A. Donahue

*of* __Randolph__ *in the* __County__ *of* __Norfolk__

*was duly appointed - administrat* rix

*of the estate of* __Michael J. Donahue__

- *late of* __Boston__ *in the County of* __Suffolk__ *-deceased-* __in__ *testate and gave bond as required by law, for the due performance of said trust:*

*and that - no appearance was entered against said appointment prior to the entry of the decree* ~~an appearance had been entered and withdrawn prior to the entry of said decree.~~

*I further certify, that it appears by the records and files of said Court, that said appointment remains in full force.* _____

*In witness whereof, I have hereunto set my hand and affixed the seal of said Court, this* __21st__ *day of* __February__ *in the year of our Lord two thousand.* __-One__

*Richard Iannella* **Register.**

Reg. 7

# REGISTRY DIVISION, CITY OF BOSTON

COUNTY OF SUFFOLK, COMMONWEALTH OF MASSACHUSETTS, UNITED STATES OF AMERICA

Certificate N°. 044158



## CERTIFIED COPY OF RECORD OF **BIRTH** IN OFFICE OF THE CITY REGISTRAR

II

No. *745*

**Date of Birth.** *January 17, 1969* **Name of Child** *Michael Thomas Donahue*

I, the undersigned, hereby certify that I hold the office of ................................................ City Register of the City of Boston, and have the custody of the Records of Births, Marriages and Deaths required by law to be kept in said City; and I certify that the following facts appear on said Records:

| NAME, SURNAME AND BIRTHPLACE OF FATHER | NAME, MAIDEN NAME AND BIRTHPLACE OF MOTHER |
|---|---|
| *Michael J. Donahue* | *Catherine A. Yates* |
| *Boston, Mass* | *Boston, Mass* |

| SEX | PLACE OF BIRTH | RESIDENCE OF PARENTS | NAME AND ADDRESS OF INFORMANT |
|---|---|---|---|
| *Male* | *Boston, Mass* | *Boston, Mass* | *S. Self.* |

| OCCUPATION OF PARENT | DATE OF RECORD | | |
|---|---|---|---|
| *Boston, Mass* | *January 24, 1969* | | *M. D.* |

WITNESS my hand and the SEAL of the CITY REGISTRAR

on this ...................... day of **FEB 01 2001** A. D. ......

*Judith A. McCarthy* ..............................City Registrar

I further certify that by annexation, the Records of the following-named cities and towns are in the custody of the City Register of Boston:—

| ANNEXED | | ANNEXED | |
|---|---|---|---|
| East Boston............... | 1637 | Charlestown ........... | |
| South Boston............ | 1804 | Brighton ..........} | 1874 |
| Roxbury.................... | 1868 | West Roxbury ....... | |
| Dorchester............... | 1870 | Hyde Park............. | 1912 |

Date of amendment: _____

By Chapter 314 of the Acts of 1892, "the certificate or attestations of either Assistant City Registrar shall have the same force and effect as that of the City Registrar."

31

Reg. 7

# REGISTRY DIVISION, CITY OF BOSTON

COUNTY OF SUFFOLK, COMMONWEALTH OF MASSACHUSETTS, UNITED STATES OF AMERICA

Certificate N⁰ 044159

CERTIFIED COPY OF RECORD OF **BIRTH** IN OFFICE OF THE CITY REGISTRAR

11

I, the undersigned, hereby certify that I hold the office of _____ City Register of the City of Boston, and have the custody of the Records of Births, Marriages and Deaths required by law to be kept in said City; and I certify that the following facts appear on said Records:

**No.** 2792   **Date of Birth** March 15, 1974.   **Name of Child** Thomas Bradford Donahue

| NAME, MAIDEN NAME AND BIRTHPLACE OF MOTHER |
|---|
| Patricia A. Poter |
| Boston, Mass. |

| NAME, SURNAME AND BIRTHPLACE OF FATHER | RESIDENCE OF PARENTS | NAME AND ADDRESS OF INFORMANT | DATE OF RECORD |
|---|---|---|---|
| Michael J. Donahue | Boston | H. Papageorge | April 1, 1974 |
| Boston, Mass. | Mass. | M.D. | |

| SEX | PLACE OF BIRTH | OCCUPATION OF PARENT |
|---|---|---|
| Male M | Boston | Boston Fireman |
|  | Mass. | Mass. |

WITNESS my hand and the SEAL of the CITY REGISTRAR

on this _____ day of **FEB 01 2001** A.D.

_Grace C. McCarthyCity Registrar_

I further certify that by annexation, the Records of the following-named cities and towns are in the custody of the City Registrar of Boston:—

| ANNEXED | | ANNEXED | |
|---|---|---|---|
| East Boston | 1637 | Charlestown | 1874 |
| South Boston | 1804 | Brighton | |
| Roxbury | 1868 | West Roxbury | |
| Dorchester | 1870 | Hyde Park | 1912 |

Date of amendment: _____

By Chapter 314 of the Acts of 1892, "the certificates or attestations of either Assistant City Registrar shall have the same force and effect as that of the City Registrar."

31

Bar. 7

# REGISTRY DIVISION, CITY OF BOSTON

COUNTY OF SUFFOLK, COMMONWEALTH OF MASSACHUSETTS, UNITED STATES OF AMERICA

Certificate No. 044160



CERTIFIED COPY OF RECORD OF **BIRTH** IN OFFICE OF THE CITY REGISTRAR

II

No. 44101      **Date of Birth** September 11, 1970      **Name of Child** Shawn Patrick Donahue

I, the undersigned, hereby certify that I hold the office of .......................... City Registrar of the City of Boston, and have the custody of the

Records of Births, Marriages and Deaths required by law to be kept in said City; and I certify that the following facts appear on said Records:

| | NAME, SURNAME AND BIRTHPLACE OF FATHER | RESIDENCE OF PARENTS | NAME, MAIDEN NAME AND BIRTHPLACE OF MOTHER |
|---|---|---|---|
| | Michael J. Donahue | Boston / Mass. | Patricia A. Yates |
| | Boston / Mass. | | Boston / Mass. |

| Sex | PLACE OF BIRTH | | OCCUPATION OF PARENT | | NAME AND ADDRESS OF INFORMANT |
|---|---|---|---|---|---|
| male | Boston | | Boston / Mass. | | Truck Driver |
| | | | | | M. Trudeau |
| | | | | | M.D. |

DATE OF RECORD October 1, 1970

I further certify that by annexation, the Records of the following-named cities and towns are in the custody of the City Registrar of Boston:—

| ANNEXED | | ANNEXED | |
|---|---|---|---|
| East Boston | 1637 | Charlestown | |
| South Boston | 1804 | Brighton | } 1874 |
| Roxbury | 1868 | West Roxbury | |
| Dorchester | 1870 | Hyde Park | 1912 |

Date of amendment: _____

WITNESS my hand and the SEAL of the CITY REGISTRAR

on this ................ day of **FEB. 0 1 2001** ........ A. D.

Gerald P. McCarthy,

............................................... City Registrar

By Chapter 314 of the Acts of 1892, "the certificates or attestations of either **Assistant** City Registrar shall have the same force and effect as that of the City Registrar."

31