UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

| | |
|---|---|
| EST. OF JOHN McINTYRE, et al.,<br>Plaintiffs, | ) DOCKET NO.<br>) 01-CV-10408-RCL  JUL -2 P 12: 26<br>)<br>) (Consolidated Cases) U.S. DISTRICT COURT<br>) DISTRICT OF MASS.<br>) |
| v. | ) |
| UNITED STATES OF AMERICA, et al.<br>Defendants. | )<br>)<br>) |

**DEFENDANT LAWRENCE SARHATT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

MORRISON, MAHONEY & MILLER, LLP
Tory A. Weigand, BBO #548553
250 Summer Street
Boston, MA  02210-1181
(617) 439-7500

Counsel for Consolidated Individual Defendant Lawrence Sarhatt
(Defendant in Litif, Davis and Donahue actions)

899808v1

NOW COMES, defendant, Lawrence Sarhatt, an individual defendant in the <u>Donahue</u>, <u>Davis</u> and <u>Litif</u> matters of this consolidated action and hereby moves for the dismissal of the respective complaints against him based on qualified immunity. As grounds for this motion, defendant refers and incorporates by reference the consolidated memorandum of law submitted on behalf of all of the individual defendants pursuant to this Court's order.[1] Defendant further states as follows:

1.      Sarhatt has been named as an individual defendant in three of the above-captioned consolidated actions (<u>Davis</u>, <u>Litif</u>, and <u>Donahue</u>). The only claims asserted against defendant Sarhatt in the three actions are <u>Bivens</u> claims alleging deprivation of constitutional rights and conspiracy to deprive constitutional rights. <u>See Donahue</u> Second Amended Compl. Count VI, ¶¶ 316-333; <u>Litif</u> Complaint, Count V ¶¶ 161-176; and <u>Davis</u> First Amended Complaint, Count VII, VIII, IX, X, and XI.[2]

2.      The pertinent allegations made as to defendant Sarhatt are as follows:

**A.      <u>Donahue Complaint</u>**

- That Sarhatt was the Special Agent in Charge of the FBI's Boston Field Office between June 18, 1980 and August 20, 1982. <u>Donahue</u> Second Am. Compl. ¶18; Answer of Defendant Sarhatt ¶18.[3]

- That Michael Donahue and Brian Halloran were shot and killed on May 11, 1982, because Morris and Connolly's unlawful  and inappropriate

---

[1] As set forth in the consolidated memorandum of law, and as the plaintiffs' Complaints fail under the first two of the applicable three part test for qualified immunity, the individual defendants, including Sarhatt, have not addressed the so-called third prong of the test. Sarhatt specifically reserves his right to address this prong pursuant to the Rules of Court, any order of the Court, or in any subsequent dispositive motion or trial.

[2] The <u>Davis</u> plaintiff has also alleged a claim against Sarhatt under 42 U.S.C. 1983 (Count XII). This claim fails as a matter of law as federal officials acting under color of federal law cannot be liable under Section 1983. <u>See</u> <u>Soldevila v. Secretary of Agriculture</u>, 512 F. 2d 427, 429 (1st Cir. 1975); <u>American Science & Engineering v. Califano</u>, 571 F. 2d 58, 64 n. 8 (1st Cir. 1978).

[3]    Although the plaintiffs in <u>Donahue</u> and <u>Litif</u> allege that defendant Sarhatt was the Special Agent in Charge of the Boston FBI office beginning in 1979, it is undisputed that Sarhatt's only association with the Boston office was between June 18, 1980 and August 20, 1982 when he served as the Special Agent in Charge. <u>See</u> Sarhatt's Answer to Donahue's Second Amended Complaint ¶. Sarhatt had no involvement with the Boston Office until such time and thus had no association either prior to June, 1980 or after August, 1982. There is no allegation in any of the Complaints to the contrary.

899808v1

disclosure of confidential information to Bulger and others; <u>Donahue</u> Second Am. Compl. ¶ 18.

- That Sarhatt as a supervisory official of the FBI "demonstrated a knowing and/or recklessly indifference to the extended pattern of unlawful and inappropriate conduct" of agents John Connolly and John Morris which, "in so doing reckless disregarded ... the constitutional rights of private citizens." <u>Donahue</u> Second Am. Compl. ¶ 25.

