# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| The Estate of Edward Brian Halloran by Patricia Maccarelli, in her Capacity as Administratrix of the Estate of Edward Brian Halloran<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>United States of America, *et al.*<br><br>　　　　　　　　Defendants. | Civil Action No. 01-11346-RCL |
| Patricia Donahue, Individually and in her Capacity as Administratrix of the Estate of Michael J. Donahue, and Michael T. Donahue, Shawn Donahue, and Thomas Donahue<br><br>v.<br><br>United States of America, *et al.*<br><br>　　　　　　　　Defendants. | Civil Action No. 01-10433-RCL |

**THE UNITED STATES' PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

1.　On November 19, 2007, this Court entered an order of summary judgment on liability in favor of plaintiffs on their claims for wrongful death.

2.　The matter came on for trial to the Court on the issue of damages March 10-13, 2008.

3. Decedent Brian Halloran was born on July 23, 1940 and died on May 11, 1982. He was 41 years old on the date of his death. Pltf. Ex. 4.

4. Decedent Brian Halloran was survived by a wife, Patricia Macarelli, and two sons, Sean Halloran, born July 17, 1980, and Justin Halloran, born December 25, 1981. Tr. 3-76.

5. Decedent Michael J. Donahue was born on May 28, 1949 and died on May 11, 1982. He was 33 years old on the date of his death. Pltf. Ex. 2.

6. Decedent Michael J. Donahue was survived by a wife, Patricia Donahue, and three sons, Michael T. Donahue, born January 17, 1969, Shawn P. Donahue, born September 11, 1970, and Thomas B. Donahue, born March 15, 1974. Tr. 1-60 - 1-82.

7. Plaintiffs' claims against the United States are pursuant to the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 1346(b), 2671-2680.

8. The FTCA prohibits any recovery to plaintiffs for punitive damages or prejudgment interest. 28 U.S.C. § 2674; *Poyser v. United States*, 602 F. Supp. 436, 439-440 (D. Mass. 1984); *D'Ambra v. United States*, 481 F.2d 14 (1st Cir.1973).

9. Plaintiffs FTCA claim permits them recovery of certain damages pursuant to the Massachusetts wrongful death statute: reasonably expected net income to the statutory beneficiaries; 2) conscious pain and suffering of the decedent; and 3) loss of consortium suffered by the decedent's wife and children. ALM GL ch. 229, §§ 2, 6

12. Under the applicable Massachusetts law, the purpose of the compensatory award is to financially compensate the appropriate beneficiary or beneficiaries for the monetary value of contributions, services and support that they reasonably expected from the decedent. *Durdle v. Baron*, 104 N.E.2d 421, 423 (1952).

13. Massachusetts law prohibits compensation for the grief, anguish and bereavement of the survivors in response to the decedent's death. *McCuish v. Volkswagenwerk A.G.*, 494 N.E.2d 390, 398-400 (1986), *aff'd*, 508 N.E.2d 842 (1987); *Mitchell v. United States*, 141 F.3d 8, 20-21 (1st Cir. 1998).

14. The Halloran plaintiffs presented the testimony of an expert testimony of the total net economic loss to the Halloran Estate, was $631,562. Pltf. Ex. 11. This amount was reached without resort to any evidence related to Mr. Halloran, rather, it is an estimate of the lost earnings of the average male high school graduate from 1982 (date of death) to 2006 (date of retirement), adjusted for present value. Tr. 2-30 to 2-31. Neither the expert, nor any other witness, made any attempt to estimate the amount from this gross figure that would have been provided to the statutory beneficiaries. Tr. 2-57.

15. Mr. Halloran's actual legitimate earnings reported to the Social Security Administration revealed that Mr. Halloran earned essentially no legitimate income in the three years before his death. Pltf. Ex. 7. Mr. Halloran was never employed during his marriage, from 1979-1982, and his widow testified that she had no idea where he got his money. Tr. 3-91 The income that Mr. Halloran did obtain was from criminal activity. Deft. Ex. 8. Tr. 4-47 - 4-54; Tr. 3-68 - 3-91

16. The Halloran plaintiffs failed to present reliable evidence for recovery of reasonably expected net income to the statutory beneficiaries. Accordingly, the claim for this item of loss should be denied. *Lane v. Meserve*, 482 N.E.2d 530, 534 (Mass. App. Ct. 1985).

