UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

————————————————————————
                                    )
PATRICIA DONAHUE, Individually      )
and in her capacity as              )
Administratrix of the Estate of     )
Michael J. Donahue, MICHAEL         )          CIVIL ACTION
T. DONAHUE, SHAWN DONAHUE, THOMAS   )          NO. 01-10433-WGY
DONAHUE,                            )
                                    )
                Plaintiffs,         )
                                    )
           v.                       )
                                    )
JOHN J. CONNOLLY, JR., JOHN M.      )
MORRIS, LAWRENCE SARHATT, ROBERT    )
FITZPATRICK, FEDERAL BUREAU OF      )
INVESTIGATION, and the UNITED       )
STATES OF AMERICA,                  )
                                    )
                Defendants.         )
————————————————————————)

MEMORANDUM AND ORDER

YOUNG, D.J.                                    September 13, 2012

I.   INTRODUCTION

        Lawrence Sarhatt, a defendant in a <u>Bivens</u> claim brought by

the family of Michael J. Donahue, moves for final judgment on the

claims against him on the ground that they are barred by the

Federal Tort Claims Act (the "Act" or "FTCA") judgment bar, 28

U.S.C. § 2676.  The Court originally granted summary judgment in

favor of the Donahues and awarded damages against the United

States on the FTCA claim, but the First Circuit reversed and

dismissed the claim as barred by the statute of limitations.

Donahue v. United States, 634 F.3d 615 (1st Cir. 2012).  The
Donahues argue that their Bivens claim is not precluded, as the
judgment bar of the FTCA would apply only where a plaintiff is
successful in his or her FTCA claim, which they were not.
Alternately, the Donahues argue that the judgment bar does not
apply here because the judgment was jurisdictional in nature and
not "on the merits."

A.   **Relevant Procedural History**

Patricia Donahue filed suit individually and as
Administratrix of the Estate of Michael J. Donahue against the
Federal Bureau of Investigation, John J. Connolly, Jr., John M.
Morris, Lawrence Sarhatt, and Robert Fitzpatrick on March 12,
2001.  Compl. Demand Jury Trial ("Compl."), ECF No. 1.  Joining
Patricia Donahue as plaintiffs were Michael T. Donahue, Shawn
Donahue, and Thomas Donahue.  Id.  The case was assigned to Judge
Lindsay ("the court").  Id.  The initial complaint alleged
violations of constitutional rights under Bivens v. Six Unknown
Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971),
violations of the federal Racketeering Influence and Corrupt
Organizations Act, 18 U.S.C. § 1961 et seq., conspiracy
violations and violations of state law.  Compl. 2.  The
plaintiffs also concurrently filed a Presentment of Claims letter
to the Federal Bureau of Investigation under the Federal Tort
Claims Act.  See id. at 2.  The FTCA claims were expressly and

2

intentionally omitted from the initial complaint.  Id.  The court

permitted the defendant Lawrence Sarhatt ("Sarhatt") and others

to file their initial answers months later in October 2001.

E.g., ECF No. 22.

The plaintiffs amended their complaint on October 25, 2001,

to include wrongful death and emotional distress claims asserting

liability under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 &

2671 et seq., in addition to the original claims.  Am. Compl.

Demand Jury Trial, ECF No. 29.  A Second Amended Complaint was

filed on May 28, 2002.  Second Am. Compl. Demand Jury Trial, ECF

No. 68.  After many delays,[1] varied motions for reconsideration,

and heated discovery skirmishes, the case proceeded, and Sarhatt

filed his answer to the Second Amended Complaint on April 11,

2003.  Def. Lawrence Sarhatt's Answer Second Am. Compl. Demand

Jury Trial, ECF No. 135.

The United States moved to dismiss the claims against it for

lack of subject matter jurisdiction, and the court denied the

motion in December 2004.[2]  Electronic Order, Dec. 1, 2004.  In

---

[1] Sarhatt claims that the fact that this case lasted for
more than ten years militates in favor of applying the judgment
bar.  A review of the docket shows that the defendants share
responsibility for the longevity of the case, including numerous
requests for extensions lasting months at a time.

[2] The court consolidated a related case, The Estate of
Edward Brian Halloran, with this case, and liability and damages
against the United States were found for both the Donahues and
Halloran.  Clerk's Notes, Sept. 23, 2003 (consolidating cases);
Electronic Clerk's Note, Nov. 19, 2007 (granting Joint Motion for

2007, the Donahues moved for summary judgment against the United States and the court granted this motion in November 2007. Clerk's Notes, Nov. 19, 2007 (granting Pls.' Joint Mot. Summ. J., ECF No. 195).  The court held a four day bench trial on damages, but prior to ruling on the case, Judge Lindsay passed away and the case was reassigned to this Session of the Court (the "Court").  <u>See</u> Order, ECF No. 233.  This Court reviewed the transcript of the record before the late Judge Lindsay, and heard closing argument from the parties on May 1, 2009.  Clerk's Notes, Apr. 14, 2009; Clerk's Notes, May 1, 2009.  The Court ordered judgment to issue in the amount of $6,435,100.00.  Clerk's Notes, May 1, 2009.

Sarhatt then moved for an entry of final judgment, Def. Lawrence Sarhatt's Mot. Entry Final J., ECF No. 239, which the Court initially granted, Electronic Order, May 19, 2009.  The Donahues moved for reconsideration "so that in the unlikely event that the First Circuit remands FTCA judgment or reverses the judgment on procedural grounds, the plaintiffs will be able to

---

Summary Judgment filed by the Estate of Edward Brian Halloran, ECF No. 195).  Like the instant case, this Court assessed damages in favor of the Halloran estate and entered judgment against the United States.  <u>The Estate of Edward Brian Halloran</u> v. <u>United States</u>, No. 01-11346 (D. Mass. May 6, 2009) (judgment awarding $2,061,000).  On appeal, the First Circuit reversed and vacated the judgment on statute of limitations grounds.  <u>Donahue</u>, 634 F.3d at 630.  The Supreme Court denied the Halloran's petition for writ of certiorari on May 14, 2012.  Order List: 566 U.S., May 14, 2012.

pursue their <u>Bivens</u> claims, as is their right."  Mot. Pls.,
Estate Michael Donahue, et al., Recons. Court's Order Granting
Def.'s Lawrence Sarhatt's Mot. Entry Final J. 1, ECF No. 240.
The Court granted the Donahue's motion, but administratively
closed the case against Sarhatt until the appeal of judgment
against the United States was decided.  Electronic Order, June 8,
2009.  Upon the assented to motion of the United States, the
Court entered an order granting partial final judgment that the
United States was liable under the FTCA for the wrongful death of
Michael J. Donahue in the amount of $6,435,100.00.  Order, ECF
No. 251.  In June 2010, the United States appealed.  <u>See</u> Notice
Appeal, ECF No. 252.