- That Sarhatt "allow[ed] and encourage[d] the unlawful and inappropriate actions of Connolly, Morris and others; encourage[d], promote[d] and maintain[ed] the unlawful and inappropriate relationship between Connolly, Morris, Bulger and Flemmi; intentionally and knowingly and/or recklessly fail[ed] to train, monitor, supervise, control and sanction Connolly, Morris and others and fail[ed] to establish adequate policies and procedures pertaining to the informant/handler relationship ..." as well as "knowing[ly] and/or [with] reckless disregard of the affirmative actions of Connolly, Morris and others, in providing information to Bulger and Flemmi which directly led to the murders of Michael J. Donahue and Edward Brian Halloran;

- That the Donahue and Halloran murders resulted from "a larger pattern of unlawful and inappropriate conduct accomplished at and by FBI-Boston over the span of more than three decades ..." <u>Donahue</u> Second Am. Compl. ¶ 43;

- That Sarhatt and defendant Robert Fitzpatrick as the SAC and ASAC of the Boston FBI office continued Bulger and Flemmi as informants although they were involved in serious and violent crime; Connolly and Morris were providing confidential information to Bulger and Flemmi; and Connolly and Morris were giving and receiving bribes; <u>Donahue</u> Second Am. Compl. ¶ 64;

- That Sarhatt "knowing of the unlawful and inappropriate conduct of Connolly, Morris, Bulger and Flemmi undertook efforts to conceal their crimes"; <u>Donahue</u> Second Am. Compl. at § 65;

- That after speaking with Connolly, Morris, Assistant United States Attorney Jeremiah O'Sullivan and Bulger, Sarhatt in December 1980 decided to continue Bulger and Flemmi as informants, rather than target them for investigation; <u>Donahue</u> Second Am. Compl. at ¶ 74; and

- That Sarhatt knew of Halloran's cooperation [with the FBI] and failed to provide "this information to the Suffolk County District Attorney's Office or other law enforcement agencies investigating the Halloran, Donahue and Wheeler murders. <u>Donahue</u> Second Am. Compl. at ¶ 85.

899808v1

Based on these allegations, it is asserted that Sarhatt violated the plaintiffs constitutional rights under the due process clause of the Fifth Amendment; the Fourth Amendment's protection against unreasonable searches and seizures; and the First Amendment right "to peaceably assemble" and "freedom of intimate association." <u>Donahue</u> Second Am. Compl. ¶ 323.   It is alleged that these deprivations include "the events leading up to, surrounding and including Michael J. Donahue's murder." <u>Id</u>. at 324.   Finally, it is alleged that Sarhatt, Fitzpatrick, Morris and Connolly conspired "to deprive the plaintiffs and each of them of the constitutional rights." <u>Id</u>. at 333.

**B.      Litif Complaint**

- That on January 1, 1980, Litif informed a Boston Police officer that he had information regarding Bulger and Flemmi's criminal activities and that law enforcement officers then informed Connolly of plaintiff's cooperation.   <u>Litif</u> Compl. ¶ 32-33;

- That Connolly told Bulger and Flemmi about Litif's cooperation and claims;

- That the FBI and its supervising officials knew or should have known of the danger to Mr. Litif.   <u>Litif</u> Compl. at 38.

- That the decedent Louis R. Litif was murdered on April 12, 1980 by Bulger; <u>Litif</u> Compl. at ¶ 39;

- That Connolly and Morris provided information to Bulger and Flemmi which directly led to the murder of Louis R. Litif; <u>Litif</u> Compl. at ¶ 30;

- That Sarhatt was the Special Agent in Charge of the Boston Field office;[4] <u>Litif</u> Compl. at ¶ 24;

- That Sarhatt was the supervisor of Morris and demonstrated knowledge and/or indifference to the extended pattern of unlawful and inappropriate conduct perpetrated by Connolly, Morris and others, and in doing so, recklessly disregarded, and in fact violated the constitutional civil rights of private citizens, including the plaintiffs and which actions or inactions included "allowing and aiding the ongoing criminal activity of Bulger and Flemmi; allowing and encouraging the unlawful and inappropriate actions of Connolly, Morris and

---

[4]  Again, although plaintiffs allege Sarhatt was the SAC of Boston beginning in 1979, it is undisputed that he was the SAC beginning on June 18, 1980 through August 20, 1982, when he retired.  Sarhatt Answer To Litif Compl. ¶ 16, 24, 26.

4

others, encouraging, promoting and maintaining the unlawful and inappropriate relationship between Connolly, Morris, Bulger and Flemmi; failing to train, monitor, supervise or control and sanction Connolly, Morris and others; and failing to establish adequate procedures pertaining to the informant handler relationship. Litif Compl. ¶ 31, 51.