17. No award can be made for lost reasonable expected net income to the survivors based on proceeds from criminal activity. *Gibbs v. United Mine Workers of Am.*, 343 F.2d 609, 618 (6th Cir. 1965) *rev'd on other grounds* 383 U.S. 715 (1966); *Murray v. Interurban St. Ry. Co.*, 102 N.Y.S. 1026, 1027-1038 (N.Y. App. Div. 1907).

18. The Donahue plaintiffs' presented economic testimony that calculated the net loss to the Estate of Mr. Donahue based on the amount a Teamster, working full-time throughout the years in question, would have earned. Plaintiff Ex. 9. This testimony was unreliable in that it assumed Mr. Donahue would work full-time as a Teamster, when the evidence contradicted that assumption, and that he would provide all of his net earnings throughout his working life to his wife and sons. Tr. 3-58 - 3-60. The estimates were also fundamentally flawed by inclusion of prejudgment interest and failure to deduct for state and federal taxes, both of which are required by the FTCA. 28 U.S.C. § 2674; *Poyser v. United States*, 602 F. Supp. 436, 439-440 (D. Mass. 1984); *D'Ambra v. United States*, 481 F.2d 14 (1st Cir.1973).

20. Mr. Vincent DiMauro was a trained Emergency Medical Technician who responded to the scene. Tr. 2-8. He testified that due to the obvious severity of

4

the disfiguring trauma to Mr. Donahue's head from the gun shot, he did not treat him at the scene, and went to treat Mr. Halloran instead. Tr. 2-18 - 2-19. He testified to no indication that Mr. Donahue was conscious at the scene at any time. *Id.* Similarly, EMT Rick O'Brien testified to his observation and what he learned at the scene, Mr. Donahue was not conscious. Tr. 1-43.

21. Prior to the arrival of medical help, police vehicles arrived at the scene, one of which carried Assistant State's Attorney Thomas McDonough. He testified that he arrived at the scene within five minutes of the police radio broadcast of the shooting, at a time when only two police officers were present. Tr. 1-59 He observed that Mr. Donahue was "missing a part of his scalp," was "completely unresponsive" and "slumped over the steering wheel column." *Id.*

22. The evidence of conscious pain and suffering by Mr. Donahue is at most speculative, and does not meet plaintiffs' burden of proof, and without which there can be no recovery by the plaintiff. *Carr v. Arthur D. Little, Inc.*, 204 N.E.2d 466, 471 (Mass. 1965).

23. The United States conceded at trial, based on the testimony presented, Mr. Halloran suffered 32 to 36 minutes of conscious pain and suffering before his death. Tr. 4-130.

24. Mrs. Donahue and her sons testified at trial as to the losses they suffered as a result of the death of Mr. Donahue.

25. During his brief marriage to Mrs. Macarelli, Mr. Halloran was a violent, career criminal. Mrs. Macarelli conceded that he was never legitimately employed and

5

that he was not open with his wife. Tr. 3-92. When asked if during the marriage Mr. Halloran made dinner, did laundry or paid bills for the family, Mrs. Macarelli answered, "No, God, no." Tr. 3-94. He did not do handyman work around the house, nor did he babysit his own children. Tr. 3-95. Not only did he provide little support to his wife, her life was endangered simply by being around him. Tr. 3-96.

26. Mr. Halloran's two sons, asserted no claim and provided no testimony during trial as to any filial losses they may have incurred from the loss of Brian Halloran as a father. The Halloran children did not establish any basis for a claim for compensation for a lost relationship with Brian Halloran. *Barbosa v. Harper Feeds, Inc.*, 537 N.E. 2d 99, 104 (Mass 1989); *Gottlin v. Graves*, 662 N.E.2d 711, 715 (Mass. App. Ct. 1996).

///

///

///

///

///

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

MARY M. LEACH
Assistant Director, Torts Branch

/s/Lawrence Eiser
LAWRENCE EISER
ANDREW KAPLAN
Trial Attorneys, Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 888, Benjamin Franklin Station
Washington, DC 20044
(202) 616-4260
(202) 616-5200 (FAX)