On appeal, the First Circuit reversed this Court's partial
final judgment and granted the United States' earlier motion to
dismiss on the ground that the claims were time barred under the
FTCA.  <u>Donahue</u>, 634 F.3d at 630; Mandate, ECF No. 258 (entering
judgment for the United States on October 14, 2011).  The First
Circuit held that the Donahues' critical accrual date was
September 2, 1998,[3] <u>id.</u> at 625, and thus their action brought on
March 29, 2001, failed to meet the statute of limitations in the
FTCA, <u>id.</u> at 630.  The plaintiffs petitioned the First Circuit
for rehearing <u>en banc</u>, but the petition was denied.

---

[3]  The First Circuit treated the Halloran and Donahue claims
as one and the same for purposes of accrual.  <u>Donahue</u>, 634 F.3d
at 625.

5

On February 6, 2012, Sarhatt moved for judgment as matter of law, Def. Lawrence Sarhatt's Mot. Entry Final J., ECF No. 259, and the Donahues opposed his motion, Opp'n Pls., Estate Michael Donahue, et al., Def. Lawrence Sarhatt's Mot. Entry Final J. ("Opp'n Mem."), ECF No. 260.  This Court heard oral argument on Sarhatt's motion on May 16, 2012 and took the matter under advisement.

### B.  Facts

This case arises out of the FBI's confirmed misconduct in handling informants James "Whitey" Bulger and Stephen "the Rifleman" Flemmi.  The First Circuit opinion in this case summarizes the many sordid details.  <u>Donahue</u>, 634 F.3d at 615-621.  As the issues in this motion are purely legal, this Court need not further restate the facts.

## II.  ANALYSIS

### A.  The Federal Tort Claims Act

The Federal Tort Claims Act expressly waives sovereign immunity for private suits seeking money for personal injury or death caused by a negligent or wrongful act of a government employee acting within the scope of his or her employment.  28 U.S.C. §§ 1346, <u>et seq.</u>; <u>e.g.</u>, <u>Davis</u> v. <u>United States</u>, 670 F.3d 48, 52 (1st Cir. 2012).  Historically, the rule of sovereign immunity was absolute with respect to tort claims against the

government;[4] when individuals were egregiously harmed by a
government employee, the only recourse was to petition Congress
for private relief.  1-2 Jayson & Longstreth, Handling Federal
Tort Claims § 2.01.  In response to this significant drain on
Congress's time, numerous bills waiving sovereign immunity for
torts were proposed, occasionally passed by one chamber of
Congress, and on one occasion vetoed for procedural reasons.
Tort Claims: Hearings on H.R. 5373 and H.R. 6463 Before the H.
Comm. on the Judiciary, 77th Cong. 25 (1942) ("Hearings on H.R.
5373 and H.R. 6463").

    The Federal Tort Claims Act was finally passed in 1946, and
"was the offspring of a feeling that the Government should assume
the obligation to pay damages for the misfeasance of employees in
carrying out its work."  Dalehite v. United States, 346 U.S. 15,
24 (1953) overruled in part on other grounds by Rayonier Inc. v.
United States, 352 U.S. 315 (1957).

    Legislative discussion of the Act focused on the need to
avoid private bills in Congress while providing relief to

_____

    [4] In 1942, Assistant Attorney General Francis Shea delivered
a statement on the bill to the House Judiciary Committee, noting
that in spite of many changes to the doctrine of sovereign
immunity that "there remain[ed] a large and important category of
wrongs for which there is as yet no satisfactory remedy – the
ordinary common law type of torts, such as personal injury . . .
by a Government employee in the course of his employment."  Tort
Claims: Hearings on H.R. 5373 and H.R. 6463 Before the H. Comm.
on the Judiciary 7, 77th Cong. 24 (1942) (statement of Francis M.
Shea, Assistant Att'y Gen.).

appropriate claimants.  <u>E.g.</u>, H.R. Rep. No. 79-1287, at 2 (1945)
(including the purpose and history of the legislation) ("For many
years the present system has been subjected to criticism, both as
being unduly burdensome to the Congress and as being unjust to
the claimants, in that it does not accord to injured parties a
recovery as a matter of right but bases any award that may be
made on considerations of grace.").

In most cases, an FTCA action is the exclusive civil remedy
available against government employees acting within the scope of
their employment.  28 U.S.C. § 2679(b)(1).  The Act includes an
exception, however, for claims "brought for a violation of the
Constitution of the United States."  <u>McIntyre</u> v. <u>United States</u>,
447 F. Supp. 2d 54, 61 (D. Mass. 2006) (Lindsay, J.) (quoting 28
U.S.C. § 2679(b)(2)(A)) <u>aff'd and remanded sub nom.</u>, <u>McIntyre ex
rel. Estate of McIntyre</u> v. <u>United States</u>, 545 F.3d 27 (1st Cir.
2008).  The exception permits plaintiffs to bring both an FTCA
claim and a <u>Bivens</u> claim against the individual defendants, and
courts often bifurcate the proceedings to address the FTCA claim
first.  <u>E.g.</u>, <u>id.</u>

This case presented just such a situation.  The current
motion relates to the intersection of two provisions of the FTCA:
the statute of limitations, 28 U.S.C. § 2401(b), and the judgment
bar, 28 U.S.C. § 2676.  The statute of limitations has been
thoroughly explained by the First Circuit in relation to this

case; the judgment bar has not.  <u>See</u> <u>McIntyre</u>, 447 F. Supp. 2d at
61-62 (noting that whether the judgment bar precludes <u>Bivens</u>
actions when the government wins an FTCA claim was an issue of
first impression in the First Circuit).  This Court must now
address the judgment bar and does so mindful of its role in
respecting Congress's intent and any binding precedent.