- That Sarhatt (and other supervisory officials) "conceal[ed] the unlawful and inappropriate activities of Connolly, Morris, Bulger and Flemmi; Litif Compl. ¶ 64;

- That Sarhatt continued Bulger and Flemmi as informants "despite strong evidence to the supervisory officials that Bulger and Flemmi were involved in serious and violent crime; that Connolly and Morris were providing confidential law enforcement information to Bulger and Flemmi and that Flemmi and Bulger were giving and receiving bribes." Litif Compl. ¶ 65;

- That Sarhatt (and others) "undertook efforts to conceal the involvement and complicity of FBI personnel in these crimes."

As with Donahue and based on these allegations, it is alleged that Sarhatt violated and conspired to violate the Litif plaintiffs' First, Fourth and Fifth Amendment rights (i.e., due process, search and seizure and right to peaceably assemble and intimate association). Litif Compl. ¶ 161-176 (**Exh. B**).

### C.   **Davis Complaint**

- Sarhatt was the FBI special agent in charge ("SAC") of the Boston office from 1980 until 1982. Davis First Am. Compl. ¶ 13 ;

- In 1972, the decedent Debra Davis became acquainted with Bulger and Flemmi subsequently becoming intimate with Flemmi and residing with him for a period of time in Brookline and Randolph. Davis First Am. Compl. ¶ 34 ;

- Sometime in 1981, Debra Davis wanted to conclude her relationship with Flemmi, told him so, and shortly thereafter disappeared. Davis First Am. Compl. ¶s 37-38;

- Flemmi and Bulger jointly murdered Debra Davis in 1981 fraudulently concealing their conduct from 1981 until October, 2000. Davis First Am. Compl. ¶ 39 & 40

- Sarhatt (together with Rico, Morris, Connelly and Fitzpatrick) and other members of the FBI) "conspired to shield from prosecution" Flemmi, Bulger and others in exchange for information that the FBI could use to prosecute Bulger and Flemmi's competitors in crime. Davis First Am. Compl.;¶ 43

899808v1

- Sarhatt as well as Morris, Connolly and Fitzpatrick "disregarded carefully calibrated procedures that were developed by Attorney General Levi......" Davis First Am. Compl. ¶ 129, see also ¶ 112 – 128;

- Sarhatt delegated responsibility for opening and closing informants to agent who was the informant/handler; knew Bulger was an informant and that "although Flemmi may have been technically closed as an informant, he was regularly providing information to the FBI." Davis First Am. Compl. ¶ 130 – 131;

- Sarhatt knew Connolly was handler for Bulger and Flemmi and "generally relied upon Connolly to deal with Bulger and Flemmi, and with any matters relating to them." Davis First Am. Compl. ¶ 132 ;

- Sarhatt violated his duty under the Attorney General Guidelines regarding informants by failing to "authorize extraordinary criminal activity involving a serious risk of violence and review all such criminal activity at least every 90 days" by delegating his responsibility to Connolly and Morris. Davis First Am. Compl. ¶ 134;

- On November 25, 1980, Sarhatt met with Bulger as part of efforts to determine whether the FBI had compromised the Massachusetts State Police Lancaster Street Garage investigation and whether Bulger and Flemmi should be continued as informants and in which meeting Bulger lied. Davis First Am. Compl. ¶ 170;

- That in 1981, the Randolph Police were notified that Debra Davis had disappeared and that during this time Sarhatt was the SAC of the Boston office and the FBI did not take any action to investigate Davis' disappearance. Davis First Am. Compl. ¶¶ 175 – 176 see also ¶ 206;

- Following Davis' disappearance, Davis' mother (and plaintiff) were contacted by FBI, informed that FBI was taking over investigation, and had several meetings with certain FBI agents regarding Davis and/or Flemmi but never investigated Davis' disappearance or deaths so as not to "disrupt their relationship with Bulger and Flemmi." Davis First Am. Compl. ¶¶ 210 - 228;

- Sarhatt (and Morris, Connolly and Fitzpatrick) continued to utilize Bulger and Flemmi as top echelon informants; failed to control the criminal activities of Bulger and Flemmi; failed to enforced the Attorney General Guidelines governing high echelon informants in violation of the regulations and policy of the United States; failed to inform the appropriate law enforcement or prosecution authorities of the criminal activities of Bulger and Flemmi; continued to allow Connolly to remain Bulger's and Flemmi's "handler" when it was known or should have been known that he should have been removed from that position; and failed to warn and protect Debra Davis from individuals known to be murderers." Davis First Am. Compl. ¶ 269, 275;