Attorneys for the United States of America

Dated: April 3, 2008

# Exhibit 2

# Awards for Conscious Pain and Suffering in Massachusetts Wrongful Death Cases

| Case, Case Number, Date, Court | Case Summary | Conscious Pain and Suffering |
|---|---|---|
| *Estate of Vladislav Mouzytchenko v. Massachusetts Bay Transit Authority* Case No. CV-96-6932 September 29, 2000 (Mass Super.) | 36 y.o. male pedestrian was crossing the tracks within a crosswalk at a trolley station when he was struck by MBTA's Green Line trolley at Beacon and St. Paul streets in Brookline. His head and upper body were caught under the snowplow (not visible) on the front of the trolley with his legs protruding and he was dragged 47 1/2 feet. Decedent suffered a fractured skull and suffocation resulting in death with minutes of conscious pain and suffering. Decedent was survived by his wife. | $ 10,000 |
| *Joseph, Denise & Diane Lamonica and Est. of Phyllis Lamonica v. Jerry M. Blaine, M.D.* Case No. MICV90-08825 September 21, 1998 (Mass Super.) | Following a mammogram, defendant (40 y.o. female assistant town clerk) advised decedent that the results were negative. Later, the decedent reported to defendant that another lump had appeared adjacent to the first and requested another mammogram or aspiration of the lump. Defendant claimed that these procedures were unnecessary. Months later, decedent visited her gynecologist, who immediately performed a needle aspiration. A subsequent biopsy revealed stage III breast cancer, which she died of in 1994. Decedent was survived by her husband and two minor children. | $625,000 |
| *Ruby Edwards, Co-Admin. of the Estate of Bernice Edwards, et al. v. Muhammad Akmal Khan, M.D., Edward Lipman, M.D. and Chelmsford OB/GYN, P.C.* Case No. MICV2002-02342 November 5, 2007 (Mass Super.) | Plaintiffs decedent, 31 y.o. female secretary, presented herself to Lowell General Hospital on May 13, 1999, complaining of lower pelvic pain. She was diagnosed with an ovarian cyst. She was scheduled for surgery when the pain spread and it was discovered that she had bilateral pneumonia. During sedation for surgery, Edwards suffered respiratory arrest and had to be resuscitated. Following the surgery, Edwards was placed on a respirator. She died 19 days later. Decedent was survived by an 8 year old daughter, her mother and a brother. | $500,000 |
| *Palmer v. Granger Nursing Home, Inc. et al.* Case No. 99-0234B November 27, 2000 (Mass Super.) | Resident of defendant's nursing home, suffering from Alzheimer's, was required to wear an alarm as a precautionary measure to prevent her from getting out of bed and injuring herself. Decedent defeated the alarm and became entangled in her gown and the bed curtain and strangled herself. Plaintiffs contend that the defendant was aware that the patient was able to defeat the alarm and did not perform routine safety checks on the night of the accident. | $500,000 |

1

# Awards for Conscious Pain and Suffering in
# Massachusetts Wrongful Death Cases

| Case, Case Number, Date, Court | Case Summary | Conscious Pain and Suffering |
|---|---|---|
| *Jennifer Hart, Executrix for the Estate of James Schock v. Christopher L. Cua, et al.* Case No. 00-995 January 21, 2004 (Mass Super.) | Decedent, a 71 y.o. retired corporate vice president, underwent a pacemaker generator replacement in April 1998. Within two weeks, a staph infection had developed on the left side at the wound site. The infected generator was removed and a new generator was placed on the right side. Decedent was treated with IV antibiotics for four weeks. Eventually, the staph infection spread into decedent's blood stream, lungs, bones and heart. He was diagnosed with osteomyelitis and endocarditis and died in December 1998. | $750,000 |
| *Emily McIntyre, Administratrix of the Estate of John L. McIntyre v. John J. Connolly* Case No. 1:01-CV-10408-RCL September 5, 2006 United States District Court, D. Mass. | A 32 y.o. fisherman/FBI informant was tortured and murdered after his identity was allegedly revealed to two other informants he implicated in a gun smuggling operation. A U.S. District Court judge ruled the federal government was liable for the man's death after an FBI agent revealed decedent's identity. The judge determined that former FBI Agent, John J. Connolly, was the proximate cause of the incident. | $3,000,000 |
| *Anonymous Window Washer v Anonymous Contractor* Case No. 95-7119B September 29, 1998 (Mass Super.) | Decedent (37 year-old) fell seven stories when a window he was washing fell out of its frame. The windows had been washed in this manner by decedent for five years and by others for over 14 years. Between the last time that decedent washed the windows and the date of his fall, defendant contractor had been hired to remove the sill flashings under the windows. In the process, defendant had removed shims which allegedly supported the window frames. Decedent suffered six days of conscious pain and suffering. | $300,000 |
| *Nicoletti v. Triple G Scaffolding Services, et al.* Case No. 92-4690 November 25, 1996 (Mass Super.) | 62 year-old male fell from a scaffold while attempting to exit the scaffold at the end of the workday. The decedent suffered head trauma and fractured neck, lapsed into a coma after five days in the hospital, and suffered anoxic brain injury, resulting in irreversible damage and brain death. After an additional two weeks, life support was disconnected and the decedent expired. The jury returned a verdict in favor of the plaintiffs against the scaffold supplier and scaffold erector on products liability and negligence counts. | $250,000 |