### 1.    FTCA Statute of Limitations

The FTCA statute of limitations applies to the filing of
both administrative and judicial actions:

> A tort claim against the United States shall be forever
> barred unless it is presented in writing to the
> appropriate Federal agency within two years after such
> claim accrues or unless action is begun within six months
> after the date of mailing, . . . of notice of final
> denial of the claim by the agency to which it was
> presented.

28 U.S.C. § 2401(b).  The purpose of this limitation undoubtedly
is to restrict untimely claims against the government, and it is
settled law in the First Circuit that the FTCA's statue of
limitations is jurisdictional.  <u>Roman-Cancel</u> v. <u>United States</u>,
613 F.3d 37, 42 (1st Cir. 2009) ("Compliance with the FTCA's
temporal deadlines is both mandatory and jurisdictional."
(citations omitted)); <u>Acosta</u> v. <u>United States Marshals Serv.</u>, 445
F.3d 509, 513 (1st Cir. 2006) (stating that the FTCA exhaustion
requirement is "'a non-waivable jurisdictional requirement'
limiting the suit to claims fairly made to the agency" (quoting

Santiago-Ramirez v. Secretary of Dep't of Def., 984 F.2d 16, 18
(1st Cir. 1993))); accord Donahue, 643 F.3d at 622.

        "Courts have no jurisdiction over claims against the federal
government, except where the government has expressly waived its
immunity."  Rakes v. United States, 442 F.3d 7, 18 (1st Cir.
2006) (citing United States v. Kubrick, 444 U.S. 111, 117
(1979).  "Indeed, the 'terms of [the United States'] consent to
be sued in any court define that court's jurisdiction to
entertain the suit.'"  F.D.I.C. v. Meyer, 510 U.S. 471, 475
(1994) (alterations in original) (quoting United States v.
Sherwood, 312 U.S. 584, 586 (1941)).  In the FTCA, the statute of
limitations was included by Congress as "part and parcel of [its
liability] waiver."  Donahue, 634 F.3d at 622.  Thus, the
statute's terms "closely circumscrib[e]" the FTCA's sovereign
immunity waiver.  Barrett ex rel. Estate of Barrett v. United
States, 462 F.3d 28 36 (1st Cir. 2006) (quoting Rakes, 442 F.3d
at 18); accord Coska v. United States, 114 F.3d 319, 322 (1st
Cir. 1997) ("A timely filed sum certain claim is a jurisdictional
prerequisite for a tort action against the federal government.").

        The Donahues filed their administrative claim on March 29,
2001.  Donahue, 634 F.3d at 621.  The First Circuit held that the
plaintiffs' claims accrued no later than September 2, 1998.  Id.
at 625.  As a result, the Donahues' FTCA claim was filed beyond
the two-year statute of limitations and was jurisdictionally

barred.  Id. at 622.  The First Circuit determined this point and
this Court need not revisit it.

####     2.    The Judgment Bar

The key provision of the Act in this case is the "Judgment
as Bar" at 28 U.S.C. § 2676, which states:

> The judgment in an [FTCA] action . . . shall constitute
> a complete bar to any action by the claimant, by reason
> of the same subject matter, against the employee of the
> government whose act or omission gave rise to the
> claim.

The parties dispute whether this provisions means that <u>all</u>
"judgments" bar subsequent suits - no matter their quality, and
in particular whether it bars the existing <u>Bivens</u> claim against
Sarhatt in this suit.  At first glance, this statutory provision
may appear simple, but the breadth of thoughtful judicial
opinions on the import of the judgment bar points to the clause's
vagueness.  <u>Compare, e.g.</u>, <u>Hallock</u> v. <u>Bonner</u>, 387 F.3d 147 (2d
Cir. 2004) <u>vacated sub nom.</u> <u>Will</u> v. <u>Hallock</u>, 546 U.S. 345 (2006)
(holding that an FTCA action dismissed for lack of subject matter
jurisdiction "does not result in a 'judgment'" under section
1346), <u>with</u> <u>Gasho</u> v. <u>United States</u>, 39 F.3d 1420, 1437 (9th Cir.
1994) ("The statute speaks of 'judgment' and suggests no
distinction between judgments favorable and judgments unfavorable
to the government.  The language is not ambiguous or vague.").
The issue in this case is whether Section 2676 bars the Donahues'
contemporaneously filed <u>Bivens</u> claims where the United States

prevailed on the FTCA action by way of contested statute of limitations.

Unfortunately, the Act does not define the key term "judgment," in Section 2676.  See 28 U.S.C. § 2671.  The Fourth Edition of Black's Law Dictionary, published in 1951, offers a multitude of definitions for the term, perhaps most relevantly, as "[t]he official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination." Black's Law Dictionary 977 (4th ed. 1951).  Here, the Donahue's FTCA suit was dismissed for lack of jurisdiction, raising questions as to whether the suit was literally "litigated and submitted for determination."[5]  In light of the judgment bar's disputed meaning, the Court will examine the Act's legislative background.

### 3.    The Legislative History of the FTCA

Perhaps the most helpful document for divining the legislative history of the FTCA judgment bar is the record of a hearing before the House of Representatives Committee on the

---

[5]   Of course, "federal courts have jurisdiction for at least the limited purpose of determining whether they have jurisdiction." Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (citing Chicot Cnty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 377 (1940)).  The First Circuit exercised such limited jurisdiction in dismissing the Donahues' FTCA claim, but vacated any determination of the merits.  See Donahue, 634 F.3d at 630.

Judiciary on January 29, 1942 ("the January 1942 Hearing).  See

e.g, Gasho, 39 F.3d at 1437 (relying on the January 1942

Hearing); H.R. Rep. No. 79-1287, at 2 (referencing the January

1942 Hearing).  In the January 1942 hearing, the Committee

considered two bills, H.R. 5373 and H.R. 6463, which, while not

passed at the time, were later reintroduced without substantial

modification and enacted into law as the FTCA in 1946.  United

States v. Spelar, 338 U.S. 217, 220 n.9 (1949); compare Hearings

on H.R. 5373 and H.R. 6463 (including text of H.R. 5373 as

modified), with 60 Stat. 843, 28 U.S.C. § 1346(b) et seq. (1946).

The text of the judgment bar as proposed in 1942 stated,

"The judgment in such an action shall constitute a complete bar

to any action by the claimant, by reason of the same subject

matter, against the employee of the Government whose act or

omission gave rise to the claim."  Hearings on H.R. 5373 and H.R.