- Sarhatt "(a) knew or should have known that Bulger and Flemmi had engaged in a history of violent criminal activity...(b) knew or should have known that

6

Connolly was the FBI "handler" for Bulger and Flemmi and that others within the FBI receiving reliable information about criminal activity in which Bulger and Flemmi were engaged, would consult Connolly and then not pursue an investigation of Bulger and Flemmi; and (c) knew or should have known that Connolly was giving information to Bulger and Flemmi and that Bulger and Flemmi were engaged in criminal activities while serving as FBI informants and knew and should have known they had a responsibility to inform appropriate law enforcement or prosecutive authorities of the criminal activities of Bulger and Flemmi. Davis First Am. Compl. 283;

- That Sarhatt encouraged, condoned, acquiesced and/or acted with gross negligence or deliberate indifference to Connolly's actions; Bulger and Flemmi's violent criminal activity; that informants willing to cooperate against Bulger and Flemmi were intimidated, tampered with or murdered; and to supervise Connolly to ensure compliance with the guidelines. Davis First Am. Compl. 290; and

- That Sarhatt and others conspired to prevent Plaintiff from learning the identities of those involved in Davis' death denying plaintiff's right to seek redress of grievances under First Amendment.

Based on these allegations, the Davis plaintiff has asserted claims under *Bivens* based on asserted violations of her First, Fourth and Fifth Amendment right.

3.      The defendant filed answers to each of the <u>Davis</u>, <u>Litif</u> and <u>Donahue</u> Complaints.

4.      As set forth in the accompanying consolidated memorandum of law, Sarhatt is entitled to judgment on the pleadings as to each of the *Bivens* claims as he is entitled to qualified immunity.  As a supervisor, Sarhatt's right to qualified immunity can only be defeated where (1) the subordinate's actions violate a clearly established constitutional right and (2) it was clearly established that a supervisor would be liable for constitutional violations <u>in that context</u>.  <u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 7 (1st Cir. 1998)(emphasis added).  Reduced to essentials, defendant Sarhatt is entitled to judgment on the pleadings based on qualified immunity in all three consolidated cases naming him as a defendant (<u>Davis</u>, <u>Litif</u>, and <u>Donahue</u>) as:

- Plaintiffs' Fifth Amendment due process claim whether based on the "state created danger" or "special relationship" theory was not clearly established between June 18, 1980 and August 20, 1982 when Sarhatt served as the SAC of the Boston-FBI office;

7

899808v1

- There is and was no clearly established constitutional right to be free from third party violence between June 18 1980 and August 20, 1982;

- The alleged violation of the Attorney General regulations regarding informants and/or the failure to investigate do not constitute constitutional violations as a matter of law;

- The Fifth Amendment due process right relied upon by plaintiffs was particularly ill-defined and thus not clearly established as to a supervisor in Sarhatt's position;

- Plaintiffs have failed to assert a cognizable claim against Sarhatt for any First Amendment violation as, *inter alia*, they have failed to allege they were denied a viable claim they can no longer pursue; as there is no allegation that Sarhatt concealed information for the purpose of frustrating access to the court; and there is no allegation that the concealment substantially reduced the likelihood of the plaintiffs' obtaining relief to which they claim they are entitled;

- The plaintiffs' Fourth Amendment claim as to unreasonable search and seizure fails as a matter of law as there is no allegation that any "seizure" occurred or that the seizure was effected by Sarhatt;

- The alleged acts or omissions of Sarhatt as the SAC in the Boston Office between June, 1980 and August, 1982 when he retired do not rise to the level of "conscience shocking" as a matter of law;

- The plaintiffs' *Bivens* conspiracy claim fails as there is no allegation that Sarhatt conspired to deprive the plaintiffs of their constitutional rights, and

- The Plaintiffs in the Davis, Litif, and Donahue actions have failed to allege sufficient facts establishing an "affirmative link" between "street level misconduct" and Sarhatt's alleged supervisory acts or omissions and the death of the decedents.

899808v1

8

WHEREFORE, defendant Lawrence Sarhatt, respectfully requests that his Motion for Judgment on the Pleadings as to the Claims in the Davis, Litif and Donahue matters be **ALLOWED**.

Respectfully Submitted,
The Defendant
LAWRENCE SARHATT,
By his attorneys,

MORRISON, MAHONEY & MILLER

Tory A. Weigand, BBO #548553
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on 6/30/03

Tory A. Weigand

899808v1

9