# Awards for Conscious Pain and Suffering in
# Massachusetts Wrongful Death Cases

| Case, Case Number, Date, Court | Case Summary | Conscious Pain and Suffering |
|---|---|---|
| *Harold vs. Owens Corning Fiberglas*<br>Case No. 88-5888<br>October 13, 1992<br>(Mass Super.) | Decedent (46 year-old) owned one of the largest and most successful plumbing companies in the metro Boston area. He used Kaylo, a thermal insulation manufactured by Defendant Owens-Corning, both in the plumbing business and during his years in the Navy as a boiler room operator in the 1960s. Kaylo contained asbestos until 1972. In early 1988, decedent was diagnosed with mesothelioma, a cancer of the lung lining universally related to asbestos exposure. He died in October 1988. | $325,000 |
| *Sharon Paster, Admx of the Estate of Claire Fleming v. Herbert Bistrong, M.D. et al.*<br>Case No. 83-2881<br>February 13, 1989<br>(Mass Super.) | Plaintiffs' decedent (64 y.o. female) presented to defendant internist complaining of depression, right-sided facial weakness, and a staggered gate. Defendant diagnosed cerebro-vascular insufficiency. Diagnostic tests performed seven months later were inconclusive and decedent was referred to defendant psychiatrist. When decedent missed her third appointment defendant psychiatrist did not notify decedent's family. Decedent committed suicide the next day. An autopsy revealed that decedent was suffering from a brain tumor. | $900,000 |
| *Frink v. Walnut Street Associates*<br>Case No. 83-25633<br>June, 1988<br>(Mass Super.) | A 59 year-old male piano and organ repairman suffered a subarachnoid hemorrage and died 21 days after falling 12 feet through the floor of a building. The plaintiff, the decedent's widow, alleged that the building owner, contractor, and subcontractor were negligent in failing to guard the unopened trap door. The plaintiff also named another subcontractor and the previous owner of the building as defendants. | $30,000 |
| *Estate of Barry Behn, Adm. Adam and Diana Behn v. Robert Tufo, M.D.*<br>Case No. 93-7413<br>April 16, 1997<br>(Mass Super.) | 24 y.o. male alcohol and drug abuser had previously attempted suicide. He was evaluated by defendant psychiatrist and began treatment on an outpatient basis. During psychotherapy, decedent revealed that he was considering suicide. Defendant prescribed a large supply of Pamelor (an antidepressant). Decedent committed suicide via Pamelor overdose approximately one year after beginning treatments with defendant. Plaintiffs alleged that defendant was negligent in failing to monitor decedent, in failing to obtain relevant psychiatric and detox records, in failing to engage in adequate therapy and in prescribing drugs inaccurately. | $500,000 |