6463, at 3; see also id. at 1 (noting that text in italics, such

as the judgment bar above, was "proposed to be inserted" into the

bill).  The preceding sentence in H.R. 5373 states "Subject to

the provisions of this Act, [with respect to such claims] the

United States shall be liable in respect to such claims to the

same claimants, in the same manner and to the same extent as a

private individual under like circumstances, except that the

United States shall not be liable for punitive damages, interest,

or costs."  Id. at 3.  Thus, in context, "[t]he judgment in such

13

an action" may have referred specifically to situations where "the United States shall be liable," or put more neatly, where the United States loses. See id.

The discussion at the January 1942 Hearing supports such a reading of the provision. Assistant Attorney General Francis Shea ("Shea") represented the Executive Branch at the hearing and explained the text that the Committee adopted in H.R. 5373. Id. at 6-36. Many of the questions from the Committee to Shea explored the effects of the judgment bars in the legislation. Id. Chairman Hatton W. Sumners' (the "Chairman") first question for Shea inquired about "the point of making [an] award conclusive." Id. at 8. This question referred to the preclusive effect of administrative settlement of claims which are in excess of $1000.00. Id.; accord id. ("Mr. Michener: It says upon the acceptance by the claimant of the award the claimant releases his claim against the United States. Mr. Shea: Yes, if the award is accepted."). Congressman Raymond S. Springer next asked Shea why there was a preclusive effect for "acceptance of an award." Id. at 9 ("Why do you provide this acceptance of the award as constituting a bar to the claim against the employee?"). Shea replied at length, explaining by example:

> If the Government has satisfied a claim which is made on account of a collision between a truck carrying mail and a private car, that should, in our judgment, be the end of it. After the claimant has obtained satisfaction of his claim from the Government, either by a judgment or by an administrative award, he should not be able to turn

around and sue the driver of the truck.

Id. (explaining further that if a claimant could also sue the
driver, "there [would] be continued a very substantial burden
which the Government [would have] to bear").  The Chairman
subsequently confirmed this explanation: "Mr. Shea, you are
discussing and directing your remarks to the matter where, if a
person is injured and files a claim against the government and
the Government satisfies that claim, that is the end of the claim
against anybody? Mr. Shea: That is right."  Id. at 10.

Shea also included for the record a prepared statement
explaining the amendments to H.R. 5373 and comparing H.R. 5373
and H.R. 6463 section by section.  Id. at 24-30.  One of the
discussed changes was the addition of the judgment bar.  Id. at
27.  The report explained: "Judgment in a tort action constitutes
a bar to further action upon the same claim, not only against the
Government (as would have been true under H.R. 5373) but also
against the delinquent employee, for reasons already discussed in
respect of administrative adjustment of claims up to $1000."  Id.
(emphasis added).  This discussion suggests that Congress
intended the judgment bar for administrative settlement and
claims in court to be interpreted similarly - triggering the
judgment bar only as to claims brought successfully against the

government.[6]

   Later questioning of Shea supports this explanation.

   Mr. Chairman: If a person has a claim before the agency
   and it is finally disposed of by that agency then can the
   claimant abandon the whole thing and go to court?

   Mr. Shea: Yes.

Id. at 31.  The Chairman then drove this point home, asking "Why

do you allow that?  If he submits himself to the jurisdiction of

the agency then after he has lost you permit him to go into a

court?"  Id.  Shea replied, "That is because the theory of this

bill is to give him a right of action so that he has the right to

a day in court."  Id.  The Chairman continued to press the point,

expressing skepticism that the waiver of sovereign immunity

should "permit [the claimant] to experiment when he has two

routes to go."  Id. at 32.  Shea responded that the bill

"contemplate[s] . . . that [the claimant] be given a remedy in

the courts," but that "provision is allowed . . . for settling

_____

        [6] Curiously, in Will v. Hallock, 546 U.S. 345, 354–55
(2006), the Supreme Court stated, "[a]nother difference between
qualified immunity and the judgment bar lies in the bar's
essential procedural element. . . . [T]he judgment bar can be
raised only after a case under the Tort Claims Act has been
resolved in the Government's favor."  Id.  This dictum is
perplexing, as the judgment bar is most likely to be raised where
an FTCA claim is resolved in the claimant's favor, not the
government's.  Certainly, the bar cannot "only" be raised where
the government prevails – that would stop the bar from addressing
dual recoveries – the clearest purpose of the FTCA judgment bar.
See United States v. Gilman, 347 U.S. 507, 509 (1954) (noting
that the FTCA "makes the judgment against the United States 'a
complete bar'") (emphasis added).

it" through administrative means.  <u>Id.</u>  The judgment bar language

adopted in H.R. 5373 (as amended) became the judgment bar, and in

pertinent parts is the same as the text today.  This discussion

at the January 1942 Hearing reveals an intent that judgment bars

in the FTCA be interpreted primarily to avoid multiple

recoveries.

In June 1942, the House Committee on the Judiciary reported

a Senate version of the FTCA that yields much less fruitful

analysis than the January 1942 Hearing, but includes identical

language of the judgment bar.  H. Rep. No. 77-2245, at 1-13

(1942) (passing S. 2221, the substantive equivalent of H.R. 6463

out of committee).  The Committee there described the basic

purpose of the legislation as to "waive a part of the

governmental immunity to suit in tort," but noted that the waiver

is "surrounded by certain safeguards and circumscribed by certain

limitations."  <u>Id.</u> at 5.  Although the text of S. 2221 includes

the judgment bar, this House Committee explanatory report on the

bill does not mention the bar.[7]  The report does note that for

---

[7] The report described the bill as aiding the "war effort"
and responding to the President's request to reduce the
administrative burden on Congress and the President of private
bills claiming torts against the government.  H. Rep. No. 77-2245
at 6 ("During the past 20 years, Members of the Congress have
frequently pointed out that the procedure for relief of tort
claims by special act is slow, expensive, and unfair both to the
Congress and to the claimant, and several attempts have been made
to enact legislation submitting all negligence claims to
administrative or judicial determination.") (statement of the
President).

administrative settlements "Acceptance of the award by the claimant will release both the Government and the employee from liability." Id. at 9.