3

# Awards for Conscious Pain and Suffering in Massachusetts Wrongful Death Cases

| Case, Case Number, Date, Court | Case Summary | Conscious Pain and Suffering |
|---|---|---|
| *Anonymous v. Anonymous*<br>Case No. N/A<br>January 1999<br>(Mass Super.) | A 21 y.o. college student complaining of foot, jaw and throat pain was admitted to a college infirmary at 6:30 a.m. The Nurse suggested plaintiff had a sprained foot from dancing the night before, and sent decedent back to her residence. Decedent returned at 1:00 p.m. with increased pain in foot, jaw, throat, and face. The nurse treated decedent with tylenol with codeine and kept her at the infirmary. Decedent's pain increased and she vomited several times. At 12:10 a.m., the nurse called defendant's on-call physician who did not come in to examine decedent until 5:10 a.m. Decedent died at 7:30 a.m. at the hospital. Meningococcemia was identified as the cause of death. | $ 314,000 |
| *Anonymous Admin. v. Anonymous Physician, et al.*<br>Case No. 92-1888<br>May 16, 1996<br>(Mass Super.) | 46 y.o. female homemaker appeared at the hospital complaining of left sided face pain of three days duration. Physician #1 diagnosed a migraine headache and prescribed fiorinal. Decedent returned to the facility the following day for a blood pressure check as advised. Physician #2 prescribed amitriptyline and Tylenol. Later that evening decedent collapsed. She was taken to the hospital where a CT scan revealed an intracranial bleed consisting of a localized hematic mass lesion. Decedent remained comatose until her death the following day. | $ 10,000 |
| *The Estate of Steven M. Reeves v. Cape Fear, Inc.;*<br>*And The Estate of Paul F. Martin v. Cape Fear, Inc.*<br>Case No. 1:99-CV-10960; 1:99-CV-10944<br>March 10, 2004<br>United States District Court, D. Mass. | Steven Reeves and Paul Martin were deckhands on a clamming boat owned by Defendant Cape Fear. On January 8, 1999, after a day of clamming, the crew they noticed that the boat was taking on water and was sinking. The boat capsized before they could get the survival suits on completely. The crew was to unable to reach Reeves as he screamed for help in the dark. It was estimated that Reeves drowned after 20 minutes in the water. The crew members never saw Martin once the boat capsized. Martin's body washed ashore the following day. | $600,000<br>(for Reeves)<br>$200,000<br>(for Martin) |
| *Sharpe vs. Peter Pan Bus Lines, Inc., et al.*<br>Case No. 49694<br>June, 1986<br>(Mass Super.) | Wrongful death action brought on behalf of the 16-year-old female decedent who was stabbed to death by a deranged assailant in the defendant's bus terminal located in Springfield, Massachusetts. Plaintiff contended that the defendant negligently failed to provide adequate security in its bus terminal. | $50,000 |

# Awards for Conscious Pain and Suffering in Massachusetts Wrongful Death Cases

| Case, Case Number, Date, Court | Case Summary | Conscious Pain and Suffering |
|---|---|---|
| *Estate of Alexander Costello v. Leslie S. Fang, M.D.*<br>Case No. SUCV94-00459<br>June 25, 1998<br>(Mass Super.) | 51 y.o. gas delivery truck driver arrived at Massachusetts General Hospital's Renal Clinic for a routine check-up complaining of chest pain. He was scheduled for an EKG and referred to defendant nephrologist. The defendant examined the decedent on January 3 after four episodes of chest pain during the preceding week and undergoing the EKG and diagnosed stable angina. Two days later, decedent was taken to the emergency room. He had developed ventricular fibrillation and died. Plaintiff alleged that defendant was negligent in failing to diagnose a critical heart condition and in failing to give proper instruction regarding the medication prescribed. | $10,000 |
| *Doherty v. MBTA, et al.* Case No. 540-61<br>Date unknown (Published February 1987)<br>(Mass Super.) | This was a negligent security action brought by the plaintiff parents of the 19-year-old decedent against the defendant MBTA for its negligent failure to provide a safe subway platform for the transport of its subway passengers. The plaintiffs maintained that as a result of the defendant's failure to provide adequate security on its platform, their son was assaulted and beaten by three youths on the platform, chased out of the Columbia Station by the assailants onto a State Highway, where he was struck and killed by an automobile. | $100,000 |
| *Estate of Kimiyoshi Matsuyama v. Neil S. Birnbaum, M.D. et al.*<br>Case No. 00-1118<br>August 3, 2004<br>(Mass Super.) | Delay in diagnosis and treatment of gastric cancer resulting in death – Kimiyoshi Matsuyama, a pharmacy manager for CVS Pharmacy, in 1995, presented to defendant internist, Neil S. Birnbaum, M.D., with complaints of gastric pain and discomfort. Dr. Birnbaum allegedly recommended the use of over-the-counter medications, but never ordered any diagnostic testing until May 1999. The May 1999 tests indicated that decedent had gastric cancer, which had invaded 70% of his stomach. Decedent died four months later at the age of 46. | $160,000 |
| *Rose Mary Harrity and Estate of Raymond Harrity v. David E. Mills, et al.*<br>Case No. 40198<br>May 1993<br>United States District Court, D.Mass. | Defendant Mills was driving in the opposite direction. He crossed the center line and struck plaintiff's vehicle head-on. Defendant Mills and two male passengers had been hired by Defendant Continental Transport to transport a van across the country. The van was registered in the name of Defendant Data Air Courier and was being delivered to Defendant Ameri-Fleet who had purchased it. Plaintiff alleged that defendant companies had presumption of control at the time of the accident and, therefore, were jointly responsible for Defendant Mills' negligence. | $50,000 |