The FTCA was ultimately passed as Title IV of the Legislative Reorganization Act of 1946, P.L. 80-601, 60 Stat. 842 (noting that the bill number was S. 2177).[8]   The Senate Report by the Special Committee on the Organization of Congress to accompany S. 2177 included report language explaining and discussing the Federal Tort Claims Act as passed.   Legislative Reorganization Act of 1946 Report, S. Rep. 79-1400, 79th Cong. 1-40 (1946).   In S. 2177, the judgment bar as passed is in Section 410.   See 80 Stat. 844.   The report does not explain the judgment bar but does note, however, that for administrative claims (Section 403), "[t]he acceptance of any award, compromise or settlement releases both the Government and the employee from liability." Id. at 32.

In general, these Congressional reports convey that the purpose of the FTCA was to reduce the load on Congress of private claims.   Id. at 31 (adopting a House Committee report on the history of the FTCA and a summary of existing law).   Some other courts extrapolated from the legislative history of the judgment bar an additional concern by Congress: "the prevention of

---

[8] The Act was subsequently repealed and reenacted at 28 U.S.C. ¶¶ 1346, 2671 et seq., however, the relevant language remained the same.   See 62 Stat. 982.

multiple lawsuits." <u>E.g.</u>, <u>Gasho</u>, 39 F.3d at 1437.  In <u>Gasho</u>, the
Ninth Circuit noted that "[o]ne witness . . . testified that
multiple suits imposed a 'very substantial burden' on the
government."  <u>Id.</u> (citing Hearings on H.R. 5373 and H.R. 6463 at
9) (statement of Assistant Att'y Gen. Francis M. Shea).  In <u>Will</u>
v. <u>Hallock</u>, the Supreme Court recently noted that the "concern
behind both [the judgment bar and traditional res judicata] rules
is . . . of avoiding duplicative litigation, 'multiple suits on
identical entitlements or obligations between the same parties.'"
546 U.S. 345, 354-55 (2006) (quoting 18 Wright, Miller, & Cooper,
<u>Federal Practice and Procedure</u> § 4402, at 9 (2d ed. 2002)); <u>see</u>
<u>also id.</u> at 354 (noting that the FTCA judgment bar does not
reflect "a policy that a defendant should be scot free of any
liability").

    This examination of the judgment bar's legislative history
undercuts Sarhatt's argument that the judgment bar ought be
applied to all judgments, no matter their import or quality.[9]

---

[9] The parties in this case also disputed whether the
judgment bar generally applies to contemporaneous <u>Bivens</u> claims
where the government prevails on the FTCA claims.  Although the
legislative history of the FTCA suggests otherwise and a Supreme
Court opinion just several years after the passage of FTCA
corroborates the legislative history: "The Tort Claims Act
[judgment bar] makes the judgment <u>against</u> the United States 'a
complete bar' to any action by the claimant against the
employee," <u>Gilman</u>, 347 U.S. at 509 (1954) (emphasis added), most
lower courts have concluded that an unfavorable judgment to the
plaintiff will bar additional claims under section 2676.
    More recently, several circuit courts have held that
judgments favorable to the government must also trigger the
judgment bar.  <u>E.g.</u>, <u>Harris</u> v. <u>United States</u>, 422 F.3d 322, 335

### B.   Subject Matter Jurisdiction and the Judgment Bar

The Donahues argue that where an FTCA claim is dismissed for failure timely to file an administrative complaint, the Court never properly had subject matter jurisdiction and therefore

---

(6th Cir. 2005) (barring <u>Bivens</u> suits where judgment entered for government in FTCA claim after trial); <u>Farmer</u> v. <u>Perrill</u>, 275 F.3d 958, 963 (10th Cir. 2001) (relying on the text to conclude that § 2676 makes no distinction between favorable and unfavorable judgments); <u>Hoosier Bancorp of Ind., Inc.</u> v. <u>Rasmussen</u>, 90 F.3d 180, 184–85 (7th Cir. 1996) (stating that "[t]here is no indication that Congress intended Section 2676 to apply only to favorable FTCA judgments."); <u>Gasho</u>, 39 F.3d at 1437 (holding that "that <u>any</u> FTCA judgment, regardless of its outcome, bars a subsequent <u>Bivens</u> action on the same conduct that was at issue in the prior judgment").

At odds with these courts is the Ninth Circuit's opinion in <u>Kreines</u>.  <u>Kreines</u>, 959 F.2d 834, 838 (9th Cir. 1992).  In <u>Kreines</u>, the court focused on the judgment bar's primary purpose of avoiding dual recovery.  <u>Id.</u> (citing Hearing on H.R. 5373 and H.R. 6463 at 9).  The court found the text ambiguous on whether a favorable FTCA judgment bars a contemporaneous <u>Bivens</u> action and held that section 2676 did not bar the <u>Bivens</u> action.  <u>Id.</u>  The court felt that the FTCA's concern for multiple lawsuits is "absent" in cases where plaintiffs brought their <u>Bivens</u> claims simultaneously with an FTCA claim.  <u>Id.</u>

Several years later in <u>Gasho</u>, the Ninth Circuit narrowly cabined the <u>Kreines</u> opinion, claiming to decide for the first time the specific question of whether the "quality" of an FTCA judgment must determine whether a subsequent <u>Bivens</u> claim is barred.  39 F.3d at 1437 (stating that in <u>Kreines</u> "the plaintiff had filed an FTCA claim and a <u>Bivens</u> claim in the <u>same</u> action") (emphasis in original)).  The court disagreed with <u>Kreines</u>' textual and legislative analysis, and while referencing judicial economy explicitly held that any FTCA judgment, "regardless of its outcome" bars subsequent <u>Bivens</u> actions based on the same facts.  <u>Id.</u>  The <u>Gasho</u> court explained that <u>Kreines</u> could only apply to contemporaneous judgments.  <u>Id.</u> at 1438 (noting that the judgments were several months apart, but the court "viewed the claims as 'contemporaneous'").  Here, the Donahues do not have contemporaneous judgments, although they did file their claims simultaneously.  Thus, the Donahues' case does not fit within the "narrow confine[s]" of <u>Kreines</u> either.  <u>See id.</u>

cannot issue a judgment that triggers the judgment bar.[10]  Opp'n
Mem. 10.  As this is an issue of first impression, Sarhatt raises
several questions worth addressing.