5

# Awards for Conscious Pain and Suffering in Massachusetts Wrongful Death Cases

| Case, Case Number, Date, Court | Case Summary | Conscious Pain and Suffering |
|---|---|---|
| *Auffrey v. Willmarc Contracting, Inc. et al.* Case No. 68490 January, 1989 (Mass Super.) | 18 y.o. was in the care of the Dept. of Youth Services living in a half-way house. He had a history of seizures and low intelligence from a previous head injury. MA Rehab placed plaintiff in a job at a construction site. Plaintiff had a seizure and fell five stories causing further head injuries and an increasing number of seizures. Five years later plaintiff died from a seizure. Plaintiff alleged: (1) defendant employers were negligent in not carrying workers' compensation coverage; (2) MA was negligent in failing to verify workers' compensation coverage and in placing plaintiff on this job with his seizure history. | $150,000 |
| *Helen Cummings, Admin. of the Estate of Ronald Cummings v. Mass. Electric Co., et al.* Case No. 79171 January, 1990 (Mass Super.) | Plaintiff's decedent, 36 y.o restaurant dishwasher, was walking home from a local bar at 2:00 a.m. Decedent walked through a small park owned by defendant city, which was usually lighted by a 1,000 watt floodlight owned and maintained by Defendant MA Electric. It was not working at this time and two men attacked and stabbed decedent. He died several hours later. Plaintiff alleged negligence in failing to: (1) maintain security in the park; (2) replace the floodlight within the thirty days it had been burned out; and (3) serving alcoholic beverages to the intoxicated assailants. | $100,000 |

# Exhibit 3



# 2005 Massachusetts Verdict Survey



**Jury Verdict Research®**
An LRP Publications Company

JURY VERDICT RESEARCH® SERIES
LRP Publications
P.O. Box 980
747 Dresher Road
Horsham, Pennsylvania 19044–0980

Toll-Free (800) 341-7874
(215) 784-0920
FAX (215) 784-9639
*www.juryverdictresearch.com*

Edited by Brooke J. Doran

© 2005 by LRP Publications
All Rights Reserved
Printed in USA

Permission to photocopy for internal use is granted through the Copyright Clearance Center (CCC) for $2 per document, $1.50 per page, to be paid directly to CCC, 222 Rosewood Drive, Danvers, Mass. 01923.

ISSN #: 8755-2809

**Injury Categories ...** The following table provides the most frequently reported injuries from Massachusetts and the percentage of the total number of awards in each category:

| Injury | % of Awards |
|---|---|
| Brain Injuries | 9% |
| Death | 8% |
| Spinal Nerve Injuries | 8% |
| Emotional Injuries | 6% |
| Vertebra Injuries | 6% |
| Other Injuries | 63% |

**Injury Award Median ...** The following table provides the award medians for the most frequently reported injuries from Massachusetts and provides a comparison to the national median for each injury:

| Injury | Massachusetts Award Median | National Award Median |
|---|---|---|
| Brain Injuries | $1,850,000 | $1,500,000 |
| Death | 1,200,000 | 1,250,000 |
| Spinal Nerve Injuries | 50,000 | 35,000 |
| Emotional Distress | 37,600 | 75,000 |
| Vertebra Injuries | 388,000 | 46,800 |
| Overall | 125,000 | 38,461 |

**Punitive Damages ...** Punitive damages may be awarded in Massachusetts to punish the defendant and deter him and others from committing similar conduct in the future. The plaintiff is required to show that the defendant acted maliciously before punitive damages may be awarded.

Of the total number of plaintiff verdicts reported from Massachusetts over the past seven years, one percent of the verdicts included awards for punitive damages. The following table provides a comparison of punitive awards and the total verdicts in cases with punitive damages:

| | Punitive Award | Total Verdict |
|---|---|---|
| Median | $1,550,000 | $4,205,000 |
| Probability Range | 25,000 – 25,000,000 | 602,800 – 27,510,001 |
| Range | 5,000 – 27,500,000 | 66,031 – 28,000,000 |
| Mean | 10,354,552 | 12,647,690 |

8