> **1.   Should an FTCA Claim Dismissed as Time Barred
> Trigger the Judgment Bar?**

The Supreme Court recognizes two kinds of jurisdictional
bars - those that protect defendants from "stale or unduly
delayed claims" and those that "achieve a broader system-related
goal, such as . . . limiting the scope of a governmental waiver
of sovereign immunity."  John R. Sand & Gravel Co. v. United
States, 552 U.S. 130, 133 (2008).  The latter kind are "more
absolute."  Id. at 133-34.  While this claim involves a time bar,
the provision limits waiver of sovereign immunity and thus the
FTCA statute of limitations is jurisdictional in the "more
absolute" sense.  See id.; Furtado v. Napolitano, No. 09-11030-
RGS, 2010 WL 577938, at *1 (D. Mass. Feb. 12, 2010) (Stearns, J.)
(noting that timely filing an administrative claim is a
"jurisdictional prerequisite of filing suit under the FTCA"); see
also United States v. Kubrick, 444 U.S. 111, 118 (1979)

---

[10] The First Circuit in Donahue remanded "with instructions
to vacate the judgments previously entered and to enter judgment
in favor of the United States." Donahue, 634 F.3d at 630.  This
Court does not interpret this order as automatically requiring
this Court to apply the judgment bar where the First Circuit has
not addressed whether it applies in this scenario.  Rather, the
First Circuit's clear explanation of jurisdictional limits put in
place by the FTCA statute of limitations is controlling and must
inform this Court's analysis of the judgment bar.

(cautioning that the courts "should not take it upon ourselves to extend the [sovereign immunity] waiver beyond that which Congress intended").

In <u>Pesnell</u> v. <u>Arsenault</u>, 543 F.3d 1038, 1041-42 (9th Cir. 2008) (<u>Pesnell III</u>), the Ninth Circuit held that the FTCA judgment bar did not bar <u>Bivens</u> actions where the FTCA action was dismissed for lack of jurisdiction.  Pesnell's original claims were constitutional violations, and they could not be brought under the FTCA.  <u>Id.</u> at 1041 (quoting <u>Pesnell</u> v. <u>United States</u>, 64 F. App'x 73, 74 (9th Cir. 2003)).[11]  In a concurring opinion that was explicitly approved by the majority, Judge Clifton explained that there are two materially different types of "dismissals for lack of jurisdiction."  <u>Pesnell III</u>, 543 F.3d at 1046 (Clifton, J. concurring) (citing <u>Gasho</u>, 39 F.3d at 1437).

> [First,] [w]hen Congress explicitly carves out an exception to its waiver of sovereign immunity, it is flatly rejecting liability. [Second,] [w]hen Congress waives sovereign immunity but imposes exhaustion requirements, it is accepting possible liability and channeling the claims in a specific way. Rulings falling into the first category constitute judgments for § 2676, while rulings in the second category do not.  That permits the judgment bar to serve the two purposes our

---

[11] Section 1346(b) of the FTCA describes "the scope of jurisdiction by reference to claims for which the United States has waived its immunity and rendered itself liable."  <u>Meyer</u>, 510 U.S. at 478-79 ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").  In <u>Meyer</u>, the Supreme Court emphatically held that the FTCA did not grant a waiver of immunity for constitutional claims.  <u>Id.</u>  Plaintiffs, however, may bring <u>Bivens</u> claims against the individual employees, unless the judgment bar applies.

> case law has enunciated, preventing dual recoveries and duplicate lawsuits, <u>Gasho</u>, 39 F.3d at 1437; <u>Kreines</u> v. <u>United States</u>, 959 F.2d 834, 838 (9th Cir. 1992).  At the same time it keeps § 2676 from being unduly harsh to plaintiffs bringing claims for harms that Congress has agreed, in principle, are cognizable.

<u>Id.</u> Using this framework, the Donahues' <u>Bivens</u> claim would not be barred – as it is the second type of jurisdictional dismissal.

Sarhatt counters with dicta from the Second Circuit which states that for an action properly pleaded under the FTCA, "a judgment of dismissal based on the statute of limitations, laches, release, res judicata, or improper venue will justify the assertion of the judgment bar in a subsequent <u>Bivens</u> action." <u>Hallock</u> v. <u>Bonner</u>, 387 F.3d 147, 155 (2d Cir. 2004), <u>vacated sub nom. Will</u> v. <u>Hallock</u>, 546 U.S. 345 (2006) (vacating Second Circuit decision where interlocutory appeal was improper under collateral order doctrine); <u>cf. id.</u> ("We hold that for the judgment bar to apply, the action must first be a <u>proper</u> one for consideration under the Federal Tort Claims Act." (emphasis added)).

Candidly, the conclusion of the Second Circuit that the statute of limitations invokes the judgment bar does not make sense given their rule (similar to the First Circuit) that the statute of limitations is a jurisdictional bar.  <u>Cf. Hallock</u>, 387 F.3d at 155 (declining to apply the judgment bar "because the action was not properly brought under the Federal Tort Claims Act in the first place and is a nullity.").  Concurring, Judge

23

Marrero attempted to clarify that "proper" actions under the FTCA
means "judgment on the merits." Id. at 156 (Marrero, J.,
concurring).  As Judge Marrero noted, barring subsequent suits
because of improper venue "would work an unduly harsh result on
that plaintiff." Id. (agreeing with two district court cases
where "the judgment bar in § 2676 does not block a Bivens suit
when a prior FTCA claim was dismissed on procedural grounds");
see also Burt v. Johns, No. 5:10-CT-3156-BO, 2012 WL 1029194, at
*4-5 (E.D.N.C. Mar. 26, 2012) (requesting additional briefing on
whether dismissal of FTCA claim under Federal Rule of Civil
Procedure 12(b) constitutes judgment for purposes of § 2676).

     Sarhatt claims that the statutory text prevents this outcome
and argues that the Donahues' reliance on Pesnell III, 534 F.3d
at 1041-42, and Hallock, 387 F.3d at 155, is misplaced.  Sarhatt
Mem. 10.  Sarhatt's main contention is that there is "nothing in
the statutory language that makes or even hints at any intent to
make a distinction between 'procedural' or 'non-procedural'
judgments for purposes of the applicability of the judgment bar."
Id. at 11.

     It is true that "when the statute's language is plain, the
sole function of the courts - at least where the disposition
required by the text is not absurd - is to enforce it according
to its terms." Hartford Underwriters Ins. Co. v. Union Planters
Bank, N.A., 530 U.S. 1, 6 (2000) (internal quotations and

24

citations omitted).   Sarhatt, of course, does not believe that
dismissing this specific _Bivens_ action would be nonsensical, but
this Court's decision addresses whether the law logically
requires barring plaintiffs' _Bivens_ claims in such circumstances.
Unfortunately for Sarhatt, the application of the judgment bar to
all procedural or jurisdictional dismissals of FTCA claims does
in fact yield absurd results.

The easiest example would be a case invoking both the FTCA
and _Bivens_ that is dismissed under Federal Rule of Civil
Procedure 12(b) for improper venue.   See _Hallock_, 387 F.3d at 156
(Marrero, J. concurring).   Thereafter, the individual defendants
could move to bar the _Bivens_ claim using the judgment bar.   The
district court in _Hallock_ lambasted the "potential
destructiveness" of such a formalistic interpretation of the
judgment bar and carefully explained why procedural rules ought
not bar related claims.   _Hallock_ v. _Bonner_, 281 F. Supp. 2d 425,
428 (N.D.N.Y. 2003), _aff'd by_ _Hallock_, 287 F.3d 147 (2d Cir.
2004), _vacated sub nom._ _Will_ v. _Hallock_, 546 U.S. 345 (2006).

> Under defendants' interpretation of the statute, the
> individual defendants' motion  would be granted, despite
> the fact that no repetitious litigation transpired, as
> the merits of the claims against the government were not
> reached and the claims against the individual defendants
> were brought in the same lawsuit, and despite the fact
> that no possibility of dual recovery is presented.   In
> fact, concerns regarding that purpose of the judgment bar
> statute have been entirely eliminated by granting the
> government's motion to dismiss.   Further, resources are
> not wasted.   In the scenario, assume the plaintiff, like
> the ones here, had a good faith, albeit ultimately

> incorrect, basis for believing that sovereign immunity
> was waived.  In such a situation, a plaintiff's attorney
> is not only encouraged, but duty-bound to pursue the
> claim.  That the court ultimately rules against the
> plaintiff should not serve as a penalty for making the
> argument.  Defendants' interpretation of § 2676 is
> therefore rejected, and plaintiffs' earlier procedural
> loss does not prevent them from pursuing enforcement of
> their substantive rights against the proper defendants.

Id.; compare Hallock, 387 F.3d at 155 (stating in dicta that for

"a judgment of dismissal based on the statute of limitations,

laches, release, res judicata, or improper venue will justify the

assertion of the judgment bar in a subsequent Bivens action"),

with Hallock, 387 F.3d at 156 (Marrero, J. concurring)

("Dismissing a Bivens suit because of a good-faith procedural

error in a plaintiff's litigation of an earlier FTCA action-an

action that the plaintiff need not have brought at all to

maintain a Bivens claim-does not advance Congress's goals in

enacting § 2676 and unduly penalizes that plaintiff.").[12]

    This is the same scenario before the Court today.  The

government has successfully argued on appeal that this Court

---

[12] Sarhatt also cites two district court cases holding that
the dismissal of an FTCA claim for failure timely to file an
administrative complaint would invoke the judgment bar on a
contemporaneous Bivens claim.  Freeze v. United States, 343 F.
Supp. 2d 477, 481 (M.D.N.C. 2004) (concluding summarily that FTCA
judgment bar applied to constitutional claims); Winnemem Wintu
Tribe v. United States Dep't. of the Interior, 725 F. Supp. 2d
1119, 1149-50 (E.D. Cal. 2010) (relying on Gasho to hold that
dismissals of FTCA claims on jurisdictional grounds trigger the
judgment bar for Bivens claims).  These cases do not add
significantly to the discussion of the jurisdictional dismissals
and are less persuasive than the well-reasoned opinion in
Hallock, 281 F. Supp. 2d at 428.

lacked subject matter jurisdiction.[13]  Now, the individual

defendant seeks to bar the pending Bivens claims - claims that

were properly filed in the same suit.  There is no possibility of

dual recovery.  Morever, in light of the facts that multiple

district courts held the United States liable for Michael

Donahue's death and two district judges were persuaded that the

FTCA claims were timely, the Donahues' claims were undoubtedly

not frivolous.  To the extent that resources were "wasted" here,

they were wasted because the parties (and this Court) agreed to

stay the Bivens claims.  The claims were not stayed, as Sarhatt

seems to argue, because they would be barred regardless of the

outcome of the FTCA claim.  Rather, the stay of the Bivens claim

was an attempt to avoid unnecessary litigation, serving the very

judicial economy values that the Ninth Circuit proposed in Gasho.

See Gasho, 39 F.3d at 1437.

When Sarhatt previously moved for final judgment (after the

Court entered judgment against the United States), the Donahues

identified the potential situation that exists today, and moved

for reconsideration on the ground "that in the unlikely event

---

[13] In 2002, the government moved to dismiss the FTCA claims
for lack of subject matter jurisdiction, specifically arguing
that the statute of limitations had expired.  United States'
Mots. for Recons. or Certification for Interlocutory Appeal 1,
ECF No. 94 (requesting an order granting reconsideration "and
dismissing [the] actions under the [FTCA] for lack of subject
matter jurisdiction").

that the First Circuit remands FTCA judgment or reverses the judgment on procedural grounds, the plaintiffs will be able to pursue their <u>Bivens</u> claims, as is their right."  Mot. Pls., Estate of Michael Donahue, et al., Recons. Court's Order Granting Def. Lawrence Sarhatt's Mot. Entry Final J. 1, ECF No. 240.  This argument made sense to the Court then, and it still does today. Barring <u>Bivens</u> claims based on an untimely barred FTCA claim does seem patently absurd, both because the purpose of the FTCA was to permit suits against the government, and because the FTCA explicitly permits <u>Bivens</u> claims to be brought in the same suit, 28 U.S.C. § 2679(b)(2)(A).

## 2.  Is Dismissal Based on the FTCA Statute of Limitations "On the Merits"?

Sarhatt argues next that because the dismissal here is based on the statute of limitations, it was "on the merits" and must trigger the judgment bar.  Def. Lawrence Sarhatt's Reply Mem. Supp. Mot. Entry Final J. 9–12, ECF No. 262.  While it is true for "general" claim preclusion, a statute of limitations dismissal generally will be considered "on the merits," this rule does not logically extend to the FTCA statute of limitations. <u>Compare</u> <u>Rose</u> v. <u>Town of Harwich</u>, 778 F.2d 77, 80 (1st Cir. 1985) (holding that, under state law, a "dismissal based on this particular limitations provision [was] a dismissal 'on the merits'"), <u>and</u> <u>Kale</u> v. <u>Combined Ins. Co. of America</u>, 924 F.2d 1161, 1164 (1st Cir. 1991) (noting that "the dismissal of [an age

28

discrimination] claim as time-barred constitutes a judgment on the merits, entitled to preclusive effect" for purposes of claim preclusion), with In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 62 (1st Cir. 2007) (rejecting defendant's contention that plaintiff's failure to meet "substantive" precondition for suit was dismissal on the merits) (citing 18A Federal Practice & Procedure § 4337, at 185-85) and Acosta, 445 F.3d at 513 (1st Cir. 2006) ("The [FTCA] also contains an exhaustion requirement, which has been viewed as 'a non-waivable jurisdictional requirement' limiting the suit to claims fairly made to the agency." (citation omitted)).

Although the First Circuit and Supreme Court[14] have called time-bars "on the merits" judgments, the details of Sarhatt's argument are telling.  The First Circuit "has repeatedly held that compliance with this statutory requirement is a jurisdictional prerequisite to suit that cannot be waived."

---

[14] In Plaut v. Spendthrift Farm, Inc., the Supreme Court stated that "[t]he rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits."  514 U.S. 211, 228 (1995) (citing Fed. R. Civ. Proc. 41(b); United States v. Oppenheimer, 242 U.S. 85, 87-88 (1916)).  This reliance on Federal Rule of Procedure 41(b) by the Supreme Court prevents Plaut from being particularly helpful to Sarhatt's argument.  See id.  Federal Rule of Procedure 41(b) provides specifically that involuntary dismissals for lack of jurisdiction (i.e., the FTCA statute of limitations) are not an adjudication on the merits.

<u>Gonzalez</u> v. <u>United States</u>, 284 F.3d 281, 288 (1st Cir. 2002)

(citations omitted).  In <u>Gonzalez</u>, the First Circuit rejected the

plaintiff's argument that a jurisdictional question in an FTCA

case that depended on factual matters went "to the merits of the

case."[15]  <u>Id.</u> at 287.  A more recent decision labeled the facts

necessary to determine statute of limitations in FTCA cases as

"predicate jurisdictional facts."  <u>Patterson</u> v. <u>United States</u>,

451 F.3d 268, 270 (1st Cir. 2006).  In an FTCA claim, dismissal

based on the jurisdictional statute of limitations cannot be "on

the merits" just because it involved a detailed factual analysis

of temporal events related to the claim.  <u>E.g.</u>, <u>Limone</u> v. <u>United

States</u>, 336 F. Supp. 2d 18, 35 (D. Mass. 2004) (Gertner, J.)

("The claim against the government fell on the merits not the

vagaries of sovereign immunity or statute of limitations law."

(citing <u>Diminnie</u> v. <u>United States</u>, 522 F. Supp. 1192 (E.D. Mich.

1981))).  Sarhatt asserts that "[t]he underlying logic is that

the exceptions to sovereign immunity are not truly jurisdictional

---

[15] The First Circuit stated in <u>Gonzalez</u>:

> [I]t is clear that the facts relevant to the
> determination of subject matter jurisdiction do not go
> directly to the merits of the plaintiff's claim.  That
> is, the determination of whether the claim is time-barred
> bears no relationship to whether the plaintiff can make
> out a showing of negligence on the merits of the case.

<u>Gonzalez</u>, 284 F.3d at 287.

but defenses to a suit under the FTCA." Reply 14 n.12. The First Circuit has already rejected this argument in <u>Gonzalez</u>.

Unlike statutes of limitations in other laws, the FTCA statute of limitations is emphatically jurisdictional. Thus, the dismissal of the FTCA claim on jurisdictional grounds ought not be considered "on the merits" or bar the <u>Bivens</u> claim. Admittedly, this conclusion appears to give short shrift to the broadly worded text of the judgment bar. <u>See</u> 28 U.S.C. § 2676. Nonetheless, the First Circuit precedents and the legislative history of the FTCA support the conclusion that these contemporaneously filed <u>Bivens</u> claims ought not be barred.

**C.  The Statute of Limitations on the <u>Bivens</u> Claims Has Not Expired**

<u>Bivens</u> claims are subject to a three-year statute of limitations in Massachusetts. <u>Barrett ex rel. Estate of Barrett</u>, 462 F.3d at 38 & n.6 (1st Cir. 2006) (explaining that <u>Bivens</u> claims adopt local time limitations); <u>see</u> Mass. Gen. Laws ch. 260 §§ 2A, 5B. "Under federal law, the statute of limitations on a <u>Bivens</u> claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." <u>Barrett</u>, 462 F.3d at 38-39 (quoting <u>Van Tu v. Koster</u>, 364 F.3d 1196, 1199 (10th Cir. 2004)). As the First Circuit has calculated the latest date that the Donahues could have known or had reason to know of the basis of their action, the calculation of the statute of limitations on the <u>Bivens</u> claim

31

is mechanical (unless of course, the <u>Bivens</u> claims arises out of
a different subject matter than the FTCA claim).   <u>See</u> <u>Donahue</u>,
634 F.3d at 625.

The First Circuit concluded that "the plaintiffs' claims
accrued no later than September 2, 1998."  <u>Id.</u>  Accordingly, if
the Donahues' <u>Bivens</u> claim arises out of the same facts, the
statute of limitations expired on September 1, 2001.   The
Donahues filed their claim on March 12, 2001, <u>see</u> Compl., and
thus timely filed their <u>Bivens</u> action.

## III. CONCLUSION

The Court holds that because the statute of limitations is
an absolute jurisdictional bar in the First Circuit, the
dismissal of the FTCA action does not bar the <u>Bivens</u> claims
brought contemporaneously.   Sarhatt's Motion for Entry of Final
Judgment is therefore DENIED.   ECF No. 259.

This conclusion is solely procedural.   The Court here has no
occasion to address the merits and expresses no opinion thereon.
Here it is sufficient to explain that the judgment bar does not,
in these circumstances, bar these <u>Bivens</u> claims.

**SO ORDERED.**


 /s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE